**CASE NO. 2:22-cv-06637-JAK**

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA**

---

In re: Zetta Jet USA, Inc., *et al.*

*Debtors*.

JONATHAN D. KING, solely in his capacity as Chapter 7
Trustee of Zetta Jet USA, Inc. and Zetta Jet PTE, Ltd.,

*Plaintiff-Appellant*,

vs.

BOMBARDIER AEROSPACE CORPORATION, BOMBARDIER INC., AND
LEARJET, INC.

*Defendants-Appellees*.

---

Appeal from the United States Bankruptcy Court, Central District of California
Bankruptcy Case No. 2:17-bk-21386-SK
Adversary Case No. 2:19-ap-01382-SK

---

**ANSWERING BRIEF OF DEFENDANTS-APPELLEES BOMBARDIER
AEROSPACE CORPORATION, BOMBARDIER INC., AND LEARJET,
INC.**

---

CLAIRE K. WU (SBN 295966)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone:  213-488-3655
Facsimile:   213-629-1033
Email: claire.wu@pillsburylaw.com

*Counsel for Defendants-Appellees
Bombardier Aerospace Corporation,
Bombardier Inc., and Learjet, Inc.*

ERIC FISHMAN (Pro Hac Vice)
ANDREW M. TROOP (Pro Hac Vice)
CAROLINA A. FORNOS (Pro Hac Vice)
PILLSBURY WINTHROP SHAW
PITTMAN LLP
31 West 52nd Street
New York, NY 10019-6131
Telephone: 212-858-1000
Facsimile:  212-858-1500
Email: eric.fishman@pillsburylaw.com
            andrew.troop@pillsburylaw.com
            carolina.fornos@pillsburylaw.com

4870-6554-4018

1

## <u>CORPORATE DISCLOSURE STATEMENT</u>

2

3

4

Pursuant to Fed. R. Bankr. P. 8012 and 8014, Appellee Bombardier Inc. is a nongovernmental publicly-held Canadian company.   Appellees Bombardier Aerospace Corporation and Learjet, Inc. are wholly owned by Bombardier Inc.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

i

1

## **TABLE OF CONTENTS**

2
Page

3
COUNTER-STATEMENT OF THE ISSUES .........................................................2

STATEMENT OF THE CASE.............................................................................4

4
I.    Statement of Facts .................................................................................4

5
    A.    The CALI Transactions (Planes 2-5)..........................................5

    B.    The Element Transactions (Planes 1 and 10) ............................7

6
    C.    The Zetta Bankruptcy ................................................................8

7
II.   Procedural History.................................................................................8

SUMMARY OF THE ARGUMENT ..................................................................12

8
ARGUMENT ...................................................................................................20

9
I.    The Bankruptcy Court Properly Dismissed the FAC with Prejudice for
    Failure to State a Claim........................................................................20

10
    A.    The Tort Claims (Counts 1-3, 6-7) Were Legally Deficient ....20

        1.    New York Law Applies to the Trustee's Tort Claims......20

11
        2.    The Bankruptcy Court Properly Held that Count 1 Fails to
            State a Claim for Aiding and Abetting Fiduciary Breach ...............26

12

13
            i.    The Alleged Improper Payments from Jetcraft to Cassidy
               Cannot Be Imputed to Bombardier ...........................................26

14
            ii.    Giving Five Sports Tickets to a Client Is Not a Bribe.............34

            iii.   Discussing the Purchase of Sea-Doos is Not a Bribe ..............37

15
        3.    The Bankruptcy Court Properly Held that Count 2 Failed to
            State a Claim for Conspiracy....................................................40

16
        4.    The Bankruptcy Court Properly Held that Count 3 Failed to
            State a UCL Claim.................................................................43

17
        5.    The Bankruptcy Court Properly Dismissed the Fraudulent
            Misrepresentation and Concealment Claims (Counts 6 and 7) ........44

18
        6.    The Bankruptcy Court Properly Held that the Original
            Complaint Failed to State a Claim for Unjust Enrichment .............46

19
        7.    The Tort Claims are Barred by the *In Pari Delicto* Doctrine...........48

20
    B.    The Bankruptcy Court Properly Dismissed the Bankruptcy Claims
        (Counts 12-20, 25, 31-32) ........................................................51

4870-6554-4018

1    1. Neither Section 547 Nor Section 548 Permits the Trustee to
        Avoid Extraterritorial Pre-Petition Transfers Alleged in the
2       Fraudulent Transfer (Counts 12-17, 31-32) and Preference
        Claims (Counts 18-19) ....................................................................51

3       i. The Bankruptcy Code Does Not Indicate that Preference
         and Fraudulent Transfer Powers Apply to Extraterritorial
4         Transfers ..........................................................................53

5       ii. The Trustee's Claims Are Not a Domestic Application of
         Sections 547 and 548 ........................................................55

6    2. The Fraudulent Transfer and Preference Claims Were Also
        Properly Dismissed on Alternative Grounds That the Trustee
7       Failed to Address in His Opening Brief and May Not Address
        for the First Time in Reply .............................................................62

8       i. Counts 14-15 and 31-32 Were Properly Dismissed
         Because Indispensable Parties Were Not Joined .....................64

9       ii. The Fraudulent Transfer Claims (Counts 12-17, 31-22)
         Were Properly Dismissed Because they Failed to State a
10        Claim .................................................................................65

11        a) The Trustee Did Not Sufficiently Plead Constructive
          Fraudulent Transfer Claims (Counts 13, 15, 17, 32) ........66

12        b) The Trustee Did Not Sufficiently Plead Actual
          Fraudulent Transfer (Counts 12, 14, 16, 31) ....................69

13       iii. The Preference Claims (Counts 18, 19) Failed to State a
         Claim .................................................................................73
14

15    3. The Bankruptcy Court Properly Dismissed the Stay Violation
        Claim (Count 20) .............................................................................75

16    4. The Bankruptcy Court Properly Dismissed the Disallowance
        Claim (Count 25) .............................................................................77

17 II. The Bankruptcy Court Properly Exercised Its Discretion to Deny the
   Trustee's Motion to Consolidate ...................................................................78

18 III. The Bankruptcy Court Properly Exercised Its Discretion to Deny the
   Trustee Leave to Amend ................................................................................79

19 CONCLUSION .........................................................................................................81

20

iii

1

## <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

*ABF Cap. Corp. v. Osley*,
   414 F.3d 1061 (9th Cir. 2005) ..............................................................22

5

*In re Acequia, Inc.*,
   34 F.3d 800 (9th Cir. 1994) .........................................................70, 72

6

7

*In re Agric. Rsch. & Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) ..............................................................70

8

*In re Ahaza Sys., Inc.*,
   482 F.3d 1118 (9th Cir. 2007) ............................................................74

9

*AI CA LLC v. CrediAutoUSA Fin. Co. LLC*,
   No. 20-cv-2352-MMA (AHG),
   2022 WL 4798128 (S.D. Cal. Sept. 30, 2022) ...................................23

10

11

*In re Ampal-Am. Isr. Corp.*,
   562 B.R. 601 (Bankr. S.D.N.Y. 2017)..........................52, 56, 57, 62

12

*In re Arcapita Bank B.S.C.(c)*,
   575 B.R. 229 (Bankr. S.D.N.Y. 2017) (Br. 43-47)......................57, 58

13

14

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014) ..............................................................73

15

*Avila v. Wells Fargo Bank, Nat'l Ass'n*,
   No. C 16-05904 WHA, 2016 WL 7425925 (N.D. Cal. Dec. 23, 2016).............42

16

*Barber v. Cin. Bengals, Inc.*,
   95 F.3d 1156 (9th Cir. 1996) ...............................................................4

17

18

*Baron v. Galasso*,
   83 A.D.3d 626 (2d Dep't 2011)....................................................26, 27

19

*BASF Corp. v. SSM Auto. Grp., Inc.*,
   No. 5:21-cv-01191-MEMF,
   2022 WL 2288427 (C.D. Cal. May 17, 2022)....................................23

20

iv

*Bd. of Managers of 411 E. 53rd St. Condo. v. Perlbinder*,
　　Nos. 654039/2013, 650603/2014, 2016 WL 1597761 (Sup. Ct. N.Y. Cnty. Apr.
　　21, 2016), *rev'd on other grounds*, 151 A.D.3d 523 (1st Dep't 2017) ..............28

*Begier v. IRS*,
　　496 U.S. 53 (1990)........................................................................62

*Bell Atl. Corp. v. Twombly*,
　　550 U.S. 544 (2007)..................................................................42, 43

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
　　866 F. Supp. 2d 257 (S.D.N.Y. 2012) ............................................32

*Bonin v. Calderon*,
　　59 F.3d 815 (9th Cir. 1995) .........................................................76

*Bruton v. Gerber Prods. Co.*,
　　703 F. App'x 468 (9th Cir. 2017) ................................................47

*Butto v. Collecto Inc.*,
　　802 F. Supp. 2d 443 (E.D.N.Y. 2011) ..........................................33

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
　　54 F.4th 1078 (9th Cir. 2022) .....................................................21

*Carmel Fin., LLC v. Schoenmann*,
　　No. 3:21-cv-07387-WHO, 2022 WL 3599561 (N.D. Cal. Aug. 23, 2022)........22

*Cassirer v. Thyssen-Bornemisza Collection Found.*,
　　142 S. Ct. 1502 (2022)................................................................21

*In re Chateaugay Corp.*,
　　920 F.2d 183 (2d Cir. 1990) ........................................................75

*Chodos v. W. Publ'g Co.*,
　　292 F.3d 992 (9th Cir. 2002) .......................................................80

*Ex parte Christy*,
　　44 U.S. 292 (1845).....................................................................59

*In re CIL Ltd.*,
　　582 B.R. 46 (Bankr. S.D.N.Y. 2018)....................................52, 56, 57

v

*Cisco Sys., Inc. v. Capella Photonics, Inc.*,
   No. 20-cv-01858-EMC, 2020 WL 4923697 (N.D. Cal. Aug. 21, 2020)............58

*City of Chicago v. Fulton*,
   141 S. Ct. 585 (2021).......................................................................................77

*In re CMR Mortg. Fund, LLC*,
   416 B.R. 720 (Bankr. N.D. Cal. 2009) ............................................................22

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
   412 F. Supp. 2d 1059 (E.D. Cal. 2006) ............................................................43

*Cooper v. Certain Underwriters at Lloyd's, London*,
   716 F. App'x 735 (9th Cir. 2018) .....................................................................24

*Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*,
   960 F.3d 549 (9th Cir. 2020) ......................................................................2, 25

*Daniels v. United States*,
   No. 3:16-CV-02077-BTM-DHB,
   2017 WL 3478765 (S.D. Cal. Aug. 11, 2017) .................................................33

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,
   276 F.3d 1150 (9th Cir. 2002) ...........................................................................3

*Diaz-Barba v. Kismet Acquisition, LLC*,
   Nos. 08cv1446 BTM (BLM), 08cv1572 BTM (BLM),
   2010 WL 2079738 (S.D. Cal. May 20, 2010) .............................................60, 61

*Digit. Ally, Inc. v. Util. Assocs.*,
   882 F.3d 974 (10th Cir. 2018) ..........................................................................63

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...............................................................37, 48, 68

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) .....................................................................46, 47

*In re Fedders N. Am., Inc.*,
   405 B.R. 527 (Bankr. D. Del. 2009)..................................................................72

*First Nationwide Sav. v. Perry*,
   11 Cal. App. 4th 1657 (1992) ...........................................................................47

vi

*Fisk v. Letterman*,
  424 F. Supp. 2d 670 (S.D.N.Y. 2006) ................................................................41

*Flores v. Am. Seafoods Co.*,
  335 F.3d 904 (9th Cir. 2003) ..............................................................................23

*In re French*,
  440 F.3d 145 (4th Cir. 2006) ..............................................................................54

*F.T.C. v. Countrywide Home Loans Inc.*,
  548 F. App'x 450 (9th Cir. 2013) .........................................................................4

*In re Fundamental Long Term Care, Inc.*,
  873 F.3d 1325 (11th Cir. 2017) .....................................................................27, 28

*Goldwater Bank, N.A. v. Elizarov*,
  No. 22-55404, 2023 WL 387037 (9th Cir. Jan. 25, 2023) ............................46, 47

*Green v. Zukerkorn (In re Zukerkorn)*,
  484 B.R. 182 (B.A.P. 9th Cir. 2012) ...................................................................25

*Hernandez v. Select Portfolio, Inc.*,
  No. CV 15-01896 MMM, 2015 WL 3914741 (C.D. Cal. June 25, 2015) .........68

*HFGL Ltd. & CNH Cap. Eur. Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc.*,
  700 F. Supp. 2d 681 (D.N.J. 2010) .....................................................................67

*Hicks v. PGA Tour, Inc.*,
  897 F.3d 1109 (9th Cir. 2018) ............................................................................47

*Highland Cap. Mgmt. LP v. Schneider*,
  607 F.3d 322 (2d Cir. 2010) .........................................................................30, 31

*Hudson v. Nat'l Football League Mgmt. Council*,
  No. 18-cv-04483 (GHW) (RWL),
  2019 WL 5722220 (S.D.N.Y. Sept. 5, 2019) .....................................................36

*Huey v. Honeywell, Inc.*,
  82 F.3d 327 (9th Cir. 1996) .................................................................................5

4870-6554-4018

*In re ICP Strategic Credit Income Fund Ltd.*,
  No. 13-12116 (REG), 2015 WL 5404880 (Bankr. S.D.N.Y. Sept. 15, 2015),
  *aff'd*, 568 B.R. 596 (S.D.N.Y. 2017), *aff'd sub nom. In re ICP Strategic Income
  Fund, Ltd.*, 730 F. App'x 78 (2d Cir. 2018) ......................................................50

*In re Interbulk, Ltd.*,
  240 B.R. 195 (Bankr. S.D.N.Y. 1999)........................................................60, 61

*Jana v. W. 129th St. Realty Corp.*,
  22 A.D.3d 274 (1st Dep't 2005) .........................................................................45

*Johnson v. Allegretti*,
  778 F. App'x 549 (9th Cir. 2019)........................................................................42

*Johnson v. Mazza*,
  No. 2:15-cv-09183 ODW(AS),
  2017 WL 663153 (C.D. Cal. Feb. 17, 2017) .....................................................42

*Johnston Env't Corp. v. Knight (In re Goodman)*,
  991 F.2d 613 (9th Cir. 1993) ..............................................................................75

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
  494 F. App'x 153 (2d Cir. 2012) ........................................................................47

*Katchen v. Landy*,
  382 U.S. 323 (1966)............................................................................................59

*Kaufman v. Cohen*,
  307 A.D.2d 113 (1st Dep't 2003) ................................................................26, 27

*In re Kaypro*,
  218 F.3d 1070 (9th Cir. 2000) ............................................................................74

*King v. Bumble Trading, Inc.*,
  393 F. Supp. 3d 856 (N.D. Cal. 2019)................................................................24

*King v. Cavic Aviation Leasing (Ireland) 22 Co. Designated Activity Company*,
  Case No. 2:19-ap-01147-SK.................................................................1, 9, 10, 78

*King v. Yuntian 3 Leasing Company Designated Activity Company*,
  Case No. 2:19-ap-01383-SK.........................................................................1, 54

4870-6554-4018

*Kirschner v. KPMG LLP*,
   15 N.Y.3d 446 (N.Y. 2010) .................................................................49, 50, 51

*Klaehn v. Cali Bamboo LLC*,
   No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ...............................46

*Koshy v. Barbarosh*,
   788 F. App'x 536 (9th Cir. 2019) ........................................................................4

*Krock v. Lipsay*,
   97 F.3d 640 (2d Cir. 1996) ...............................................................................25

*KST Data, Inc. v. DXC Tech.*,
   No. CV 17-07927 SJO (SK), 2018 WL 5734227 (C.D. Cal. Mar. 26, 2018),
   *aff'd in relevant part, KST Data,* 836 F. App'x 484 (9th Cir. 2020) ...........23, 24

*Lagenkamp v. Culp*,
   498 U.S. 42 (1990)............................................................................................59

*In re Lexington Healthcare Grp., Inc.*,
   316 B.R. 658 (Bankr. D. Del. 2004)..................................................................64

*In re Lexington Healthcare Grp., Inc.*,
   339 B.R. 570 (Bankr. D. Del. 2006)..................................................................78

*Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp. of Del.*,
   805 F. Supp. 1277 (D.S.C. 1992), *aff'd*, 998 F.2d 1009 (4th Cir. 1993) ..........34

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ......................................................................49, 73

*In re LLS Am., LLC*,
   No. 09-06194-PCW11,
   2013 WL 3305393 (Bankr. E.D. Wash. July 1, 2013) .....................................70

*In re Lyondell Chem. Co.*,
   543 B.R. 127 (Bankr. S.D.N.Y. 2016)..............................................................57

*In re Lyondell Chem. Co.*,
   554 B.R. 635 (S.D.N.Y. 2016) .........................................................................71

*Martinez-Serrano v. INS*,
   94 F.3d 1256 (9th Cir. 1996), *cert. denied*, 522 U.S. 809 (1997) ...............62, 63

ix

*In re Maxwell Commc'n Corp. PLC*,
    186 B.R. 807 (S.D.N.Y. 1995) ............................................................................52

*Medimatch, Inc. v. Lucent Techs., Inc.*,
    120 F. Supp. 2d 842 (N.D. Cal. 2000) ..............................................................43

*In re Metromedia Fiber Network, Inc.*,
    No. 02 B 22736(ASH),
    2005 WL 3789133 (Bankr. S.D.N.Y. Dec. 20, 2005) ......................................74

*In re Midland Euro Exch. Inc.*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006) ...................................................52, 53, 55

*In re Miller*,
    292 B.R. 409 (B.A.P. 9th Cir. 2003) ...............................................................21

*In re Morris Commc'ns. NC, Inc.*,
    914 F.2d 458 (4th Cir. 1990) ............................................................................68

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010)...........................................................................................53

*N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
    458 U.S. 50 (1982).............................................................................................59

*In re Nat'l Audit Def. Network (In re NADN)*,
    367 B.R. 207 (Bankr. D. Nev. 2007) ...............................................................70

*New Greenwich Litig. Tr. LLC v. Citco Fund Servs. (Eur.) B.V.*,
    145 A.D.3d 17 (1st Dep't 2016) .................................................................49, 50

*In re Ocasio*,
    10 F. App'x 531 (9th Cir. 2001) .................................................................48, 49

*Odin Shipping Ltd. v. Drive Ocean V MV*,
    221 F.3d 1348 (9th Cir. 2000) ..........................................................................21

*Ottman v. Anthem Life Ins. Co.*,
    No. SA CV 15-0434-DOC, 2015 WL 12683809 (C.D. Cal. Oct. 15, 2015)......23

*In re Ozark Rest. Equip. Co.*,
    850 F.2d 342 (8th Cir. 1988) ............................................................................69

x

*In re Pac. Express, Inc.*,
  780 F.2d 1482 (9th Cir. 1986) .........................................................76

*Patton v. Forest Lab'ys, Inc.*,
  793 F. App'x 608 (9th Cir. 2020) ................................................2, 3, 4

*E.E.O.C. v. Peabody W. Coal Co.*,
  610 F.3d 1070 (9th Cir. 2010) .........................................................64

*Pepper v. Litton*,
  308 U.S. 295 (1939).........................................................................59

*In re Picard*,
  917 F.3d 85 (2d Cir. 2019) ..........................................52, 56, 57, 58

*In re Rezulin Prods. Liab. Litig.*,
  392 F. Supp. 2d 597 (S.D.N.Y. 2005) .............................................30

*RJR Nabisco, Inc. v. European Cmty.*,
  579 U.S. 325 (2016)......................................................17, 53, 61, 62

*Rosasen v. Kingdom of Norway*,
  No. 2:21-cv-6811-SPG(SP), 2022 WL 4390459 (C.D. Cal. July 14),
  *report and recommendation adopted*, 2022 WL 4389673
  (C.D. Cal. Sept. 19, 2022).................................................................21

*Samba Enters., LLC v. iMesh, Inc.*,
  No. 06 Civ. 7660(DC), 2009 WL 705537 (S.D.N.Y. Mar. 19, 2009),
  *aff'd*, 390 F. App'x 55 (2d Cir. 2010).............................................33

*Screen Cap. Int'l Corp. v. Library Asset Acquisition Co.*,
  510 B.R. 248 (C.D. Cal. 2014) .........................................................66

*Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*,
  513 B.R. 222 (S.D.N.Y. 2014), *rev'd on other grounds*, *In re Picard, Tr. for
  Liquid. of Bernard L. Madoff Inv. Sec., LLC*, 917 F.3d 85 (2d Cir. 2019), *cert.
  denied HSBC Holdings PLC v. Picard*, 140 S. Ct. 2824 (2020) ......................52

*In re Sentinel Mgmt. Grp.*,
  728 F.3d 660 (7th Cir. 2013) .........................................................70

*In re Sherwood Invs. Overseas Ltd.*,
  No. 6:10-bk-584-KSJ, 2016 WL 5719450 (M.D. Fla. Sept. 30, 2016)........52, 57

4870-6554-4018

*In re Simon*,
  153 F.3d 991 (9th Cir. 1998) ............................................................... 60

*Smith v. Marsh*,
  194 F.3d 1045 (9th Cir. 1999) ..................................... 49, 58, 62, 73

*In re SMTC Mfg. of Tex.*,
  421 B.R. 251 (Bankr. W.D. Tex. 2009) ............................... 72, 73

*Snyder v. Nationstar Mortg. LLC*,
  No. 15-cv-03049-JSC, 2016 WL 3519181 (N.D. Cal. June 28, 2016) .............. 79

*Spinelli v. NFL*,
  96 F. Supp. 3d 81 (S.D.N.Y. 2015) ...................................... 32

*In re Sterba*,
  852 F.3d 1175 (9th Cir. 2017) ....................................... 21, 22

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
  24 F.3d 1088 (9th Cir. 1994) ............................................. 55

*Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*,
  No. C 08-01780 MHP, 2008 WL 4450328 (N.D. Cal. Sept. 29, 2008) ....... 66, 69

*Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*,
  No. 16 Civ. 5211 (PAE), 2018 WL 3148357 (S.D.N.Y. June 27, 2018) .......... 33

*Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*,
  971 F.2d 401 (9th Cir. 1992) ......................................... 25

*Swanson v. United States Forest Serv.*,
  87 F.3d 339 (9th Cir. 1996) ............................................ 76

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019) ................................................. 77

*Thai Chee Ken (Liquidators of Pan-Elec. Indus. Ltd) v. Banque Paribas*
  [1993] 2 SLR 609 ....................................................... 67

*Tufano v. One Toms Point Lane Corp.*,
  64 F. Supp. 2d 119 (E.D.N.Y. 1999), *aff'd sub nom. Tufano v. One Toms Point
  Lane Corp., Bd. of Dirs.*, 229 F.3d 1136 (2d Cir. 2000) ...................... 40

xii

*Turtur v. Rothschild Registry Int'l, Inc.*,
   26 F.3d 304 (2d Cir. 1994) ........................................................................25

*In re United Energy Corp.*,
   944 F.2d 589 (9th Cir. 1991) ....................................................................70

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) ..................................................................48

*United States Fid. & Guar. Co. v. Bray*,
   225 U.S. 205 (1912)..................................................................................59

*United States v. Perez*,
   962 F.3d 420 (9th Cir. 2020) ......................................................................3

*Williams v. Leach*,
   938 F.2d 769 (7th Cir. 1991) ....................................................................63

*Wisdom v. Easton Diamond Sports, LLC*,
   No. CV 18-4078 DSF, 2018 WL 6264994 (C.D. Cal. Oct. 9, 2018) ................44

Statutes and Codes

United States Code
   Title 11 Section 101 *et seq.*............................................................*passim*
   Title 11 Section 105 ..................................................................................77
   Title 11 Section 362 ......................................................................75, 76, 77
   Title 11 Section 365 ..................................................................................76
   Title 11 Section 502 ..................................................................................20
   Title 11 Section 524 ..................................................................................60
   Title 11 Section 541 ..........................................................................*passim*
   Title 11 Section 547 ..........................................................................*passim*
   Title 11 Section 548 ..........................................................................*passim*
   Title 11 Section 550 ......................................................................52, 53, 54, 56

California Penal Code
   Section 641.3(a) ........................................................................................43

California Unfair Competition Law
   Bus. & Prof. Code §§ 17200 et. seq. ....................................................16, 43, 44

The Robinson Patman Act of 1936
   15 U.S.C. § 13............................................................................................78

xiii

4870-6554-4018

1

## Rules and Regulations

Code of Federal Regulations
 Title 48 Section 52.203-12 ................................................................27

Federal Rules of Bankruptcy Procedure
 Rule 2004 .......................................................................................8, 13
 Rule 7012 ..............................................................................................65
 Rule 7015 ..............................................................................................80
 Rule 7019 ..............................................................................................64
 Rule 7042 .......................................................................................78, 79

Federal Rules of Civil Procedure
 Rule 8 ....................................................................................................68
 Rule 9 .............................................................................47, 66, 69, 70
 Rule 12 .............................................................................................2, 65
 Rule 15 ...........................................................................................80, 81
 Rule 19 ...........................................................................................64, 65
 Rule 42 ...........................................................................................78, 79
 Rule 54 ..................................................................................................12

## Other Authorities

Extraterritorial Avoidance Actions Under the U.S. Bankruptcy Code - Harvard
 Law Review .............................................................................52, 56, 57

Restatement (Second) of Agency
 Section 1(1) ...........................................................................................30

Restatement (Second) of Conflict of Laws
 Section 187 .....................................................................22, 23, 24

4870-6554-4018

1    Appellees Bombardier Aerospace Corporation ("BAC"), Bombardier Inc.

2 ("BI"), and Learjet, Inc. ("LI," together with BAC and BI, "Bombardier") hereby

3 respond to the Opening Brief filed by Jonathan D. King, the Chapter 7 Trustee

4 ("Trustee") of Zetta Jet USA, Inc. ("Zetta USA") and Zetta Jet PTE, Ltd. ("Zetta

5 PTE," together with Zetta USA, "Zetta" or the "Debtors") in this appeal.  The

6 Trustee has appealed from a final judgment ("Judgment") dismissing with prejudice

7 the claims asserted in the Adversary Proceeding against Bombardier.  The Adversary

8 Proceeding asserted claims against (i) Bombardier, (ii) Jetcraft Corporation, Jetcraft

9 Global, Inc., Jetcoast 5000-5 LLC ("Jetcoast"), Orion Aircraft Holdings Ltd.

10 ("Orion"), Jetcraft Asia Limited (together, "Jetcraft"); and (iii) FK Group Ltd, FK

11 Partners Limited, and Jahid Fazal-Karim ("Fazal-Karim," together with FK Group

12 Ltd and FK Partners Limited, the "FK Entities") (the "Jetcraft Action").[1]

13

14 ───────────────
[1] All capitalized terms are as defined in the First Amended Complaint ("FAC"),
15 except as otherwise noted. All emphasis has been added, unless otherwise noted.
The Trustee's Opening Brief is referenced as "Br.___."  The adversary proceeding
16 styled *King v. Cavic Aviation Leasing (Ireland) 22 Co. Designated Activity
Company*, Case No. 2:19-ap-01147-SK is referenced as the "CALI Action." The
adversary proceeding styled *King v. Yuntian 3 Leasing Company Designated
17 Activity Company*, Case No. 2:19-ap-01383-SK is referenced as the "Yuntian
Action."  ECN Aviation Inc. *f/k/a* Element Aviation Inc. ("Element Aviation")
18 and ECN Capital Corporation, as successor to Element Financial Corporation ("ECN"
and together with Element Aviation, "Element"), were previously named as
19 defendants, but later voluntarily dismissed after settlement.  The Bankruptcy Court's
April 27, 2022 Memorandum Decision dismissing the FAC [30-ER-041476-041558]
20 is cited as "MTD Order."  The Federal Rules of Civil Procedure are referenced as
the "Rules," and each individually, a "Rule."  Sections of the United States

1

4870-6554-4018

## **COUNTER-STATEMENT OF THE ISSUES**

Whether the Bankruptcy Court properly:

1.     Held that the New York choice-of-law clause in the contracts between Zetta PTE and BAC was enforceable and applied to the Trustee's tort claims (Counts 1-3, 6-7).  Choice-of-law determinations are reviewed *de novo*, with factual findings reviewed for clear error.  *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020).

2.     Held that the FAC failed plausibly to allege that Jetcraft was the actual or ostensible agent of Bombardier.  A Rule 12(b)(6) dismissal is reviewed *de novo*. *See Patton v. Forest Lab'ys, Inc.*, 793 F. App'x 608, 609 (9th Cir. 2020).

3.     Held that the FAC failed plausibly to state any tort claims against Bombardier based on Bombardier giving five sports tickets to a client.  A Rule 12(b)(6) dismissal is reviewed *de novo*.  *Id.*

4.     Held that the FAC failed plausibly to state any tort claims against Bombardier for having discussions about purchasing and selling two jet skis.  A Rule 12(b)(6) dismissal is reviewed *de novo*.  *Id.*

5.     Dismissed all fraudulent transfer and preference claims:

---

Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, (the "Bankruptcy Code"), are referenced as "Sections," and each individually, a "Section."

2

a.      Because the applicable Bankruptcy Code provisions do not apply to initial transfers made from a foreign company's overseas bank account.  Extraterritoriality determinations are reviewed *de novo*. *United States v. Perez*, 962 F.3d 420 (9th Cir. 2020); or alternatively,

b.      Because the Trustee (who has waived the right to address the following issues by not mentioning them in his Opening Brief):

     i.      failed to join necessary parties to the contracts he sought to recharacterize.  Indispensable party determinations are reviewed for abuse of discretion.  *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002);

     ii.      failed to state constructive fraudulent transfer claims where the challenged transfers were made by third-party lessors (not the Debtors), and the FAC contained contradictory allegations about whether the Debtors received reasonably equivalent value.  A determination that a pleading fails to state a claim is reviewed *de novo*. *See Patton*, 793 F. App'x at 609; and

3

4870-6554-4018

iii.    failed to state an actual fraudulent transfer claim based on Zetta PTE purchasing aircraft for its operations.   A determination that a pleading fails to state a claim is reviewed *de novo*. *Id.*

6.    Held that the Trustee lacked standing to claim that Bombardier violated the automatic stay (Count 20).  Standing determinations are reviewed *de novo*. *F.T.C. v. Countrywide Home Loans Inc.*, 548 F. App'x 450 (9th Cir. 2013).

7.    Exercised its discretion in denying the Trustee's motion to consolidate two proceedings when no operative complaints had been filed in either.  A denial of a motion to consolidate is reviewed for abuse of discretion.  *See Barber v. Cin. Bengals, Inc.*, 95 F.3d 1156, 1156 (9th Cir. 1996).

8.    Exercised its discretion in denying the Trustee leave to amend again on the grounds of futility.  Denial of leave to amend is reviewed for abuse of discretion, but the question of futility is reviewed *de novo*.  *See Koshy v. Barbarosh*, 788 F. App'x 536, 538 (9th Cir. 2019).

## STATEMENT OF THE CASE

## I.    Statement of Facts

According to the FAC and Original Complaint, Zetta was a luxury aircraft charter company from July 15, 2015 through November 30, 2017, established to serve "wealthy Chinese clientele who wanted to fly on brand new Bombardier

4

1   Global 5000s and 6000s."[2] [1-ER-000203].   It was owned in equal shares by

2   Geoffrey Cassidy ("Cassidy"), James Seagrim ("Seagrim"), and Matthew Walter

3   ("Walter"). [25-ER-026679 ¶21].

4        To build its fleet, Zetta PTE caused six business aircraft to be purchased from

5   BAC: four Global 6000s in December 2015 ("Planes 2-5" or the "CALI

6   Transactions") and two Global 6000s in February 2016 ("Planes 8-9"). [25-ER-

7   026700-026703 ¶¶133-48, 026708-026709 ¶¶176-80].   (As the Trustee makes no

8   claims with respect to Planes 8-9, we address only Planes 2-5 below.)   These aircraft

9   were priced consistent with Zetta's business plan and well below their 2015 base list

10  price of $63 million. [30-ER-040036].   Zetta also purchased or leased ten additional

11  aircraft from third parties, including "Planes 1 and 10" (the "Element Transactions").

12      **A.    The CALI Transactions (Planes 2-5)**

13      Fazal-Karim was Bombardier's outside sales representative for the sale of

14  Planes 2-5 pursuant to certain Representative Agreements.   [30-ER-040044, 040048,

15  040052, 040056].   The Representative Agreements state that Fazal-Karim "is acting

16  as an independent contractor and not as an agent of Bombardier, and that

17

18

19  _____

    [2] This allegation was included in the Original Complaint but omitted from the FAC
20  because it was unhelpful to the Trustee's position.   The Bankruptcy Court properly
    considered these omitted allegations in ruling on Bombardier's motion to dismiss.
    *See Huey v. Honeywell, Inc.*, 82 F.3d 327, 333 (9th Cir. 1996).

4870-6554-4018

Representative has no express or implied authority to bind or obligate Bombardier in any manner whatsoever." [30-ER-040045, 040049, 040053, 040057].

In Section 14.1 of the Aircraft Purchase Agreements ("APAs") for Planes 2-5, BAC ensured that Zetta PTE understood Fazal-Karim's limited authority by stating:

> Buyer understands that Jahid Fazal-Karim may be appointed as a sales representative of Seller in connection with this transaction. Whether or not said appointment is finally approved by Seller, **Jahid Fazal-Karim has no authority and will not have any authority to make any representations or warranties on behalf of Seller or to legally bind Seller** under a contract for the sale of the subject Aircraft.

[25-ER-027615, 027923, 028405, 029126].  Although Fazal-Karim's role and the limits on his authority were at the heart of the FAC, the FAC quoted none of the agency disclaimers set forth above.

For Planes 2-5, Zetta PTE assigned the APAs to an equipment leasing company, CAVIC Aviation Leasing (Ireland) 22 Co. Designated Activity Co. ("CALI") (the "APA Assignments").  In the APA Assignments, Zetta PTE assigned to CALI, *inter alia*:

(a) "full title [to the Aircraft] under the warranty bill of sale,"

(b) "any and all rights of Assignor [Zetta PTE] to compel performance of the terms of the [APAs for Planes 2-5] by Bombardier," and

(c) the right to reimbursement upon termination or otherwise.

[30-ER-039980-039981, 039987-039988, 039994-039995; 25-ER-029892-029893].  CALI in turn paid BAC for these planes.  [30-ER-039980-039985,

6

1    039987-039992, 039994-039999; 25-ER-029892-029899].  CALI then leased the

2    aircraft to various subsidiary Zetta entities. [25-ER-027630, 027960, 028581,

3    029328].   Thus, only CALI had the right to enforce the APAs and receive

4    reimbursement of payments.

5              **B.      The Element Transactions (Planes 1 and 10)**

6              In addition to sometimes serving as an outside sales representative for

7    Bombardier, Fazal-Karim owned various business aircraft companies, including

8    Jetcraft, which buys new and preowned aircraft from multiple manufacturers for its

9    own inventory, and then subsequently resells them.  [25-ER-026682-026683 ¶¶38-

10   47]. Zetta PTE purchased Plane 1 from Jetcraft pursuant to an APA dated December

11   5, 2015, with financing provided by Element Financial.  [25-ER-026698 ¶120].

12   Zetta PTE purchased Plane 10 from Orion, a Jetcraft affiliate, on August 30, 2016.

13   [25-ER-030424].  Orion "had initially purchased Plane 10 in December 2015 from

14   an unrelated third party in a deal financed by Element."  [25-ER-026709 ¶183].

15             Bombardier did not sell Planes 1 or 10 to Zetta PTE; was not a party to either

16   the Jetcraft or Orion resale contracts; and, indeed, was entirely uninvolved in these

17   sales.  [25-ER-026999, 030424].

18             The FAC alleged that: (i) "in November 2015, Fazal-Karim agreed to cause

19   Jetcraft to pay Cassidy a $500,000 bribe (the 'First Kickback') fraudulently

20   disguised to look like it was a part of the purchase price of **Plane 1**"; and (ii) "in

7

August 2016, Fazal-Karim agreed to have Jetcraft pay Cassidy a $500,000 bribe (the 'Second Kickback') fraudulently disguised to look like it was a part of the purchase price of **Plane 10**."  [25-ER-026720 ¶241, 25-ER-026725-026726 ¶271].

Every allegation concerning these payments related to Jetcraft or its personnel; not one mentions Bombardier.  [25-ER-026722-026729] (discussing actions by Jetcraft's president and its CFO).  Nonetheless, the FAC alleged that BAC should be liable for these payments either because Fazal-Karim was BAC's agent and Jetcraft was Fazal-Karim's "alter ego" [25-ER-026746-026747 ¶¶368-71], or because the purchases of Planes 1 and 10 were "linked" to other purchases from BAC.  [25-ER-026751-026755, 026720-026722, 026725-026726].

### C.  The Zetta Bankruptcy

After two years of operations, Zetta filed chapter 11 cases on September 15, 2017, which were later converted to chapter 7 on December 4, 2017.  [25-ER-026745-026746 ¶¶365-66].  The FAC alleged that Zetta's financial troubles owed to Cassidy embezzling funds from Zetta PTE and accepting bribes, which allegedly caused him to purchase overpriced aircraft.  [25-ER-026755-026756].

## II.  <u>Procedural History</u>

On September 13, 2019, after receiving tens of thousands of documents in connection with Fed. R. Bankr. P. 2004 ("Rule 2004") discovery, the Trustee filed the Original Complaint, asserting twelve tort and bankruptcy claims against

8

Bombardier for, *inter alia*, purportedly inducing Cassidy to cause Zetta to purchase aircraft for $100 million above their aggregate fair market value – *i.e.,* for inducing him to destroy his own company.  [1-ER-000192-000269].  No information was given as to how the Trustee derived his $100 million number, and no facts were alleged as to how experienced aircraft lessors were duped into purchasing such overpriced assets.

The improper payments were allegedly made in connection with Planes 1 and 10 by Jetcraft, which the FAC strained to attribute to BAC.  The FAC also alleged that Bombardier itself paid "bribes" by (a) providing the "Zetta team" with five tickets to a Bombardier-sponsored race car event and (b) discussing providing Zetta or Cassidy (it is unclear) with two jet skis, but then not providing them.  [1-ER-000228-000230 ¶¶193-203].

On March 12, 2020, in a detailed 42-page opinion, the Court dismissed the Original Complaint for failure to state any plausible claims against Bombardier, with leave to amend all counts except unjust enrichment.  The latter was dismissed with prejudice as not a standalone cause of action.  [2-ER-001173-001216].

Instead of filing an amended complaint, on December 4, 2020, the Trustee filed a motion to consolidate the CALI Action and Jetcraft Action, together with a proposed consolidated amended complaint.  [3-ER-001784-001790].  In the CALI Action, which had also been dismissed, the Trustee sought to recover from BAC $30

4870-6554-4018

million in pre-delivery payments made by CALI (an equipment lessor) for Plane 5 (1-ER-000028-000029), alleging that CALI's lease should be recharacterized as an unsecured loan to Zetta PTE. *Id.* Without operative complaints in either the CALI or Jetcraft Action, the Trustee's proposed consolidated amended pleading asserted *thirty-six* claims, including new claims against Bombardier under RICO, antitrust and penal statutes. [18-ER-015851-016184]. It also added seven new parties and attached over 4,000 pages of exhibits and schedules. *Id.*

On April 5, 2021, the Bankruptcy Court denied consolidation as "legally unsound" (30-ER-041558), holding that the Trustee had only been given "leave to amend all counts other than [unjust enrichment]" (4-ER-003188), that consolidation was improper "without operative complaints in each adversary [proceeding]" (4-ER-003193), and that the Trustee had not shown a common question of law or fact between the two adversary proceedings. [*See generally* 4-ER-003186-003213].

On April 28, 2021, the Trustee filed a motion seeking leave to file an amended complaint, and essentially re-submitted the same pleading it had provided the Court when it moved to consolidate – replete with the same added parties and causes of action. [5-ER-003228-003727, 003780-004316]. On July 13, 2021, the Bankruptcy Court denied this motion as well, holding the Trustee only had leave to replead the claims that were previously dismissed without prejudice. [18-ER-015742-015790].

10

On July 23, 2021, the Trustee filed the FAC, again implausibly alleging that (a) improper payments by Jetcraft were attributable to Bombardier (in defiance of all the agency disclaimers in the contracts); (b) BAC and Jetcraft sales were part of a "package deal" (despite no cross-referencing of the sales in any contracts); (c) giving a client sports tickets is a bribe (despite client entertainment being an accepted and widespread business practice and no authority supporting the Trustee); (d) discussing the sale of two jet skis is a bribe (despite Bombardier never buying, selling or gifting them); and (e) sophisticated lessors inexplicably purchased aircraft at $100 million over their true price, saddling the Debtors with unsustainable leases. [18-ER-016523-016571].

On June 23, 2022, each of the tort claims was dismissed with prejudice as implausible and failing to state a claim. [30-ER-041476-041558]. The bankruptcy claims were likewise dismissed because, *inter alia*, the Trustee lacked standing to assert stay violation claims and the Trustee impermissibly sought to apply preference and avoidance provisions of the Bankruptcy Code extraterritorially. *Id.*

The Trustee now appeals from the Order dismissing the Original Complaint and the MTD Order dismissing the FAC with prejudice, and the related decisions

4870-6554-4018

denying consolidation and leave to amend, contending that every decision of the Bankruptcy Court was in error.[3]

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court appropriately dismissed the FAC with prejudice because, even though it had more than 800 paragraphs and 4,000 pages of exhibits and schedules, it failed to identify *anything* that Bombardier did wrong.

At its core, the FAC postulated that Bombardier gave Cassidy three bribes to induce him to buy aircraft for "nearly $100 million above fair market value." [25-ER-026692 ¶93]. The first was five tickets to the "Zetta team" for a Bombardier-sponsored formula one ("F1") race car event. *This* – sports tickets to a client – was said to be a bribe. As the Bankruptcy Court correctly held, the tickets were "equally consistent with ordinary business entertainment" and "labeling the F1 Tickets as a 'commercial bribe' . . . is conclusory." [30-ER-041534]. Indeed, not a single case finds comparable conduct to be tortious.

The second "bribe" related to an email where a Bombardier employee discussed two Bombardier Recreational Product jet skis for a yachting joint venture between Fazal-Karim and Cassidy and then proposed to sell (not gift) them to Fazal-

---

[3] The Trustee's Statement of Issues on Appeal and Designation of Record [Dkt. No. 442] raised numerous other issues which the Trustee never addressed in his Opening Brief. *See, e.g.,* Issue No. 2 (regarding entry of a final judgment under Rule 54(b)), Issue No. 7 (denial of leave to amend following failed consolidation attempt). The Trustee has waived his right to challenge those orders.

4870-6554-4018

Karim.  In the end, Fazal-Karim did not make the purchase, and nothing was sold or transferred by Bombardier to anybody.  *This* is a bribe?  The Bankruptcy Court correctly held that this vaguely-described event (or, more accurately, non-event) could not support any claims either.

Last, the Trustee pointed to two payments to Cassidy of $500,000, which could indeed support plausible bribery claims – if they had anything to do with Bombardier.  The alleged payments involved the sale of two aircraft owned by a company called Jetcraft – sales in which Bombardier had no involvement and which were made by a company over which Bombardier had no control.

The Trustee knew this from the start based on his exhaustive pre-suit Rule 2004 discovery.  Yet, he tried to link Bombardier to these payments by inexcusably keeping salient facts out of his pleading:  The Trustee said, for example, that Fazal-Karim (Jetcraft's president) was Bombardier's actual agent, but omitted from his pleading (and its copious exhibits) Fazal-Karim's contract with Bombardier stating Fazal-Karim acted as "an independent contractor and <u>not</u> as an agent of Bombardier" and had "no express or implied authority to bind or obligate Bombardier in any manner whatsoever."  [30-ER-040045, 040049, 040053, 040057].

This was not the only omission.  The Trustee also stated that Bombardier, in its dealings with Zetta, clothed Fazal-Karim with apparent authority.  But the agency disclaimers in the APAs between Bombardier and Zetta – also omitted from the FAC

13

1  – stated the opposite: "Fazal-Karim has no authority and will not have any authority

2  to make any representations or warranties on behalf of [Bombardier] or to legally

3  bind [Bombardier]."  [25-ER-027615, 027923, 028405, 029126].

4      The Bankruptcy Court thus correctly held that the "paragraphs alleging that

5  Fazal-Karim was acting as BAC/BI's agent are conclusory and are insufficient to

6  withstand a 12(b)(6) motion."  [30-ER-041520].  This was not, as the Trustee now

7  claims, the Bankruptcy Court "revers[ing] course" (Br. 7) after finding the Original

8  Complaint adequately pled agency.  The Bankruptcy Court reached a different

9  conclusion after receiving the agency disclaimers – which the Trustee should have

10  disclosed from the very start.

11      The absence of wrongdoing by Bombardier is alone grounds to affirm.

12      But it is not the only reason.  The Trustee's case theory – that Bombardier got

13  Cassidy to overpay for aircraft by close to $100 million – was always implausible.

14  For this theory to hold, Cassidy had to be willing to destroy his own company for

15  five sports tickets and two hoped-for jet skis; Cassidy's business partners –

16  experienced owners of aircraft charter operations – had to be willing to approve

17  aircraft transactions at wildly inflated prices; and sophisticated equipment lessors

18  had to be willing to purchase the aircraft at such above-market pricing.

19      None of this makes any sense, and the FAC exhibits eviscerate the Trustee's

20  theory regardless.  They show that Zetta purchased the aircraft at substantially *below*

14

1   their list price for the very amounts contemplated by the shareholder-approved Zetta

2   business plan.  It is implausible that Cassidy violated his fiduciary duties to his

3   fellow shareholders – and Bombardier conspired with and aided him in doing so –

4   by carrying out the very transactions that his fellow shareholders approved in the

5   business plan and asked Cassidy to undertake.

6        On appeal, the Trustee makes little effort to rationalize his theory.  Rather, he

7   primarily says that the Bankruptcy Court erred in not accepting every allegation in

8   the FAC as true at the motion to dismiss stage.  Br. 7 ("The Bankruptcy Court

9   improperly disregarded the FAC's allegations").  According to him, if the FAC

10  alleged that Fazal-Karim was an agent, he was an agent, no matter what the

11  documents state; if the FAC alleged that the sports tickets were bribes, they were

12  bribes, even though such business entertainment is accepted and common and no

13  authority holds otherwise; if the FAC alleged that Jetcraft and Bombardier sales were

14  part of "package deals," it mattered not that no deal was cross-referenced or

15  contingent on any other or that the deals involved different buyers, sellers, aircraft

16  types, and financing and leasing structures.

17       This is hopeless.  The Trustee wants the Court to ignore basic motion-to-

18  dismiss standards.  Although allegations in a complaint generally are assumed to be

19  true on a motion to dismiss, that presumption does not reach allegations that are

20  conclusory (like the $100 million above market allegations) or contradicted by

15

4870-6554-4018

documents incorporated into the pleading (like the agency and package deal allegations) or that are equally consistent with innocent conduct (like the sports ticket allegations).

The Bankruptcy Court thus correctly dismissed the FAC with prejudice. The aiding and abetting claim (Count 1) failed because the FAC did not have any allegations showing that Bombardier gave any aid; the conspiracy claim (Count 2) failed because there were no facts showing that Bombardier and Jetcraft had an illicit agreement (let alone an agreement pled with specificity) or that Bombardier took any overt steps in furtherance of that (unspecified) agreement; the California Unfair Competition Law ("UCL") claim (Count 3) failed because the FAC does not identify any bribes and the allegedly offensive payment by a non-US company (Jetcraft) to non-US recipient (Cassidy) had nothing to do with California; the fraud claims (Counts 6 and 7) failed because they were premised on statements made *by Zetta to Jetcraft* which had nothing to do with anything Bombardier said or failed to say; and the unjust enrichment count (Count 4 in the Original Complaint) failed because it was not a standalone cause of action and the pleading failed to identify anything unjust that Bombardier did.

As for the Trustee's bankruptcy claims (Counts 12 – 20, 25, and 31 – 32, the "Bankruptcy Claims") – which largely sought to challenge overseas transfers and

16

4870-6554-4018

payments made by third parties (not the Debtors) – the Bankruptcy Court's decision should likewise be affirmed.

The Bankruptcy Court correctly dismissed the constructive and actual fraudulent transfer counts under Section 548(a) (Counts 12-17 and 31-32) and the preferential transfer counts under Section 547 (Counts 18 and 19), each of which challenged transfers from Zetta PTE's bank account in Singapore. Avoiding the challenged transfers, the Bankruptcy Court explained, would impermissibly require the extraterritorial application of these Bankruptcy Code sections, risking a conflict between U.S. law and the law of other nations in the absence of a "clear affirmative indication" that Section 547 or 548 was intended to have such reach. *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 337-38 (2016).

The Trustee's argument that these overseas transfers could be treated as if domestic because payments were sent to a U.S. bank account and the parties' relationship otherwise touched the United States is wrong. As the Supreme Court teaches, where "the relevant conduct occurred in a foreign country" – here, the initial transfers from Singaporean bank accounts – "the case involves an impermissible extraterritorial application [even though some] conduct occurred in US." *Id.* at 326.

Critically, the same fraudulent transfer and preference Counts were also dismissed in the Original Complaint for numerous other cogent reasons that the Trustee nowhere even addresses. The Trustee appealed from the original motion to

17

1  dismiss Order (31-ER-042420-042421); expressly raised the dismissal of each

2  Count in the Original Complaint in his Statement of Issues on Appeal (Dkt. No. 442,

3  Nos. 4 and 19); but did not address any of those issues in his Opening Brief.

4  Arguments challenging the other bases for dismissing these claims are now waived;

5  it would be fundamentally unfair for them first to be raised in reply.

6  And these alternative grounds for dismissing the fraudulent transfer and

7  preference claims are equally lethal:

8  *First*, nearly all challenged transfers were made by equipment lessors (CALI

9  and Glove Assets[4]) that purchased the aircraft, not the Debtors. Challenging these

10  transfers required the recharacterization of CALI's and Glove Assets' leases as

11  disguised financings, relief the Trustee could not obtain because (a) he failed timely

12  to join the lessors who were indispensable parties; and (b) applicable English and

13  Singaporean law prohibit recharacterization of leases as loans.

14  *Second*, the Trustee's story – that the Debtors purchase of aircraft for charter

15  operations was part of a "Ponzi-like" scheme, such that the purchase payments were

16  intended to hinder, delay, or defraud creditors – was, like so much else here,

17  implausible. In a real Ponzi scheme, payments to earlier investors defraud more

18  recent investors who thought they were putting money into an operating business.

19

20  ---

[4] Glove Assets' affiliate, Universal Leader, provided the funds to the Debtor to purchase the aircraft for Glove Assets that was leased to the Debtor. [25-ER-026704 ¶¶152-153].

Here, in contrast, the money transferred to Bombardier was for operations and used exactly as represented to the creditors providing the capital.  The "Ponzi-like" label did not fit at all.

*Third*, the FAC failed to plead facts showing that Zetta – in receiving highly-customized, deluxe business aircraft – did not receive reasonably equivalent value for the purchase payments.  The Trustee's allegations that Zetta overpaid close to an astonishing $100 million for the aircraft (a) impermissibly relied on an undisclosed and undetailed expert report; (b) failed to state that comparably equipped aircraft were available for purchase at lower prices in the time frame required; (c) conflicted with the Debtors' business plan, which contemplated purchase prices exactly in line with actual purchase prices; and (d) could not be plausibly reconciled with the fact that Debtors' industry-experienced board approved the transactions and highly sophisticated aircraft lenders and lessors financed and purchased the aircraft at such pricing.  The FAC offered no plausible basis to infer that the exchange of aircraft for cash or debt was not reasonably equivalent.

The Trustee's request for damages against Bombardier in Count 20 for alleged violations of the automatic stay was also properly dismissed.  The Bankruptcy Court, consistent with Ninth Circuit precedent, correctly held that the Trustee is not an individual entitled to recover damages for an alleged violation of the automatic stay.

4870-6554-4018

Finally, the Bankruptcy Court's dismissal of Count 25 – which sought to disallow Bombardier's proofs of claim under Section 502(d) as the recipient of avoidable transfers – was also proper.  The Trustee could not cause a claim to be disallowed based on avoidance claims he could not pursue.

The Bankruptcy Court's decision should be affirmed.

## ARGUMENT

**I.    The Bankruptcy Court Properly Dismissed the FAC with Prejudice for Failure to State a Claim**

### A.    The Tort Claims (Counts 1-3, 6-7) Were Legally Deficient

#### 1.    New York Law Applies to the Trustee's Tort Claims

The Bankruptcy Court correctly applied New York law to the tort claims (30-ER-041498-041512) as the parties selected New York law to govern their entire relationship as set forth in the APAs:

> This Agreement including its formation, performance, termination and/or enforcement and the parties' relationship in connection therewith, together with any related claims arising under common law or statute, whether sounding in contract, tort or otherwise shall be governed, construed and enforced in all respects in accordance with the laws of the State of New York U.S.A., excluding the State of New York's conflicts of law provisions.

[25-ER-027609, 027917, 028399, 029120, 030366-0300367, 030397-030398].[5]

---

[5] The Bankruptcy Court also properly denied the Trustee's argument that "some of the wrongful conduct [alleged] predate[d] the [APAs] and would be actionable despite any contract" (Br. 32) as belied by the FAC itself. [30-ER-041512] (citing 25-ER-026720-026751 ¶¶241-42, 342, 349, 388).

20

New York law was also selected in all other agreements between Bombardier and Zetta – the APA Assignments, Zetta PTE's promissory note, an affidavit of confession of judgment, and a partial settlement agreement.  [30-ER-041499].[6]

In this Circuit, "federal common law choice of law rules apply in bankruptcy cases."  *In re Miller*, 292 B.R. 409, 413 (B.A.P. 9th Cir. 2003) (citations omitted); *In re Sterba*, 852 F.3d 1175, 1179 (9th Cir. 2017).   Accordingly, "[federal] law determines the *enforceability* of a choice-of-law provision" but "[t]he *scope* of that provision is . . . governed by the law selected in the choice-of-law provision."  *Odin Shipping Ltd. v. Drive Ocean V MV*, 221 F.3d 1348, 1348 (9th Cir. 2000) (citations omitted).[7]

---

[6] The Trustee suggests that Bombardier did not need uniform law because English law governs the leases between Zetta and its lessors.  Br. 34.  But Bombardier was not party to the leases.  The Trustee also notes that the Representative Agreements are not governed by New York law.  *Id.* at 34-35.  But this is irrelevant because these agreements were not with Zetta.

[7]  In a footnote (Br. 33 n.5), the Trustee cites *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc*., 54 F.4th 1078 (9th Cir. 2022) for the proposition that state choice-of-law rules apply in federal court unless a federal interest is at stake.  Br. 33 (citing *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S. Ct. 1502, 1509 (2022)).  But *Cal. Dep't* is inapposite. It neither addressed bankruptcy cases nor situations where the parties have selected the laws to govern their relationship.  *See* 54 F.4th 1078.  Further, the precedent cited in *Cassirer*, 142 S. Ct. at 1509, has been limited to "non-federal claims *against a foreign state*" – a situation clearly not present here.  *See, e.g., Rosasen v. Kingdom of Norway*, No. 2:21-cv-6811-SPG(SP), 2022 WL 4390459, at *10 (C.D. Cal. July 14), *report and recommendation adopted*, 2022 WL 4389673 (C.D. Cal. Sept. 19, 2022).

21

Federal common law applies Section 187 of the Restatement (Second) of Conflict of Laws to determine the enforceability of a choice-of-law provision. *In re Sterba*, 852 F.3d at 1179. Section 187(1) provides that a choice-of-law clause "will be applied" if it addresses an issue "which the parties could have resolved by an explicit provision in their agreement." Except for when the validity of a contract is at issue, Section 187(1) "requires complete deference to the contractual choice-of-law provision." *Carmel Fin., LLC v. Schoenmann*, No. 3:21-cv-07387-WHO, 2022 WL 3599561, at *9 (N.D. Cal. Aug. 23, 2022). This is so even if the law chosen lacks "any reasonable relationship to the place of creation or performance of the contract." *In re CMR Mortg. Fund, LLC*, 416 B.R. 720, 729 (Bankr. N.D. Cal. 2009). As the Ninth Circuit teaches: "Restatement section 187 . . . reflects a strong policy favoring enforcement of [choice-of-law] provisions." *ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005) (citations omitted). The Bankruptcy Court correctly applied Section 187(1) in deferring to the parties' New York choice-of-law. [30-ER-041502-041506].

On appeal, the Trustee argues Restatement Section 187(1) applies only when a choice-of-law clause applies to a specific issue, not an entire contract, and that Restatement Section 187(2) controls here. Br. 33. But none of the cases he relies

22

4870-6554-4018

1    upon for that rather odd distinction (contracts very seldom choose law for just one

2    issue) were decided under federal choice-of-law principles.[8]

3        More fundamentally, applying Section 187(2) makes no difference.  That

4    section provides that courts should enforce the law selected except where "(a) the

5    chosen state has no substantial relationship to the parties or the transaction and there

6    is no other reasonable basis for the parties' choice, or (b) application of the law of

7    the chosen state would be contrary to a fundamental policy of a state which has a

8    materially greater interest . . . in the determination of the particular issue."  § 187(2).

9        Here, as the Bankruptcy Court found, there *was* a reasonable basis for the

10   chosen law: parties to international aircraft transactions routinely select New York

11   law as it is well-developed and predictable, and Bombardier had an obvious interest

12   in having one body of law govern its multiple contracts with Zetta.  [30-ER-041506];

13   *see also KST Data, Inc. v. DXC Tech.*, No. CV 17-07927 SJO (SK), 2018 WL

14   5734227, at *5 (C.D. Cal. Mar. 26, 2018) ("choosing New York law [] to create

15   uniformity across many like agreements with parties in multiple states" is a relevant

16

17   ───────────────

     [8] *See* Br. 32-34, citing *AI CA LLC v. CrediAutoUSA Fin. Co. LLC*, No. 20-cv-2352-
18   MMA (AHG), 2022 WL 4798128, at *3 (S.D. Cal. Sept. 30, 2022) (applying
     California choice of law rules); *KST Data, Inc. v. DXC Tech. Co.*, 836 F. App'x 484,
     487 (9th Cir. 2020) (same); *Ottman v. Anthem Life Ins. Co.*, No. SA CV 15-0434-
19   DOC (RNBx), 2015 WL 12683809, at *2 (C.D. Cal. Oct. 15, 2015) (same); *BASF
     Corp. v. SSM Auto. Grp., Inc.*, No. 5:21-cv-01191-MEMF (SHKx), 2022 WL
20   2288427, at *3 (C.D. Cal. May 17, 2022) (same); *Flores v. Am. Seafoods Co.*, 335
     F.3d 904, 917 (9th Cir. 2003) (applying maritime choice-of-law principles).

1   factor under § 187(2), as is "particular familiarity with New York law" and the fact

2   that it would "minimize uncertainty in a specific and foreseeable way.") (citations

3   omitted), *aff'd in relevant part, KST Data,* 836 F. App'x 484; *Cooper v. Certain*

4   *Underwriters at Lloyd's, London*, 716 F. App'x 735, 736 (9th Cir. 2018) (holding

5   that reasonable basis for New York law existed under § 187(2) because

6   "international defendants have an interest in contracting under the laws of a state—

7   even one not substantially related to the contract—for reasons of uniformity and

8   predictability"); *King v. Bumble Trading, Inc*., 393 F. Supp. 3d 856, 865 (N.D. Cal.

9   2019) (holding there was reasonable basis for selecting New York law to have

10  uniformity across multiple agreements).

11      The Trustee also argues that California has a greater interest in this dispute

12  and that New York law is anathema to its fundamental policies. As the Bankruptcy

13  Court found: "This portion of the Trustee's argument requires little analysis." [30-

14  ER-041507]. California does not have a greater interest because (i) the Zetta-BAC

15  APAs "were between Zetta Singapore and BAC, and the FAC contained no

16  allegations that either Zetta Singapore or BAC have any connection to California"

17  and (ii) "there are no allegations or argument that any of the alleged harm sustained

18  by the Debtors occurred in California." [30-ER-041507-041508]. Further, the

19  Bankruptcy Court found applying New York jurisprudence would not undermine

20  California fundamental policies. The "choice of law public policy exception

24

1    requires 'something more than the law of the other state be different from the law of

2    California.'"  [30-ER-041508] (quoting *Green v. Zukerkorn (In re Zukerkorn)*, 484

3    B.R. 182, 193 (B.A.P. 9th Cir. 2012)).

4         Finally, the Bankruptcy Court properly held that the scope of the choice-of-

5    law clause covered the Trustee's tort claims.  [30-ER-041509-041512].  Under New

6    York law, for a choice-of-law provision to apply to tort claims, "the express language

7    of the provision must be 'sufficiently broad' as to encompass the entire relationship

8    between the contracting parties."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996)

9    (citation omitted); *accord Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309-

10   10 (2d Cir. 1994) (New York law applied to fraud claims pursuant to contractual

11   choice-of-law provision).  Here, as the Bankruptcy Court found, the choice-of-law

12   provision covers the parties' "contractual relationship" and "*any* related claims

13   arising under common law or statute, *including claims sounding in tort*."  [30-ER-

14   041509-041510] (emphasis in original).  It would be difficult to draft a choice-of-

15   law clause more broadly than that.

16        The Trustee's argument that tort claims can never be governed by a

17   contractual choice-of-law provision (Br. 45) wrongly relies on cases decided under

18   state choice-of-law rules.  *See, e.g., Sutter Home Winery, Inc. v. Vintage Selections,*

19   *Ltd.*, 971 F.2d 401, 406 (9th Cir. 1992) (Arizona choice-of-law rules); *Tokyo Elec.*,

20   960 F.3d at 559 (California choice-of-law rules).  Under federal choice of law rules,

4870-6554-4018

the scope is determined by the selected State law, and New York law expressly

permits parties to select the law governing tort claims.

        2.    <u>The Bankruptcy Court Properly Held that Count 1 Fails to State a Claim for Aiding and Abetting Fiduciary Breach</u>

            *i.    The Alleged Improper Payments from Jetcraft to Cassidy Cannot Be Imputed to Bombardier*

The crux of the FAC was that "Fazal-Karim had Jetcraft Global pay to

Cassidy" (25-ER-026676 ¶7) $500,000 each for the Planes 1 and 10 sales, that

accepting those payments violated Cassidy's fiduciary duties, and those payments

should be attributed to Bombardier under agency principles.  The Bankruptcy Court

correctly dismissed all agency-based claims.

To state a claim for aiding and abetting a breach of fiduciary duty, a claimant

must plead that: (1) a fiduciary breached his duties; (2) the defendant knowingly

induced or participated in that breach; and (3) the beneficiary of those duties thereby

suffered damages.  *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003).

Actual knowledge of the fiduciary breach (not constructive knowledge) is required.

*Baron v. Galasso*, 83 A.D.3d 626, 629 (2d Dep't 2011).

To knowingly induce a fiduciary breach, the defendant must provide

"substantial assistance" to the fiduciary.  *Id.*  "Substantial assistance" requires an

"affirmative act on the defendant's part; 'mere inaction' can constitute substantial

4870-6554-4018

1   assistance 'only if the defendant owes a fiduciary duty directly to the plaintiff.'" *Id.*

2   (quoting *Kaufman,* 307 A.D.2d at 126).

3       The FAC alleged that Jetcraft aided and abetted Cassidy's fiduciary breach by

4   paying him "kickbacks," and those payments may be imputed to Bombardier under

5   agency principles.  The Trustee acknowledges that "[c]ontrol is the key characteristic"

6   of an agency relationship (Br. 12 (citation omitted)) and claims to have pled control

7   by alleging that Fazal-Karim "received and followed directions from [Bombardier]

8   executives" and had "to comply with Bombardier policies."  *Id*. at 13-14.[9]  But as

9   the Trustee surely knows, Fazal-Karim had to do those things when he sold aircraft

10  *for Bombardier*, not for Jetcraft.  There is not a single allegation that Bombardier

11  controlled Fazal-Karim when he was running his own business (Jetcraft) and

12  marketing Jetcraft-owned aircraft inventory.

13      On appeal, the Trustee contends that the Bankruptcy Court erred because it

14  "artificially divided the allegations by transaction" and claims "[n]o law supports

15  such piecemeal evaluation of agency."  Br. 17.  But the Bankruptcy Court cited law

16  supporting a transaction-by-transaction approach.   [30-ER-041518] (citing *In re*

17  *Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1342 (11th Cir. 2017) (holding

18

19  ――――――――――
    [9] That Fazal-Karim agreed to abide by Bombardier's Code of Ethics (Br. 4, 14) is
    irrelevant to the agency inquiry. Governmental entities and businesses routinely
20  require independent contract counterparties to adhere to codes of conduct. *See, e.g.*,
    48 C.F.R. § 52.203-12.  That does not make the counterparty an agent.

27

4870-6554-4018

1    that although a person "may have sometimes functioned as [the defendant's] agent,

2    lawyer, or fiduciary in other contexts," the allegations were insufficient to

3    demonstrate that they operated as an agent for the transaction at issue); *Bd. of*

4    *Managers of 411 E. 53rd St. Condo. v. Perlbinder*, Nos. 654039/2013, 650603/2014,

5    2016 WL 1597761, at *2-3 (Sup. Ct. N.Y. Cnty. Apr. 21, 2016), *rev'd on other*

6    *grounds*, 151 A.D.3d 523 (1st Dep't 2017) (finding that agency relationship

7    regarding one business did not mean there was an agency relationship regarding

8    another)).

9         This is common sense.  Were it otherwise, an agent's authority would have

10   no bounds.  Under the Trustee's theory, everything Fazal-Karim ever did – on his

11   own account and unrelated to Bombardier – would be Bombardier's responsibility.

12   No theory of agency goes that far.  The Bankruptcy Court thus correctly held that a

13   "party authorized to act as an agent in one transaction is not necessarily authorized

14   to act as an agent in another" and properly considered Fazal-Karim's role on a

15   transaction-by-transaction basis.  [30-ER-041518 (citation omitted)].

16        Knowing this, the Trustee labors to "link" the Planes 1 and 10 sales by Jetcraft

17   to sales by Bombardier, describing them as "simultaneous transactions, negotiated

18   as part of package deals."  Br. 17.  But this "lump everything together" strategy – on

19   display in a two-page paragraph (*id.* at 15-17) mixing and matching allegations about

20   wholly unrelated transactions – still fails to make BAC liable for Jetcraft's actions:

4870-6554-4018

*First,* the Trustee conflates "simultaneous transactions" with "agency." That Bombardier and Jetcraft were both trying to sell Zetta aircraft has nothing to do with whether one controlled or acted for the other, as the Bankruptcy Court held. [*See* 30-ER-041520] ("The Trustee alleges no facts to show that BAC/BI could control Fazal-Karim's conduct regarding Plane 1" even assuming "Fazal-Karim negotiated the combined transactions"); [30-ER-041528] ("The FAC is devoid of any alleged connection between [Bombardier] and the sale of Plane 10 to Zetta Singapore").

*Second,* the transaction documents show these sales were *not* part of a "package deal" and the allegation that that they were is conclusory and contrary to the separate contracts. [30-ER-041520]. None of the sales agreements cross-references or is contingent on the others. [25-ER-027608-027622, 027916-027930, 028398-028412, 029119-029133; 30-ER-039912-039978]. The "package deals" (Plane 1 with Planes 2-6; Plane 10 with Planes 12-15) involved different sellers (Jetcraft, BAC, Orion), different buyers (Zetta, CALI, Glove Assets, Yuntian), different aircraft types (Global 5000s, Global 6000s, Challenger 650s), and entirely different transaction structures (sales to lessors and direct lender-financed sales). [*See* 30-ER-041519; 25-ER-027608-027622, 027916-027930, 028398-028412, 029119-029133; 30-ER-039912-039978]. In the Original Complaint, the Trustee himself did not even *think* to link any of these separate transactions.

29

1    *Third,* trying to bundle Jetcraft and Bombardier sales is a fool's errand

2    because the contracts incorporated into the FAC show that Fazal-Karim *never* acted

3    as Bombardier's agent – even when marketing aircraft for Bombardier.   Actual

4    "[a]gency is the fiduciary relation which results from the manifestation of consent

5    by one person to another that the other shall act on his behalf and subject to his

6    control, and consent by the other so to act."   *In re Rezulin Prods. Liab. Litig.*, 392 F.

7    Supp. 2d 597, 607 (S.D.N.Y. 2005) (quoting Restatement (Second) of Agency §

8    1(1)).   Far from consenting to Fazal-Karim acting on BAC's behalf, BAC did the

9    opposite, saying in the Representative Agreements that Fazal-Karim was "acting as

10   an independent contractor and not as an agent of Bombardier, and that [Fazal-Karim]

11   has no express or implied authority to bind or obligate Bombardier in any manner

12   whatsoever."   [30-ER-040045, 040049, 040053, 040057].

13       Nor did Fazal-Karim have apparent authority to act for Bombardier.   "A party

14   cannot claim that an agent acted with apparent authority when it knew, or should

15   have known, that the agent was exceeding the scope of its authority."   *Highland Cap.*

16   *Mgmt. LP v. Schneider*, 607 F.3d 322, 328 (2d Cir. 2010) (quotation marks, citations

17   and modifications omitted).   While the FAC alleged that BAC allowed Fazal-Karim

18   to hold himself out as Bombardier's exclusive outside sales representative in

19   Southeast Asia, BAC expressly advised Zetta in each APA that "*Jahid Fazal-Karim*

20   *has no authority* and will not have any authority to make any representations or

30

1    warranties *on behalf of Seller* or to legally bind Seller under a contract for the sale

2    of the subject Aircraft."    [25-ER-027615, 027923, 028405, 029126, 030372,

3    030403].  "This disclaimer," the Bankruptcy Court correctly held, "provided Zetta

4    [PTE] notice that Fazal-Karim could not make representations or warranties on

5    BAC's behalf or legally bind it to contracts for Planes 2-5" and defeated any

6    apparent agency claim.  [30-ER-041526]; *see also Highland Cap. Mgmt.*, 607 F.3d

7    at 328 (holding that an agent, who had authority to negotiate on behalf of principal,

8    did not have apparent authority to go beyond negotiations and bind the principal to

9    a contract given agency disclaimer).

10       Because Fazal-Karim was not Bombardier's actual or ostensible agent when

11   selling aircraft for Bombardier, he surely was not Bombardier's agent when selling

12   aircraft for Jetcraft as part of (mis-labeled) "package deals."

13       On appeal, the Trustee complains that Bankruptcy Court "reversed course"

14   having found agency adequately pled in the Original Complaint. Br. 7, 15.  But the

15   Bankruptcy Court did not know about the agency disclaimers in the Representative

16   Agreements and APAs when it considered the Original Complaint because the

17   Trustee inexcusably failed to reference them.  The Bankruptcy Court only had the

18   opportunity to consider the agency disclaimers when it reviewed the FAC (as they

19   were then found incorporated by reference).  Far from reversing course, the

20   Bankruptcy Court reached a different conclusion because it had new information.

4870-6554-4018

1       The Trustee also argues that the Bankruptcy Court could not decide Fazal-

2   Karim's authority on a motion to dismiss because the controlling agreements are

3   ambiguous. *Id*. at 18.  But there is no ambiguity.  As the Bankruptcy Court found:

4   "the Trustee has not identified any conflicting language in the Representative

5   Agreements" (30-ER-041523-041524); to the contrary, it found the agreements very

6   specifically stated that "Fazal-Karim was not acting as an agent of BI and he had 'no

7   express or implied authority to bind or obligate' BI in 'any manner whatsoever.'"

8   [30-ER-041524].

9       "Courts have repeatedly found no fiduciary duty between the parties where

10  the Agreement contains a clear and unambiguous disclaimer of a fiduciary

11  relationship." *BNP Paribas Mortg. Corp. v. Bank of Am*., N.A., 866 F. Supp. 2d 257,

12  269 (S.D.N.Y. 2012) (quotation marks and citations omitted); *Spinelli v. NFL*, 96 F.

13  Supp. 3d 81, 133 (S.D.N.Y. 2015) (enforcing disclaimer that "[n]either the making

14  of this Agreement nor the performance of its provisions shall be construed to

15  constitute either Party an agent, partner, joint venture, employee or legal

16  representative of the other party"); [*see also* 30-ER-041521 (gathering cases)].

17      The Trustee argues that some courts find that the actual functioning of a

18  relationship can "override" agency disclaimers (Br. 18), but in each case cited, the

19

20

32

agreements were ambiguous or silent as to agency.[10]  Where, as here, contracts are

clear that a party is not an agent, that ends the inquiry.  *See, e.g., Butto v. Collecto*

*Inc.,* 802 F. Supp. 2d 443, 449 (E.D.N.Y. 2011) (holding that debt collector was not

agent of carrier given "express disavowal of an agency relationship" in agreements

and denying argument that the "practical functioning of [debt collector's]

relationship with AT&T and Verizon" overrode agency disclaimer); [*see also* 30-

ER-041522-041525] (meticulously distinguishing authorities where contract was

found insufficiently clear to resolve agency issues).

Finally, the Trustee argues that "a contractual agency disclaimer is irrelevant

in a suit brought by a third-party plaintiff who is not a party to that contract."  Br.

19.  But Bombardier relies not only on the disclaimer in the Representative

Agreement (which defeats any actual agency claims); it also relies on the disclaimers

---

[10] *See Supreme Showroom, Inc. v. Branded Apparel Grp. LLC*, No. 16 Civ. 5211
(PAE), 2018 WL 3148357, at *9 (S.D.N.Y. June 27, 2018) ("Apart from the heading
'NO AGENCY,' a header which must be disregarded under the terms of the SRA, .
. . nothing here or elsewhere in the agreement states that Supreme is not Branded's
agent or fiduciary."); *Samba Enters., LLC v. iMesh, Inc*., No. 06 Civ. 7660(DC),
2009 WL 705537, at *2 (S.D.N.Y. Mar. 19, 2009), *aff'd*, 390 F. App'x 55 (2d Cir.
2010) (on the one hand, the parties' "Agency Agreement" expressly "defined Samba
as 'Agent' and referred to Samba throughout by that term" but on the other hand, the
same agreement had an agency disclaimer); *Daniels v. United States*, No. 3:16-CV-
02077-BTM-DHB, 2017 WL 3478765, at *4 (S.D. Cal. Aug. 11, 2017) ("The issue
on which Defendants SA-Tech and CPC's motion turns is whether they were acting
as an 'agent[s] or employee[s] of the United States" but "[t]he Subcontract appears
to contain a provision disclaiming agency between Defendants SA-TECH and CPC,
but says nothing with respect to any agency relationship between CPC and the
United States.") (modifications in original and added).

33

1  in each of APAs to which Zetta *was* a party (which defeats any apparent agency

2  claims).

3         There is simply no way to turn Jetcraft's alleged wrongdoing into

4  Bombardier's.  The Bankruptcy Court thus properly dismissed the claim against

5  Bombardier for aiding and abetting a fiduciary breach.

6                *ii.      Giving Five Sports Tickets to a Client Is Not a Bribe*

7         The Trustee also alleged that Bombardier bribed Cassidy by providing the

8  "Zetta team" with five tickets to a Bombardier-sponsored race car event.  But an

9  executive does not breach his fiduciary duties to his employer merely by accepting

10  tickets to a sporting event.  That occurs every day across the country and not a single

11  decision – not one – finds such ordinary client entertainment in the commercial

12  context is a bribe or an inducement to violate fiduciary duties.  *See, e.g., Lifschultz*

13  *Fast Freight, Inc. v. Consol. Freightways Corp. of Del.*, 805 F. Supp. 1277, 1289

14  (D.S.C. 1992), *aff'd*, 998 F.2d 1009 (4th Cir. 1993) (holding allegations that a

15  company provided a prospective client "with a trip to Atlantic City for an evening

16  of dinner, shows, and some gambling," rate discounts, a bottle of scotch, six box

17

18

19

20

34

seats tickets to a New York Mets baseball game, and free lunches did not state a bribery claim).[11]

On appeal, the Trustee argues that the Bankruptcy Court "contravened binding caselaw" because the Trustee offered an equally plausible explanation for the tickets: they were used to induce Cassidy not to "refuse to take delivery of Plane 3 and cancel the purchase agreements for Planes 4, 5, 8 and 9." [25-ER-026734-026735 ¶311]; *see* Br. 24. But the Bankruptcy Court did not dismiss this claim merely because the alleged conduct was *equally plausible* with innocent client entertainment; it dismissed the claim because the Trustee's explanation was *implausible*. [*See* 30-ER-041534] (holding the Trustee did "not plausibly allege [a claim]" and that his allegations were "conclusory").

*First,* there was no fiduciary duty to breach. We have located no authority where a corporate officer has been found liable for violating a fiduciary duty by *not* breaching contracts and repudiating corporate obligations. Further, the FAC nowhere explained how Cassidy could have breached a fiduciary duty to his fellow shareholders when they – equally knowledgeable about the purchase price of the

---

[11] As the Bankruptcy Court correctly observed in dismissing the Original Complaint, cases finding sports tickets improper do not arise in the commercial context; they occur in criminal bribery cases involving government officials (and invariably involve far more than just sports tickets). [2-ER-001191-001192].

4870-6554-4018

1   aircraft, the debt incurred, the company's charter revenues and operating expenses –

2   are not alleged to have taken any such actions themselves.

3   Most importantly, Cassidy did not have the power to repudiate the APAs.  As

4   the Bankruptcy Court explained, the FAC and the documents incorporated by

5   reference established that any such action required approval of the other two Zetta

6   shareholders (Seagrim and Walters).  Where a fiduciary "has no authority to [act], it

7   cannot be held liable for failing to take that action."  *Hudson v. Nat'l Football*

8   *League Mgmt. Council,* No. 18-cv-04483 (GHW) (RWL), 2019 WL 5722220, at *15

9   (S.D.N.Y. Sept. 5, 2019) (modifications in original); [*see also* 30-ER-041535-

10  041536].  Indeed, had Cassidy unilaterally terminated contracts without authority to

11  do so, *that* would have been a fiduciary breach.

12  *Second,* even assuming Cassidy had a fiduciary duty to repudiate, the FAC

13  needed to allege that Bombardier *knew* it.  But Bombardier could only have known

14  that Cassidy should have repudiated if Bombardier knew of Zetta's financial

15  condition and its inability to afford the aircraft it purchased.  The FAC failed to plead

16  that knowledge.

17  *Third,* the FAC's causation allegations are entirely conclusory, and the facile

18  way in which the causation theory has changed shows it.  When the Original

19  Complaint was filed, the theory was that the tickets were given to induce Cassidy *to*

20  *enter* the CALI Transactions, but that claim was dismissed because the tickets were

36

given months after contract execution and the Bankruptcy Court properly noted the temporal disconnect.   [2-ER-001190-001191].   So, the Trustee abandoned that theory and pivoted to a new one in the FAC: the tickets were used to cause Cassidy *not* to cancel the contracts.   [25-ER-026734-026735 ¶¶311-12].   But if a company pays a bribe whenever it takes a client (even a demanding one) to dinner or to a show or to a game and the client thereafter does not end the relationship, then every company in the world is guilty of this tort.   Causation was not pled here.

*Finally,* there remains the utter implausibility of this all.   The Trustee asked the Bankruptcy Court to accept as true that Cassidy, a one third owner of Debtors, sought to destroy his own company by staying in contracts requiring Zetta to pay close to $100 million above market so that he could get five sports tickets.   *See Eclectic Props. E., LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 999 n.7 (9th Cir. 2014) ("Plaintiffs' theory – and its after-the-fact, conclusory property valuations – requires us to believe that Defendants also overpaid for the properties by more than $9 million, a proposition that itself is implausible.").   None of this makes any sense, and the claims based on the sports tickets were properly dismissed.

### iii.   Discussing the Purchase of Sea-Doos is Not a Bribe

Equally deficient were the FAC's muddled allegations about the Sea-Doos. According to the FAC, Cassidy worked with Phillip Crevier, "a consultant paid by Zetta PTE," to purchase two Sea-Doo jet skis (25-ER-026735 ¶316) in what

4870-6554-4018

appeared to be a "legitimate purchase by the Debtors" (25-ER-026736 ¶318); and "Benjamin Ng (Zetta PTE, Accounts)" then prepared an invoice seeking reimbursement for the jet skis from Jetcraft Corp. *Id*. ¶319.

Upon receipt of the invoice, Fazal-Karim allegedly stated: "Jetski has nothing to do with Jetcraft. You can offset jet ski on the boat.  It is personal." [25-ER-026739 ¶335].  The FAC said "[t]he 'boat' . . . was the Nyota" (*id*.), which was allegedly owned by Fazal-Karim and Cassidy.

So, where does Bombardier fit into this?  It is difficult to say.  According to the FAC: "On September 8, 2016, Cassidy told Crevier that Jetcraft would pay Bombardier directly for the two Sea-Doos."  [25-ER-026736 ¶317].  The FAC likewise alleged that Mattar (of Bombardier) wrote Cassidy a few days later saying: "Having spoken to Jahid, we can do the following, buy and bill back to Jetcraft, and I shall sort it out with Jahid." *Id*. ¶318.  But the FAC then alleged that Bombardier did *not* buy the jet skis; Zetta PTE did.  Nor did Bombardier give a credit for them; Fazal-Karim allegedly did in connection with a yacht that he and Cassidy owned – which had nothing to do with Bombardier.

If there is a tort lurking in these confusing allegations, it certainly was not committed by Bombardier: *First*, the FAC failed to allege that Cassidy broke any duties in openly causing Zetta PTE to purchase two jet skis and asking Jetcraft to reimburse Zetta PTE for them.  As the FAC acknowledged, this openly discussed

38

4870-6554-4018

1   and documented transaction "appear[ed] to be a legitimate purchase by the Debtors."

2   *Id.* If the Sea-Doos could be for a legitimate purpose (such as a client event), the

3   FAC had to allege something more to make them illegitimate.

4       *Second*, the FAC failed to include allegations showing that Bombardier gave

5   "substantial assistance" to Cassidy. Bombardier is not alleged to have provided the

6   Sea-Doos; not alleged to have reimbursed Zetta PTE for them; and not alleged to

7   have compensated Fazal-Karim for them. As the Bankruptcy Court originally found,

8   "the allegations regarding the Sea-Doos do not contain sufficient information to

9   discern Bombardier's role in the transaction." [2-ER-001201]. Briefly discussing

10  purchasing and selling two Sea-Doos to Jetcraft and then never doing so, the

11  Bankruptcy Court found, "is far from the 'affirmative act' required to show that

12  [Bombardier] provided 'substantial assistance' to Cassidy in a breach of his

13  fiduciary duty." [30-ER-041539].

14      *Third,* the FAC lacked any allegations showing that anyone at Bombardier

15  had knowledge that Cassidy, in seeking vendor support for Zetta PTE's purchase of

16  the Sea-Doos, was doing anything improper. Indeed, a customer seeking vendor

17  support for a customer event is acting in the interests of the customer, not against

18  them.

19      *Finally*, the FAC nowhere explained how Zetta was hurt by this. The FAC

20  asserted that the Sea-Doos caused Cassidy to purchase allegedly overpriced Planes

4870-6554-4018

12-15.  [25-ER-026737 ¶321].  But as the Bankruptcy Court held, "BAC sold those aircraft to Yuntian 4, not the Debtors."  [30-ER-041539].  There is simply no nexus between Zetta PTE purchasing two jet skis and Yuntian 4 purchasing four aircraft.

The Bankruptcy Court correctly held that the Trustee failed to state a plausible claim based on the Sea-Doo discussions.  *Id.*

### 3. The Bankruptcy Court Properly Held that Count 2 Failed to State a Claim for Conspiracy

The Trustee argues on appeal that the Bankruptcy Court "miscomprehended the FAC" because it found that "the conspiracy claim turned on agency."  Br. 19-20.  But the Bankruptcy Court merely quoted the FAC, which said that Bombardier "agreed to participate in the conspiracy through its agent Fazal-Karim."  [25-ER-026785 ¶576; 30-ER-041540].  This doomed the conspiracy count from the start: "It is basic conspiracy law that a corporation cannot conspire with its agents or employees acting within the scope of their employment."  *Tufano v. One Toms Point Lane Corp.*, 64 F. Supp. 2d 119, 133 (E.D.N.Y. 1999), *aff'd sub nom. Tufano v. One Toms Point Lane Corp., Bd. of Dirs.*, 229 F.3d 1136 (2d Cir. 2000).

In response, the Trustee says that the FAC "also plausibly pleaded direct conspiracy *alternatively* and *independent* of agency."  Br. 20.  It did not.  The entire count was premised on Bombardier participating in a conspiracy through its alleged agent.  [30-ER-041540].

4870-6554-4018

Even if the FAC had been pled otherwise, a conspiracy claim could not have been stated.  For civil conspiracy, a "plaintiff must demonstrate the underlying tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Fisk v. Letterman,* 424 F. Supp. 2d 670, 677 (S.D.N.Y. 2006) (citation omitted).

The Trustee argues on appeal that an agreement could be inferred from the allegation that "Planes 1-6 were part of a single deal."  Br. 21.  But as shown, the "package deal" contention was conclusory and disproven by the contracts.  The Trustee also argues that a deal could be inferred from a vaguely described spreadsheet (25-ER-026870-026871) baselessly alleged in the FAC to show payments between Fazal-Karim and Mattar.  [25-ER-026729-026733 ¶¶291-302].  But nothing in the Spreadsheet references Fazal-Karim or Mattar, suggests it records payments between the two, or purports to say anything about payments to Cassidy.  Indeed, the FAC acknowledged as much, saying that the amounts in the spreadsheet "do not match the commissions that Fazal-Karim or the other Fazal-Karim Defendants received from Bombardier" or any other "amounts or payments that the Trustee has been able to identify in the transactional documents, the closing statements, or the flows of funds from the relevant Zetta transactions."  [25-ER-026731 ¶294].

4870-6554-4018

1    Allegations that "mischaracterize[] or contradict[] the contents of documents

2    that are appended to [a] complaint . . . are simply implausible and need not be

3    accepted as true." *Avila v. Wells Fargo Bank, Nat'l Ass'n*, No. C 16-05904 WHA,

4    2016 WL 7425925, at *4 n.2 (N.D. Cal. Dec. 23, 2016) (citations omitted).

5         Not only wanting allegations from which an agreement could be inferred, the

6    FAC lacked needed detail about the participants.  Although it broadly alleged that

7    ten of the eleven defendants conspired together, it did not allege that Bombardier

8    ever interacted with Jetcraft Global, Jetcoast, Jetcraft Asia, Orion, or FK Partners

9    (or Fazal-Karim when acting on their behalf).  If the alleged conspiracy was to

10   defraud Zetta, it needed to be stated with specificity.  *See Johnson v. Mazza*, No.

11   2:15-cv-09183 ODW(AS), 2017 WL 663153, at *6 (C.D. Cal. Feb. 17, 2017), *aff'd*

12   *Johnson v. Allegretti*, 778 F. App'x 549, 550 (9th Cir. 2019) (plaintiffs

13   "impermissibly lump[ed]" fraud allegations against multiple defendants said to be

14   "the agents, authorized representatives, joint venturers, partners, and/or alter egos of

15   one another").

16        The FAC also failed to plead any overt acts by Bombardier in furtherance of

17   an illicit agreement.  The FAC said only that Bombardier discussed purchasing and

18   selling two Sea-Doos – and then did neither.  Inaction is not an overt act.  And

19   nothing was pled to show the tickets were in furtherance of a conspiracy, as opposed

20   to unilateral ordinary client entertainment.  *See Bell Atl. Corp. v. Twombly*, 550 U.S.

4870-6554-4018

544, 545 (2007) (insufficient to allege conduct "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy").

4.    <u>The Bankruptcy Court Properly Held that Count 3 Failed to State a UCL Claim</u>

A "valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL." *Cont'l Airlines, Inc. v. Mundo Travel Corp.,* 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006); *accord Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 861-62 (N.D. Cal. 2000) (dismissing UCL claim where contract had New Jersey choice-of-law clause). As set forth above, all of Bombardier's contracts with Zetta have a broad New York choice-of-law provision governing all claims. *Supra* Section I.A.1. On that basis alone, the Bankruptcy Court correctly dismissed the UCL claim. [30-ER-041540].

Even under California law, the Trustee failed to state a claim because the UCL requires an employee "corruptly and without the knowledge or consent of the employer" to accept an undisclosed gift in return for using his position to benefit the payer. Cal. Penal Code §641.3(a). As shown, Bombardier did not (a) pay Cassidy the alleged "kickbacks" and cannot be held responsible for them, (b) hide the sports tickets from Cassidy's employer; rather, the FAC alleged Bombardier provided them to the "Zetta *team*" (25-ER-026735-026736), or (c) give *anything* with respect to the Sea-Doos.

43

The Trustee's UCL claim also failed because a UCL claimant must allege facts showing either that (1) its injury has occurred in California or (2) the defendant's conduct occurred in California. *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSx), 2018 WL 6264994, at *4 (C.D. Cal. Oct. 9, 2018). Here, the only recipient of alleged bribes was Cassidy in Singapore, acting on behalf of Zetta PTE in Singapore. The UCL does not reach this out-of-state conduct.

5.    The Bankruptcy Court Properly Dismissed the Fraudulent Misrepresentation and Concealment Claims (Counts 6 and 7)

*Fraudulent Misrepresentation.*    In the FAC, the Trustee alleged that Bombardier committed a fraud because, in the Planes 1 and 10 APAs, Zetta made a standard representation to Jetcraft that it had not agreed to pay fees in connection with these sales. [25-ER-026790 ¶608]. This fraud claim never made sense. *First,* the Planes 1 and 10 transactions did not involve Bombardier; those APAs were between Jetcraft-related entities and Zetta. [25-ER-027016, 030424]. Jetcraft (as opposed to Fazal-Karim) was never alleged to be Bombardier's agent. *Supra* Section I.A.2.i. *Second*, and most importantly, the representation at issue is a *buyer* (not seller) representation – one made by Zetta PTE. Obviously, Bombardier cannot defraud Zetta based on representations that Zetta itself makes.    [25-ER-026790 ¶608].

On appeal, the Trustee barely defends this claim, devoting just two sentences to it, which state that the Bankruptcy Court erred in dismissing the fraudulent

44

1  representation claims "because the FAC pleaded agency." Br. 27. It didn't. *See*

2  *supra*. But even if it did, Zetta's own statements could never be imputed to

3  Bombardier under *any* agency theory.

4      *Fraudulent Concealment*. The FAC also pleaded that Bombardier

5  "intentionally concealed or suppressed" the two improper payments from Jetcraft to

6  Cassidy. [25-ER-026794 ¶633]. But Bombardier obviously had no duty to disclose

7  payments made in connection with transactions that did not involve Bombardier and

8  about which it had no knowledge.

9      As for the five sports tickets and discussions about the Sea-Doos, Bombardier

10  had no duty of disclosure. "It is well established that, absent a fiduciary relationship

11  between the parties, a duty to disclose arises only under the 'special facts' doctrine

12  where one party's superior knowledge of essential facts renders a transaction without

13  disclosure inherently unfair." *Jana v. W. 129th St. Realty Corp.*, 22 A.D.3d 274, 277

14  (1st Dep't 2005) (internal quotation marks and citations omitted). The FAC nowhere

15  alleged that Bombardier had a fiduciary relationship with Zetta (30-ER-041543) or

16  that Bombardier had superior knowledge about the tickets or Sea-Doos. Just the

17  opposite: the sports tickets were alleged to be for the "Zetta team" (25-ER-026735-

18  026736) and "at least two Zetta [] employees, Crevier and Ng, were aware that Zetta

19  [] was buying the Sea-Doos." [30-ER-041544] (citing 25-ER-026736 ¶¶319-20).

20  There was nothing hidden here.

4870-6554-4018

1

2

        6.    <u>The Bankruptcy Court Properly Held that the Original Complaint</u>
<u>Failed to State a Claim for Unjust Enrichment</u>

3

       The Bankruptcy Court properly dismissed the unjust enrichment claim in the

4

Original Complaint with prejudice.  This cause of action was decided under

5

California law because the APAs and their New York choice of law clause were not

6

before the Bankruptcy Court on the original motion to dismiss.[12]  [2-ER-001202; 2-

7

ER-001117].  However, the result is the same under both California and New York

8

law, and the holding of the Bankruptcy Court should be affirmed.

9

       California law is unsettled as to whether an unjust enrichment claim is a

10

standalone cause of action.  *Compare Klaehn v. Cali Bamboo LLC,* No. 21-55738,

11

2022 WL 1830685, at *2 (9th Cir. June 3, 2022) ("California law does not recognize

12

an independent cause of action for unjust enrichment") with *ESG Cap. Partners, LP*

13

*v. Stratos,* 828 F.3d 1023, 1038 (9th Cir. 2016) (holding that unjust enrichment

14

"states a claim for relief as an independent cause of action").

15

       All California courts that have held an unjust enrichment claim could proceed

16

as a standalone claim, however, have done so only in the absence of an express

17

contract between the parties.  *See, e.g., Goldwater Bank, N.A. v. Elizarov*, No. 22-

18

55404, 2023 WL 387037, at *1 n.1 (9th Cir. Jan. 25, 2023) (holding that unjust

19

20

---

[12] The Bankruptcy Court did not consider the New York choice of law provision
because Bombardier provided only excerpts from the APAs (rather than the entire
APA) with its motion to dismiss the Original Complaint.  [2-ER-001178-001180].
This was not at issue in the FAC.

4870-6554-4018

enrichment claim failed due to valid contract between the parties); *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 n.6 (9th Cir. 2018) (same); *ESG Cap. Partners*, 828 F.3d at 1038 (unjust enrichment claim permitted where no express contact existed); *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (same).[13]  As contracts governed the Bombardier-Zetta relationship, a standalone unjust enrichment claim could not be stated.

But even if the parties did not have a contract, an unjust enrichment claim could not have been stated here:

*First,* the Complaint lacked any facts showing that Bombardier was *unjustly* enriched.  *See First Nationwide Sav. v. Perry*, 11 Cal. App. 4th 1657, 1663 (1992) ("The person receiving the benefit is required to make restitution only if . . . it is *unjust* for the person to retain it.").  Since the Complaint failed to set forth any improper conduct by Bombardier (*see supra* Section I.A.2.i-iii), it failed to set forth an unjust enrichment claim.

*Second,* the Complaint failed to set forth any facts supporting its allegation that Bombardier was improperly *enriched* by selling aircraft at above-market prices. It just asserted that the purchase prices were "unfair and overinflated."  [1-ER-000213 ¶103; *see also* 1-ER-000194, 000247].  This did not satisfy Rule 9(b) as the

---

[13] The same is true under New York law.  *See, e.g., Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012) (collecting cases).

4870-6554-4018

claim of unjust enrichment was predicated on fraudulent conduct. *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016); [2-ER-001103-001104].

*Third,* it was simply implausible that sophisticated aircraft lessors would purchase aircraft priced an aggregate $100 million above their market price, or that sophisticated lenders would finance such overpriced aircraft, or that experienced aircraft charter operators like Seagrim and Walter would approve their purchase. *See Eclectic*, 751 F.3d at 999 n.7.

*Finally,* the Trustee lacked standing even to seek restitution of any part of the price paid in connection with the CALI Transactions as that right had been assigned to CALI under the APA Assignments. [30-ER-039980-039985, 039987-039992, 039994-039999; 25-ER-029892-029899].

### 7.   The Tort Claims are Barred by the *In Pari Delicto* Doctrine

Finally, the decision of the Bankruptcy Court may also independently be affirmed because the Trustee is estopped from pursuing any tort claims against Bombardier under New York's *in pari delicto* doctrine.

On appeal, the Trustee contends that *in pari delicto* was not addressed by the Bankruptcy Court and not cross-appealed by Bombardier and, therefore, the issue is not before this Court. Br. 30 n.4. The law, however, is clear that an appellate court "may affirm on any basis which the record supports," even if the lower court did not

4870-6554-4018

rely on that ground.  *In re Ocasio*, 10 F. App'x 531, 531 (9th Cir. 2001) (citation omitted); *see also Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 950 (9th Cir. 2005).  Here, *in pari delicto* was fully briefed below (30-ER-038459-038470, 039657-039659, 039595-039598) and Bombardier may thus raise it as an additional basis for affirmance.[14]

"When corporate officers carry out the everyday activities central to any company's operation and well-being—such as . . . accessing capital markets . . . and entering into contracts—their conduct falls within the scope of their corporate authority."  *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465-66 (N.Y. 2010) (citation omitted).  A corporate officer's wrongdoing in connection with everyday activity is imputed to the corporation, which, in turn, bars the corporation from asserting claims against a third party also involved in that wrongdoing because the corporation and the third party stand in equal fault.  *Id.*

"The doctrine of *in pari delicto* mandates that the courts will not intercede to resolve a dispute between two wrongdoers."  *Id.* at 464 (emphasis added) (holding that trustee could not assert claims against Refco's outside professionals because Refco insiders participated in accounting fraud); *New Greenwich Litig. Tr. LLC v. Citco Fund Servs. (Eur.) B.V.,* 145 A.D.3d 17, 24 (1st Dep't 2016) (dismissing all

---

[14] In contrast, the Trustee may not address the *in pari delicto* doctrine in reply.  "[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."  *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (citation omitted).

49

4870-6554-4018

claims under the *in pari delicto* doctrine because the bankruptcy trustee "stood in the funds' shoes" and the "derivative complaints in these actions pleaded extensive wrongdoing on the part of the funds' management" including taking "hefty management fees" for little work).

There is a "most narrow" exception to the *in pari delicto* doctrine where an officer has "totally abandoned his principal's interests and [is] acting entirely for his own or another's purposes." *Kirschner*, 15 N.Y.3d at 466 (emphasis omitted). The "New York Court of Appeals is generally loathe to apply" the adverse interest exception. *In re ICP Strategic Credit Income Fund Ltd.*, No. 13-12116 (REG), 2015 WL 5404880, at *19 (Bankr. S.D.N.Y. Sept. 15, 2015), *aff'd*, 568 B.R. 596 (S.D.N.Y. 2017), *aff'd sub nom. In re ICP Strategic Income Fund, Ltd.*, 730 F. App'x 78 (2d Cir. 2018). The exception may only be applied in "cases—*outright theft or looting or embezzlement*—where the insider's misconduct benefits only himself or a third party." *Kirschner*, 15 N.Y.3d at 466-67.

Conversely, the "adverse interest" exception cannot be invoked "merely because [the officer] has a conflict of interest or because he is not acting primarily for his principal." *Id.* at 466 (citation omitted). "So long as the corporate wrongdoer's fraudulent conduct enables the business to survive – to attract investors and customers and raise funds for corporate purposes – this test is not met." *Id.* at 468. "Even where the insiders' fraud can be said to have caused the company's

4870-6554-4018

1  ultimate bankruptcy, it does not follow that the insiders 'totally abandoned' the
2  company" if such wrongdoing was done in part for the company.  *Id.*

3      The Trustee did not allege that Bombardier aided and abetted or conspired
4  with Cassidy to commit "outright theft or looting or embezzlement," such that
5  Cassidy totally abandoned Zetta.  Far from it, Bombardier is alleged to have
6  provided sports tickets and discussed Sea-Doos to induce Cassidy to purchase
7  aircraft for Zetta's charter operations – the very business of the Debtors.  [25-ER-
8  026733-026737].  The deals about which the Trustee now complains were, in his
9  own words, "approved by the board."  Br. 26.

10     To the extent Cassidy did anything wrong in entering (or failing to repudiate)
11 transactions integral to Zetta's business and approved by all its owners, his
12 wrongdoing is imputed to Zetta itself.  That, by itself, barred all the Trustee's tort
13 claims and provides this Court with an independent basis for affirmance.

14     **B.    The Bankruptcy Court Properly Dismissed the Bankruptcy Claims
           (Counts 12-20, 25, 31-32)**

15         1.    Neither Section 547 Nor Section 548 Permits the Trustee to
16               Avoid Extraterritorial Pre-Petition Transfers Alleged in the
                 Fraudulent Transfer (Counts 12-17, 31-32) and Preference
17               Claims (Counts 18-19)

18     Each transfer challenged in Counts 12-19 and 31-32 was initially sent from
19 Zetta Jet PTE's Singapore bank account.  [30-ER-041551-041552; 24-ER-026665-

20

51

4870-6554-4018

1    026667].   Joining the majority,[15] the Bankruptcy Court, after extensive analysis,

2    ruled that Sections 547, 548, and 550 cannot be used to recover these Singapore-

3    originated prepetition transfers because that would require an impermissible

4    extraterritorial application of these sections of the Bankruptcy Code.   [30-ER-

5    041547-041551]; *see also* Extraterritorial Avoidance Actions Under the U.S.

6    Bankruptcy Code - Harvard Law Review (compiling cases and concluding that

7    "sections 547 and 548 of the Bankruptcy Code focus on 'transfers' . . . that . . .

8    originate directly or indirectly from U.S. bank accounts").

9         The Bankruptcy Court, consistent with Supreme Court teaching, concluded

10   that (a) the presumption against extraterritoriality was not rebutted because the

11   Bankruptcy Code contains no "clear affirmative indication" that its preference and

12   fraudulent transfer sections apply extraterritorially and (b) the challenges to the

13   transfers did not involve "a domestic application of a statute."   [30-ER-041547-

14

15   [15] *See In re Midland Euro Exch. Inc.*, 347 B.R. 708, 720 (Bankr. C.D. Cal. 2006)
     (holding that § 548 does not have extraterritorial application); *In re Sherwood Invs.*
16   *Overseas Ltd.*, No. 6:10-bk-584-KSJ, 2016 WL 5719450, at *11-12 (M.D. Fla. Sept.
     30, 2016) (same); *Secs. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Secs. LLC*, 513
17   B.R. 222, 232 (S.D.N.Y. 2014), *rev'd on other grounds*, (*In re Picard, Tr. for Liquid.*
     *of Bernard L. Madoff Inv. Sec., LLC*), 917 F.3d 85 (2d Cir. 2019), *cert. denied*
18   (*HSBC Holdings PLC v. Picard*), 140 S. Ct. 2824 (2020) (finding that section 550(a)
     does not apply extraterritorially); *In re Maxwell Commc'n Corp. PLC*, 186 B.R. 807,
19   820-21 (S.D.N.Y. 1995) (declining to apply § 547 extraterritorially); *In re CIL Ltd.*,
     582 B.R. 46, 92-93 (Bankr. S.D.N.Y. 2018) (holding that §§ 548 and 550 do not
20   have extraterritorial application); *In re Ampal-Am. Isr. Corp.*, 562 B.R. 601, 612
     (Bankr. S.D.N.Y. 2017) (declining to apply § 547 extraterritorially).

4870-6554-4018

041551]; *RJR Nabisco,* 579 U.S. at 337-338.   The Bankruptcy Court's decision, therefore, should be affirmed.

> **i.**   *The Bankruptcy Code Does Not Indicate that Preference and Fraudulent Transfer Powers Apply to Extraterritorial Transfers*

A statute applies to conduct outside of the United States only if it provides "a clear affirmative indication that it applies extraterritorially."  *Id.* at 337.   The Bankruptcy Code does not state that Sections 547, 548 and 550 apply extraterritorially, let alone state it clearly or affirmatively.  To the contrary, these sections of the Bankruptcy Code make no mention of any extraterritorial application. Because the "statute gives no clear indication of an extraterritorial application, it has none."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).

Effectively conceding this lack of a "clear affirmative indication," the Trustee argues that other sections of the Bankruptcy Code apply extraterritorially and should be imported into Sections 547 and 548.  Br. 40-43.  He also contends that to rule to the contrary is bad policy.  *Id.* at 43.  Like the Bankruptcy Court (30-ER-041547-041551), this Court should reject these arguments which deviate from a plain reading of the Bankruptcy Code.  "When the plain meaning of the language of the statute is clear, the courts need only enforce it."  *In re Midland Euro*, 347 B.R. at 719.

Fundamentally, the Trustee argues that the definition of "property of the estate" in Section 541(a)(1) is synonymous with "an interest of the debtor in

4870-6554-4018

property" as used in Sections 547 and 548, giving these sections extraterritorial application.  Br. 40-43.  A straightforward reading of the Bankruptcy Code, however, confirms the opposite.

*First*, although estate property under Section 541(a) includes all interests in property of the debtor "wherever located" (thus having extraterritorial application), that property must be the debtor's "*as of the commencement of the case*."  11 U.S.C. § 541(a)(1).  The very premise of Sections 547 and 548, however, is to recover property that is not the debtor's as of the commencement of the case having been transferred away *before* the case commenced.  As the Bankruptcy Court held in its *Yuntian* decision:  the Trustee's position rests on the false premise that the debtor's estate has an interest in the property transferred prior to case commencement, as of the commencement of the case.  [2-ER-001488-001491].[16]

*Second*, the argument ignores Section 541(a)(3), which clearly states that estate property includes a preference or fraudulent transfer "*that the trustee recovers under section[] . . . 550.*"  11 U.S.C. § 541(a)(3).  (Section 550 provides the remedies available once a transfer is avoided.)  Section 541(a)(3) would be unnecessary if estate property includes property preferentially or fraudulently transferred *before* it

---

[16] *In re French*, 440 F.3d 145 (4th Cir. 2006) and other cases advancing the minority position should not be followed because, among other reasons, they ignore the requirement that the property interest be the debtor's "as of the commencement of the case."  [30-ER-041547-041548; 2-ER-001488-001491].

4870-6554-4018

has been avoided.  *See In re Midland Euro*, 347 B.R. at 719 ("This statute seems very clear to any ordinary reader: property that has been fraudulently transferred only becomes property of the estate when the transfer has been set aside."); [*see also* 2-ER-001490].

The Trustee's resort to policy to expand the domestic reach of Sections 547 and 548 also fails.  The Ninth Circuit has held that policy concerns are insufficient to overcome the presumption against extraterritoriality.  *In re Midland Euro*, 347 B.R. at 718 (citing *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1096 (9th Cir. 1994)).  Moreover, even if parties might be able to "end run" Sections 547 and 548 by having a transfer initiated overseas (Br. 43), that risk does not outweigh the presumption against extraterritoriality which serves to protect against unintended clashes between U.S. law and the laws of other nations.  *In re Midland Euro*, 347 B.R. at 718.

> ii.  *The Trustee's Claims Are Not a Domestic Application of Sections 547 and 548*

To avoid dismissal based on an improper extension of Sections 547 and 548 to extraterritorial transfers, the Trustee argues that the transfers were not extraterritorial at all, but just a domestic application of the statute to domestic transactions.  Br. 43-47.  Specifically, the Trustees argues that (a) the presumption is irrelevant because the transfers were sent to Bombardier's bank account in Texas and the underlying contracts and contacts "touched and concerned" the U.S., (b) a

55

1   small amount of the transfers were fraudulently transferred by Zetta USA to Zetta

2   PTE and he seeks recovery from Bombardier as a subsequent transferee under

3   Section 550, and (c) by filing a proof of claim, Bombardier expanded the Bankruptcy

4   Court's subject matter jurisdiction to permit the otherwise impermissible

5   extraterritorial application of Sections 547 and 548.  *Id.*  Each argument lacks merit.

6        *First*, the "focus" of the avoidance statutes is the initial transfer.  *In re CIL*,

7   582 B.R. at 93.  After all, Sections 547 and 548, by their terms, provide only that the

8   transfer of the debtor's interest in property (*i.e.,* the initial transfer) can be avoided,

9   even if that initial transfer can be recovered from a subsequent transferee of the

10  initial transferee under Section 550.  A transfer originating outside the U.S. thus is

11  extraterritorial even if wired to a U.S. bank account.  "The fact that money, which

12  originated from a foreign company's foreign bank account (Zetta Singapore's

13  Singapore bank account) was transferred to a domestic entity or into a US bank

14  account (BAC's Bank of America account in Texas) is irrelevant to the analysis."

15  [30-ER-041551] (citing *In re CIL,* 582 B.R. at 93; *In re Picard*, 917 F.3d at 98; *In

16  re Ampal-Am.,* 562 B.R. at 613).  Because the relevant conduct "is the debtor's

17  fraudulent *transfer* of property, not the transferee's *receipt* of property," the transfer

18  being made into a U.S. bank account does not create a domestic transfer.  [30-ER-

19  041551]; *In re Picard,* 917 F.3d at 100.  *See* Extraterritorial Avoidance Actions

20  Under the U.S. Bankruptcy Code - Harvard Law Review ("bank transfers occur

within the United States when they originate directly or indirectly from U.S. bank accounts.").

Even if the underlying contracts were executed and resulted in some performance in the U.S., those facts are not germane to the transfers themselves. As the Bankruptcy Court correctly held, "[t]he occurrence of closings in the US, dealings with US-based counterparties and professionals, registration with the FAA, and delivery of aircraft in the US are all peripheral to this focus because they do not pertain to the transfers at issue, which the Trustee seeks to avoid." [30-ER-041552] (citing *In re Sherwood,* 2016 WL 5719450, at *11; *In re CIL,* 582 B.R. at 96; *In re Ampal-Am.,* 562 B.R. at 613-14; *In re Lyondell Chem. Co.*, 543 B.R. 127, 150-51 & n.91 (Bankr. S.D.N.Y. 2016)).

The Trustee's reliance on *In re Picard*, 917 F.3d at 100 (Br. 45-47) and *In re Arcapita Bank B.S.C.(c)*, 575 B.R. 229 (Bankr. S.D.N.Y. 2017) (Br. 43-47) to support a different conclusion is misplaced. In both cases, the debtor initially transferred money from its U.S. bank account. Because the initial transfer was made from the U.S., both courts rejected the contention that any extraterritorial application of the Bankruptcy Code was in play. In *Arcapita*, that the transfer was received by the defendant in a New York bank account only made the conclusion clearer. And in *Picard*, the Second Circuit held that "the extraterritorial reach of a statute is of no moment when a case is truly a domestic matter." 917 F.3d at 95 n.6. Here, to the

57

contrary, the transfers at issue were sent from a foreign entity's foreign bank account (*i.e.*, Zetta Jet PTE's Singapore bank account), bringing into play the lack of extraterritorial reach. The Bankruptcy Court distinguished *Picard* and *Arcapita* for the same reasons. [30-ER-041551].

*Second*, the Trustee argues that he can "recover the direct cash payments routed through Singapore to Bombardier as a subsequent transferee because the funds originated from the U.S." Br. 45 (citing *In re Picard*, 917 F.3d at 100). Although the Trustee has argued that small portions of the payments to Bombardier used to pay part of the initial deposits on Planes 1-6 originated from Zetta USA's California bank accounts (30-ER-038488), that argument is directly contradicted by FAC Schedule 4, which showed only payments made from a Singapore account. [24-ER-026665-026667]. The Trustee's exhibit makes his argument that some of the payments had a U.S. origin implausible. *Cisco Sys., Inc. v. Capella Photonics, Inc.*, No. 20-cv-01858-EMC, 2020 WL 4923697, at *3 (N.D. Cal. Aug. 21, 2020).

*Finally*, for the first time, the Trustee argues on appeal that the filing of a proof of claim by "Bombardier" renders the dispute *in rem* and domestic. Br. 47. Because this argument was not raised before the Bankruptcy Court in the adversary proceeding, it should be disregarded by this Court. *Smith*, 194 F.3d at 1052 ("As a general rule, we will not consider arguments that are raised for the first time on appeal.") (citation omitted).

4870-6554-4018

If, however, the Court considers this new argument, it also lacks merit:

- Although filing a proof of claim may be deemed consent to personal jurisdiction and waiver of certain procedural rights, the filing of a proof of claim does not expand the Bankruptcy Court's subject matter jurisdiction or abrogate the presumption against extraterritoriality, neither of which can occur by consent. The cases cited by the Trustee reflect nothing more. For example, *Lagenkamp v. Culp*, 498 U.S. 42 (1990) and *Katchen v. Landy*, 382 U.S. 323 (1966) simply hold that the filing of a proof of claim can result in consent to personal jurisdiction and waiver of a jury trial right.

- Similarly, none of *Ex parte Christy*, 44 U.S. 292 (1845), *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), *Pepper v. Litton*, 308 U.S. 295 (1939), and *United States Fid. & Guar. Co. v. Bray*, 225 U.S. 205 (1912), all cited by the Trustee, expands the reach of Sections 547 or 548 extraterritorially. They stand for the unremarkable position that bankruptcy courts can adjudicate claims over which they otherwise have subject matter jurisdiction, including, among others, matters of administration such as the claims allowance process or fraudulent transfer or preference actions.

4870-6554-4018

1     •    The Trustee's contention that "the Ninth Circuit recognizes that

2           submitting a proof of claim satisfies the requirement for domestic

3           application of a statute" (Br. 48) badly mischaracterizes the law, and

4           the Trustee's descriptions of *In re Simon*, 153 F.3d 991 (9th Cir. 1998),

5           *Diaz-Barba v. Kismet Acquisition, LLC*, Nos. 08cv1446 BTM (BLM),

6           08cv1572 BTM (BLM), 2010 WL 2079738 (S.D. Cal. May 20, 2010),

7           and *In re Interbulk, Ltd.*, 240 B.R. 195 (Bankr. S.D.N.Y. 1999) are

8           wrong.  *Simon* involved "property of the estate" as used in Section

9           541(a) and the reach of Section 524's discharge injunction.  The *Simon*

10          court held that "Congress intended extraterritorial application of the

11          Bankruptcy Code as it applies to property of the estate," because

12          definitionally Section 541(a)(1) includes property of the estate as of

13          case commencement "wherever located," but the case does not say

14          anything about Section 547 or 548 having extraterritorial application or

15          that filing a proof of claim somehow creates extraterritorial jurisdiction

16          for preferences or fraudulent transfers.  *Simon*, 153 F.3d at 996.  *Kismet*

17          is similarly unpersuasive because it too deals with property of the estate

18          under Section 541(a) and not whether the filing of proofs of claims

19          make the reach of Sections 547 and 548 extraterritorial.  Indeed, *Kismet*

20          merely held that because the property at issue was held by the debtor's

4870-6554-4018

1    alter ego as of the commencement of the debtor's case, the property was

2    always the debtor's and thus always property of its estate as of the

3    commencement of its case.    *Kismet*, 2010 WL 2079738 at *29.

4    *Interbulk* proves no more persuasive.    The transactions at issue there

5    were squarely domestic (the attachment at issue was an effort to secure

6    payment through accounts in New York).    *In re Interbulk*, 240 B.R. at

7    199.  Because these cases either involved "property of the estate" under

8    Section 541(a) or fully domestic conduct, they do not stand for the

9    proposition that the filing of a proof of claim extends the reach of

10   Sections 547 or 548 to transfers not initiated domestically.  Indeed, as

11   the Bankruptcy Court held after analyzing these cases:    "[O]nly

12   Congress, and not litigants, can determine the breadth of a statute.  If

13   the Court were to accept the Trustee's position, it would effectively

14   expand the reach of §§ 547, 548, and 550, beyond what those statutes

15   provide . . ."

16   [2-ER-001517; *see also* 25-ER-031568-031571] (holding that the filing of proofs of

17   claim did not waive the presumption against extraterritoriality).

18                                            * * *

19       Because "the conduct relevant [in these Counts] occurred in a foreign country,

20   . . . the case involves an impermissible extraterritorial application regardless of any

                                           61

                                                                          4870-6554-4018

other conduct that occurred in [the] US." *RJR Nabisco*, at 337.  Accordingly, Counts 12-19 and 31-32 were properly dismissed by the Bankruptcy Court as a matter of law.[17]

>               2.     The Fraudulent Transfer and Preference Claims Were Also Properly Dismissed on Alternative Grounds That the Trustee Failed to Address in His Opening Brief and May Not Address for the First Time in Reply

Issues on appeal "that are not supported by argument are deemed abandoned." *Martinez-Serrano v. INS*, 94 F.3d 1256, 1260 (9th Cir. 1996), *cert. denied*, 522 U.S. 809 (1997) (citation omitted).  An "issue referred to in the appellant's statement of the case but not discussed in the body of the opening brief is deemed waived."  *Id.* (citation omitted); *see also Smith*, 194 F.3d at 1052 ("on appeal, arguments not raised by a party in its opening brief are deemed waived") (citation omitted).

When a lower court dismisses claims on alternative grounds, and an appellant only addresses one of them on appeal, the appellant waives the right to challenge the

---

[17] The Trustee's citation to *Begier v. IRS*, 496 U.S. 53 (1990) (Br. 40-42) to support the proposition that Sections 547 and 548 have extraterritorial reach is similarly unpersuasive.  In *Beiger*, the Supreme Court held that the prepetition transfer of an amount equal to taxes collected from employees or customers could not be recovered from the IRS as preferences because those funds were held in trust and not property of the debtor on the date transferred.  Because they were not the debtor's property, there was no transfer of the debtor's property to avoid, defeating the asserted claim under Section 547.  Exterritoriality is not even mentioned in the decision. *See also In re Ampal-American Isr. Corp.*, 562 B.R. 601, 612 (Bankr. S.D.N.Y. 2017) ("The Supreme Court [in *Begier*] read section 541(a) as a limitation on the trustee's avoiding powers, not as an expansion of those powers.").

62

1    alternative ground for dismissal and the lower court's decision "must be affirmed."

2    *See Digit. Ally, Inc. v. Util. Assocs.*, 882 F.3d 974, 977 (10th Cir. 2018) (affirming

3    grant of summary judgment against monopoly and false advertising claims where

4    plaintiff-appellant failed to address in its opening brief alternative grounds

5    supporting the district court's decision); *Williams v. Leach*, 938 F.2d 769, 772 (7th

6    Cir. 1991) (appellant's failure to address alternative grounds for dismissal under

7    statutes of limitations resulted in waiver of issue on appeal).

8         The Trustee limited his opening brief to whether the Bankruptcy Code's

9    fraudulent transfer and preference provisions apply extraterritorially.  But the parties

10   extensively briefed alternative challenges to these claims in the Original Complaint

11   and FAC based on, *inter alia*, the Trustee's failure to join indispensable parties and

12   failure to state a claim.  Indeed, these alternative grounds were adopted by the

13   Bankruptcy Court when it dismissed the Original Complaint – from which the

14   Trustee also appeals.  [2-ER-001202-001214].    In his Statement of Issues, the

15   Trustee expressly challenges the Bankruptcy Court's bases for dismissing the

16   Bankruptcy Claims in its original decision.  *See* Dkt. 442 Nos. 4 and 19.  Yet, the

17   Trustee chose not to address those issues in his opening brief and may not do so for

18   the first time in his reply brief.  *Martinez-Serrano*, 94 F.3d at 1259.  His arguments

19   are waived.

20

63

4870-6554-4018

The following sets forth these alternative grounds for dismissing the fraudulent transfer and preference claims.

> i.    *Counts 14-15 and 31-32 Were Properly Dismissed Because Indispensable Parties Were Not Joined*

Counts 14, 15, 31, and 32 were premised on the recharacterization of CALI and Glove Assets' leases.  That CALI and Glove Assets – as parties to the leases – were indispensable parties to the Trustee's recharacterization-based claims is unassailable.  *See* Rule 19(a) (made applicable by Fed. R. Bankr. P. 7019); [*accord* 30-ER-039659-039660].

 With respect to CALI and Planes 2-5, the Bankruptcy Court held, in dismissing the Original Complaint, that "[r]ecovery by the Trustee of funds paid by [CALI] to BAC directly would undoubtedly have a 'direct and immediate' impact on [CALI's] rights, which further supports the conclusion that [CALI] is a necessary party under Rule 19(a)."  [2-ER-001212].  The same is true for Glove Assets and Plane 6.  [*See* 30-ER-039598-039600].  Indeed, the Ninth Circuit has made clear that in an action to set aside a lease or contract, parties who may be affected by the court's decision (like the lessor) are indispensable.  *See E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010); *accord In re Lexington Healthcare Grp., Inc.*, 316 B.R. 658, 662 (Bankr. D. Del. 2004).

In addition, the inability to join CALI and Glove Assets was the result of the Trustee's failure to join them as parties *before* the time for asserting

64

Case 2:22-cv-06637-JAK   Document 69   Filed 04/19/23   Page 80 of 98   Page ID #:59177

recharacterization-based claims against them expired.  [4-ER-003152-003153; 18-ER-015780-015790] (Bankruptcy Court refusing to add CALI or Glove Assets as parties by way of consolidation or amendment because the claims were untimely). Because proceeding without CALI and Glove Assets would have required Bombardier to prove CALI and Glove Assets' intent with respect to leases they drafted and negotiated (namely, whether they intended to enter true leases or financing transactions), and the inability to join them resulted from the Trustee's untimely effort to do so, "equity and good conscience" did not permit these claims to proceed without them. *See* Rule 19(b).

The Court, therefore, may affirm the dismissal of Counts 14, 15, 31, and 32 pursuant to Rule 12(b)(7) (made applicable by Fed. R. Bankr. P. 7012).

> ii.    *The Fraudulent Transfer Claims (Counts 12-17, 31-22) Were Properly Dismissed Because they Failed to State a Claim*

Although the Bankruptcy Court dismissed the Original Complaint's fraudulent transfer claims for failing to state a claim, the Trustee has not briefed the issue despite appealing it.  [*See* 2-ER-001202-001209].  This Court may affirm on that ground as well, as the failure of the FAC to state fraudulent transfer claims goes wholly unchallenged by the Trustee.

65

4870-6554-4018

a)      The   Trustee   Did   Not   Sufficiently   Plead
Constructive Fraudulent Transfer Claims (Counts
13, 15, 17, 32)

To survive a motion to dismiss a constructive fraudulent transfer claim, a trustee must allege, with particularity, sufficient facts of *each* of the following: (1) there was a transfer of an interest in the debtor's property, (2) the transfer occurred within the two years before the petition was filed, (3) the debtor received less than reasonably equivalent value in exchange for the transfer, and (4) the debtor either (a) was insolvent or became insolvent because of the transfer, (b) was engaged, or was about to engage, in business or a transaction for which any property remaining was unreasonably small capital, or (c) intended to incur, or believed that it would incur, debts beyond its ability to pay as they mature.  11 U.S.C. § 548(a)(1)(B); [2-ER-001208-001209]; *see also Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, No. C 08-01780 MHP, 2008 WL 4450328, at *8 (N.D. Cal. Sept. 29, 2008) (constructive fraud claims must be pled with particularity under Rule 9(b)); *Screen Cap. Int'l Corp. v. Library Asset Acquisition Co.,* 510 B.R. 248, 257 (C.D. Cal. 2014) (same).

Because the Trustee failed to allege facts showing that (a) the *Debtors* transferred an interest in property or (b) the transfers were for less than reasonably equivalent value, the constructive fraudulent transfer claims failed.  [2-ER-001207-001209].

66

*First*, the Trustee could not plausibly plead a transfer of an interest in the Debtors' property under Section 548(a)(1) because doing so required the recharacterization of the leases for Planes 2-5 (CALI) and 6 (Glove Assets) as financings to bring amounts paid by the non-debtor *lessors* for the aircraft into the estates as the Debtors' property.  The Trustee could not sustain this allegation because, *first*, for the reasons set forth above, he was barred from pursuing his recharacterization claims for failing to join indispensable parties CALI and Glove Assets, *supra* Section I.B.i, and *second*, the leases could not be recharacterized as a matter of law.

CALI's leases are governed by English law, and English law does not permit recharacterization.  *HFGL Ltd. & CNH Cap. Eur. Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc*., 700 F. Supp. 2d 681, 688 (D.N.J. 2010); [30-ER-039661-039662].  [*See also* 2-ER-001611] ("Therefore, the transactions are leases under English law and cannot be recharacterized as urged by the Trustee").  Similarly, Glove Assets' lease for Plane 6 is governed by Singapore law, where recharacterization is not available, *Thai Chee Ken (Liquidators of Pan-Elec. Indus. Ltd) v. Banque Paribas* [1993] 2 SLR 609 [¶¶12, 13], as the Trustee's own expert has recognized.  [30-ER-038816-038825] (Declaration of Keith Han) ¶19 ("To date, the Singapore Courts have yet to specifically consider the distinction between a finance lease and an operating lease.").

4870-6554-4018

*Second*, the Trustee failed to allege sufficiently a lack of reasonably equivalent value. The Trustee's contention that the acquired aircraft ultimately failed to produce sufficient income (25-ER-026803 ¶699, 026812 ¶767) was irrelevant to determining the fair value of the aircraft when acquired. *In re Morris Commc'ns. NC, Inc.*, 914 F.2d 458, 466 (4th Cir. 1990) ("The critical time is when the transfer is 'made.' Neither subsequent depreciation in nor appreciation in value of the consideration affects the value question whether reasonable equivalent value was given.").

The Trustee's allegations that the purchase prices were significantly higher than market prices for similar planes (25-ER-026803 ¶700, 026812 ¶768) failed because, among other reasons, the Trustee failed to plead that the aircraft at issue were available at lower prices in the time frame required.

The pricing allegations in the FAC were also contradictory, and "[c]ontradictory allegations . . . are inherently implausible, and fail to comply with Rule 8, Twombly, and Iqbal." *Hernandez v. Select Portfolio, Inc*., No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015); *see also Eclectic,* 751 F.3d at 999 (affirming dismissal of a complaint based on its inconsistent, and thus implausible pricing allegations). The FAC and the documents it incorporates alleged that Global 6000s had a value of about $37 million (according to the Trustee's "expert") (25-ER-026741 ¶344); a list price of $63 million (24-ER-

68

4870-6554-4018

022023-022026); an assumed purchase price materially below the list price in the Zetta business plan (26-ER-033181-033223 (Fishman Declaration), Ex. L, at 35); and an actual purchase price consistent with that business plan (25-ER-026741 ¶344) set by sales to sophisticated equipment lessors and approved by the Debtor's board members who had significant industry experience.  Further, the undisclosed and undetailed "expert report" does not save the FAC's erratic pricing allegations because it fails Rule 9(b)'s particularity requirement. *Sunnyside Dev. Co.,* 2008 WL 4450328, at *8.

*Finally*, the allegations that the purchase prices exceeded the prices the Debtors should have paid to obtain a "conservative" rate of return (*i.e.*, the "estate value" approach") (25-ER-026741 ¶345) failed to plausibly allege lack of reasonably equivalent value.  An estate value analysis is subjective, based on a particular debtor's operating efficiency and not objective market value.  Courts have rejected a subjective approach when evaluating market value.  *See In re Ozark Rest. Equip. Co.*, 850 F.2d 342, 345 (8th Cir. 1988).

b) The Trustee Did Not Sufficiently Plead Actual Fraudulent Transfer (Counts 12, 14, 16, 31)

A trustee must allege with particularity a transfer of the debtor's interest in property, within two years before the petition was filed, made with the actual intent to hinder, delay or defraud creditors to state a claim under Section 548(a)(1)(A). Intent to defraud can be pled based on: (1) the existence of a Ponzi scheme; (2) in

69

1    some jurisdictions, a debtor's knowledge that the "natural consequences" of its acts

2    would be to hinder, delay, or defraud creditors; or (3) badges of fraud.  *In re Agric.*

3    *Rsch. & Tech. Grp.*, 916 F.2d 528, 536 (9th Cir. 1990); *In re Sentinel Mgmt. Grp.*,

4    728 F.3d 660, 667 (7th Cir. 2013); *In re Acequia, Inc.*, 34 F.3d 800, 805-06 (9th Cir.

5    1994).  Because the allegations in the FAC failed to plausibly allege any of the

6    foregoing, the Trustee's actual fraud claims failed.  [2-ER-001202-001207].

7         *First*, the Trustee's allegations of a "Ponzi-like" scheme were implausible and

8    not pled with Rule 9(b) particularity.  [25-ER-026756-026762 ¶¶407-430].  A "Ponzi

9    scheme" generally consists of "funneling proceeds received from new investors to

10   previous investors in the guise of profits from the alleged business venture, thereby

11   cultivating an illusion that a legitimate profit-making business opportunity exists and

12   inducing further investment."  [2-ER-001205] (citing *In re United Energy Corp.*,

13   944 F.2d 589, 590 n.1 (9th Cir. 1991)).  In a real Ponzi scheme, the transfer to earlier

14   investors can be assumed for pleading purposes to be a fraud on later investors

15   because the later investor's capital is not going to the profit-generating enterprise

16   they were tricked into believing existed.  [2-ER-001205]; *In re Nat'l Audit Def.*

17   *Network (In re NADN)*, 367 B.R. 207 (Bankr. D. Nev. 2007); *In re LLS Am., LLC*,

18   No. 09-06194-PCW11, 2013 WL 3305393 (Bankr. E.D. Wash. July 1, 2013).

19        Here, the Trustee alleged that the Debtors had only one investor (Li Qi) [25-

20   ER-026758-026760 ¶¶411-418]; having only one investor was fatal to an alleged

4870-6554-4018

1   Ponzi-like scheme.  Additionally, unlike in a real Ponzi scheme, the transfers here

2   were used for real business purposes – to purchase income producing aircraft.

3   Because the pleading failed to allege anything like a Ponzi scheme, a presumption

4   that transfers were actually fraudulent did not apply.

5          *Second*, the Trustee's "natural consequences" allegations based on Cassidy's

6   alleged knowledge were implausible.  Even assuming the Ninth Circuit were to

7   embrace this theory, which it has not (*see* 2-ER-001207 (internal citations omitted)),

8   the Trustee's allegations (25-ER-026801 ¶688, 026806 ¶722, 026811 ¶757, 026819

9   ¶820) did not support a plausible inference that Cassidy knew that acquiring aircraft

10  had no economic justification or that the Debtors would never be profitable.  Rather,

11  the more plausible inference is that Cassidy was trying to grow the business

12  according to plan.  Likewise, it was implausible that Cassidy should have known

13  that the Debtors' failure was a "natural consequence" of purchasing aircraft from

14  BAC when none of Zetta's other board members, lenders, lessors, or investors,

15  thought that to be the case.

16         *Third*, the "substantial certainty" theory does not replace the "natural

17  consequences" theory.  *See In re Lyondell Chem. Co.*, 554 B.R. 635, 651 (S.D.N.Y.

18  2016) ("*Sentinel* [a substantial certainty case] should not be read as replacing the

19  traditional, more demanding standard for ascribing actual intent with a presumption

20  that a person is aware of the natural consequences of her acts.").  Because the FAC

71

did not allege facts sufficient to support a "natural consequences" theory, neither did it allege facts sufficient to support a "substantial certainty" theory.

*Finally*, the Trustee failed to sufficiently allege with particularity the badges of fraud.  In the Ninth Circuit, the badges of fraud include: (1) a transfer made in the face of actual or threatened litigation; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and (5) post-transfer retention by the debtor of the property involved in a putative transfer.  *In re Acequia*, 34 F.3d at 806.

In the FAC, the Trustee did not allege that any of the transfers sought to be recovered from BAC and BI were made in the face of actual or threatened litigation; that the Debtors retained a post-transfer interest in any moneys it or CALI, Minsheng (Yuntian), or Universal Leader paid to BAC; that the transfers were to insiders or affiliates of an insider such that they implicate a "special relationship" between Cassidy/Zetta and BAC/BI; that the transfers involved all or substantially all the Debtors' property; or that the Debtors did not receive valuable aircraft for use in its business.

As such, the FAC wanted for almost any of the badges of fraud and failed to state a claim.  *See e.g.*, *In re Fedders N. Am., Inc.*, 405 B.R. 527, 545 (Bankr. D. Del. 2009) (insolvency alone is insufficient to support a fraud presumption); *In re SMTC*

4870-6554-4018

*Mfg. of Tex.*, 421 B.R. 251, 316 (Bankr. W.D. Tex. 2009) ("Because the Trustee proved only two badges of fraud – transfers to insiders and insolvency. . . the Court finds he failed to provide sufficient circumstantial evidence that those transfers were made with actual intent to. . . defraud the Debtor's creditors").

        *iii.*    *The Preference Claims (Counts 18, 19) Failed to State a Claim*

The Trustee also did not argue in his Opening Brief that he sufficiently pled his preference claims. He thus has waived any argument that he did. *See Smith*, 194 F.3d at 1052. The Court, however, also has the discretion to dismiss the preference claims for any reason supported by the record. *Livid Holdings,* 416 F.3d at 950. Here, if the Court chooses, it can dismiss Counts 18 and 19 because there were obvious bars to securing preference recovery relief on the face of the FAC. *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014).

<u>Ordinary course.</u> The ordinary course defense provides that a trustee may not avoid an otherwise preferential payment if the debt was incurred in the ordinary course of business of the debtor and the transferee and paid consistent with ordinary terms. 11 U.S.C. § 547(c)(2). From the face of the FAC, the debts identified in Counts 18 and 19 were incurred in the ordinary course of Bombardier's aircraft manufacturing, sale and maintenance business and the Debtors' aircraft charter business: the Count 18 payment was owed by Zetta PTE in connection with its purchase of Plane 4; the Count 19 payment was owed by Zetta PTE and Zetta USA

73

1    after resolution of a dispute concerning amounts due for repairs and parts provided

2    by BAC and BI for Plane 12.

3         Moreover, the payments were made close to terms.  [*See* 25-ER-026938-

4    026947, Ex. 13; 25-ER-026948-026974, Ex. 14].  Even if the promissory note and

5    agreement pursuant to which certain payments were made altered pre-existing

6    contractual terms, they were still made in the ordinary course.  *See In re Kaypro*,

7    218 F.3d 1070, 1073 (9th Cir. 2000) (holding that payments made pursuant to a

8    restructuring agreement are not *per se* outside the ordinary course of business); *see*

9    *also In re Metromedia Fiber Network, Inc.*, No. 02 B 22736(ASH), 2005 WL

10   3789133 (Bankr. S.D.N.Y. Dec. 20, 2005); *In re Ahaza Sys., Inc.*, 482 F.3d 1118

11   (9th Cir. 2007) (repayment of debt under a settlement agreement can be within the

12   "ordinary course of business" exception even for the first transaction between the

13   parties).

14        <u>Contemporaneous exchange.</u>   The contemporaneous exchange defense

15   provides that a transfer that would otherwise be considered preferential is insulated

16   from attack if: (a) the preference defendant extended new value to the debtor;

17   (b) both the defendant and the debtor intended the new value and reciprocal transfer

18   by the debtor to be contemporaneous; and (c) the exchange was in fact substantially

19   contemporaneous.  11 U.S.C. § 547(c)(1).  The FAC and its Exhibit 14 (a settlement

20   agreement) (25-ER-026948-026974), reflected that the payment by Zetta PTE and

74

1    the issuance by BAC and BI of new credit notes and memoranda were intended to

2    be, and were, exchanged substantially contemporaneously.

3        For these reasons, which are part of the record (*see* 30-ER-039668-039669,

4    039608), the Trustee's preference claims failed as a matter of law.

5            3.    <u>The Bankruptcy Court Properly Dismissed the Stay Violation</u>
                    <u>Claim (Count 20)</u>

6        The Trustee is not an "individual" entitled to recover damages for a willful

7    violation of the automatic stay.  *Johnston Env't Corp. v. Knight (In re Goodman)*,

8    991 F.2d 613, 619 (9th Cir. 1993).  Following this Ninth Circuit precedent, the

9    Bankruptcy Court properly dismissed Count 20.  [30-ER-041554]; *see also In re*

10   *Chateaugay Corp.*, 920 F.2d 183, 184-87 (2d Cir. 1990).

11       On appeal, the Trustee argues the Bankruptcy Court did not consider his

12   allegations regarding unauthorized setoff.  Br. 49.  Assuming *arguendo* there was an

13   unauthorized setoff not considered by the Bankruptcy Court, dismissal of Count 20

14   must still be upheld.  Setoff is automatically stayed by Section 362(a)(7), and a claim

15   for violating that automatic stay section can still only be pursued by an individual

16   entitled to relief under Section 362(k).  Moreover, the allegedly improper setoff

17   occurred eight days before these cases started.  [25-ER-026772-026774 ¶¶500-505].

18   The automatic stay is not violated by a pre-petition act.  11 U.S.C. § 362(a) (staying

19   post-petition acts).

20

75

1       Next, the Trustee argues that the Bankruptcy Court did not address his request

2 to amend Count 20 to assert, or have it treated as, a claim for breach of the Smart

3 Parts Agreement.  But the Bankruptcy Court did address the request – and denied it.

4 It held: "Seeking to avoid this result, the Trustee claims that Count 20 alleges a

5 breach of contract claim and, if the Court disagrees, he requests leave to amend that

6 claim. . . . The Trustee's position is unavailing."  [30-ER-041555].

7       The Bankruptcy Court clearly had the discretion to deny leave to amend.

8 *Swanson v. United States Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  And there

9 was no abuse of discretion because "[f]utility of amendment can, by itself, justify

10 the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 845

11 (9th Cir. 1995).  A breach of contract claim was futile because the Smart Parts

12 Agreement was rejected, (30-ER-041555 (citing Dkt. Nos. 498 Ex. A at 6, 581 at

13 2)); rejected executory contracts are deemed materially breached immediately prior

14 to the bankruptcy filing (11 U.S.C. § 365(g)); and that material breach *relieves the*

15 *non-debtor of continuing performance obligations.  In re Pac. Express, Inc.*, 780

16 F.2d 1482, 1486 n.3 (9th Cir. 1986) ("After rejection, the performance of the non-

17 bankrupt obligee is excused."); *see also* [30-ER-039608-039609].  This proposed

18 breach of contract claim, therefore, was nothing more than a dressed-up damages

19 claim based on alleged stay violations.

20

4870-6554-4018

1   Finally, the Trustee argues he was eligible for relief (notwithstanding Section

2   362(k)(1)) under Section 105(a)'s contempt authority.  Br. 49-50.  But the FAC did

3   not even mention contempt, and accordingly, the Trustee failed to sufficiently plead

4   that claim.  [*See* 2-ER-001515] (holding that the Trustee's failure to even mention

5   contempt in the Yuntian complaint bars characterization of his damages claim under

6   Section 362(k) as a contempt claim under Section 105(a)).

7   In addition, the FAC failed to allege any facts from which it could be inferred

8   that, in refusing to perform post-petition work under the Smart Parts Agreement

9   without pay, Bombardier lacked any basis for believing its conduct was proper and

10  not in violation of the stay.  Contempt claims require such a showing.  *See Taggart*

11  *v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019) (applying traditional civil contempt

12  principles and the fair ground of doubt standard in the bankruptcy context).  Indeed,

13  the only plausible inference from the FAC was that Bombardier's alleged non-

14  performance post-bankruptcy was a continuation of pre-petition conduct, and that

15  would not be a stay violation at all.  *See City of Chicago v. Fulton*, 141 S. Ct. 585,

16  592 (2021) ("[M]ere retention of estate property after the filing of a bankruptcy

17  petition does not violate § 362(a)(3) of the Bankruptcy Code.").

18          4.   The Bankruptcy Court Properly Dismissed the Disallowance
                 Claim (Count 25)
19
20  Because the Bankruptcy Court properly dismissed the fraudulent transfer and

    preference claims, Count 25, premised on a failure to return avoidable transfers, was

4870-6554-4018

1    properly dismissed.  *See In re Lexington Healthcare Grp., Inc.*, 339 B.R. 570 (Bankr.

2    D. Del. 2006) (dismissing disallowance claim predicated on trustee's fraudulent

3    transfer claims where avoidance claims were dismissed for failure to plead with

4    sufficient particularity).

5    **II.**     **The Bankruptcy Court Properly Exercised Its Discretion to Deny the**
            **Trustee's Motion to Consolidate**

6          On March 11, 2020, the Bankruptcy Court dismissed the Original Complaint,

7    with limited leave to amend.  [*See* 2-ER-001173-001216; 2-ER-001464-001465].

8    Seven months later, on October 19, 2020, the Bankruptcy Court dismissed the

9    original complaint in the CALI Action, also with limited leave to amend.  [2-ER-

10   001590-001658; 3-ER-001770-001771].    Without  filing  amended  complaints

11   consistent with the Bankruptcy Court's orders in either action, and without the

12   parties' consent, on December 4, 2020, the Trustee filed his motion to consolidate.

13   [3-ER-001784-001790].  The Trustee's Proposed Consolidated Amended Complaint

14   ("PCAC") sought to combine the narrow, contract-based CALI Action with the

15   complex, fraud-based Jetcraft Action that he had affirmatively chosen to file

16   separately, and added allegations under RICO, the Robinson Patman Act, and penal

17   codes, as well as new claims for recharacterization against CALI which were time-

18   barred.  [18-ER-015851-016184].  The Bankruptcy Court, exercising its discretion,

19   denied the Trustee's motion to consolidate. [4-ER-003151-003153].

20         The  Bankruptcy  Court  properly  applied  Federal  Rule  of  Bankruptcy

                                          78

1   Procedure 7042, which incorporates Rule 42, when denying the "legally unsound"

2   motion. [4-ER-003186-003187 at 33:22-34:3; 30-ER-041558].  Rule 42 provides

3   that "[i]f actions before the court involve a common question of law or fact, the court

4   *may* . . . consolidate the actions[.]" Fed. R. Civ. P 42 (emphasis added).  Rule 42 is

5   undeniably discretionary; even if a common question of law or fact exists among

6   separate actions, those actions need not be consolidated.  *See, e.g., Snyder v.*

7   *Nationstar Mortg. LLC*, No. 15-cv-03049-JSC, 2016 WL 3519181, at *2 (N.D. Cal.

8   June 28, 2016).

9      The Bankruptcy Court did not hold the Trustee to a heightened standard or

10  "creat[e] a new" standard when denying the motion to consolidate, as the Trustee

11  contends. Br. 51.  The Bankruptcy Court simply exercised its discretion because no

12  operative complaints had been filed, and the PCAC "add[ed] counts, add[ed] parties,

13  and add[ed] other allegations that were not previously included in either the [CALI]

14  or Jetcraft [Actions]," so the Court could not determine whether there were sufficient

15  common questions of law or fact to warrant consolidation.  [4-ER-003194 at 41:15-

16  18].

17  **III.   The Bankruptcy Court Properly Exercised Its Discretion to Deny the Trustee Leave to Amend**

18

19      After three and a half years and four complaints, the Trustee has not been able

    to assert a viable claim against Bombardier.  Nor can he.  No matter how many times

20  the Trustee labels something "fraudulent" (more than 100 times in the FAC), he

4870-6554-4018

cannot convert Bombardier's ordinary business activities into something wrongful, and he cannot attribute to Bombardier payments allegedly made by third-parties in transactions that did not concern Bombardier in any capacity.  Because further amendment cannot fix the FAC's deficiencies, the Bankruptcy Court properly exercised its discretion to deny the Trustee leave to amend.

Federal Rule of Bankruptcy Procedure 7015 provides that Rule 15 of the Federal Rules of Civil Procedure ("Rule 15") applies to supplemental and amended pleadings in adversary proceedings.  Rule 15(a)(2) indicates that "a party may amend its pleading only with the opposing party's written consent or the court's leave." [30-ER-041556].   The Bankruptcy Court's authority is unquestionably discretionary, and "if a court has previously granted leave to amend, the court's 'discretion in deciding subsequent motions to amend is 'particularly broad.'" [30-ER-041557] (citing *Chodos v. W. Publ'g Co.,* 292 F.3d 992, 1003 (9th Cir. 2002)). The Bankruptcy Court had already let the Trustee amend the Original Complaint (except for unjust enrichment) when it denied leave to amend the FAC.

As the moving party, the Trustee had "the initial burden to show a legitimate reason for seeking amendment."  [30-ER-041557].  If the Trustee met that initial burden—which he failed to do—the burden would then shift to Bombardier to show that leave to amend was not warranted based on (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; or (5) previous

4870-6554-4018

1    amendments to the complaint.  *Id.*

2       Regardless, the Bankruptcy Court found that granting leave to amend would

3    be futile and prejudice Bombardier.  [30-ER-041558] ("considering the Zetta-BAC

4    APAs and the Representative Agreements, which are attached to and incorporated

5    by reference into the FAC, it is clear that Fazal-Karim was not BAC/BI's agent, New

6    York law applies, and repleading the agency allegations and applicable law would

7    be futile"); *id.* (holding it would be "prejudicial to [Bombardier] if leave to amend

8    were granted" because "[i]n addition to being forced to respond to the FAC,

9    [Bombardier] were forced to respond to the motions to consolidate and to amend,

10   both of which were not well-taken efforts . . . .").  As the Bankruptcy Court put it,

11   "further amendment would only subject [Bombardier] to additional unnecessary

12   costs without any prospect of the Trustee's success." *Id.*  The Bankruptcy Court was

13   well within its discretion not to permit the Trustee to amend again. *See, e.g.,* Rule

14   15.

## CONCLUSION

15

16      The Bankruptcy Court's Judgment in favor of BAC, BI and LI should be

17   affirmed.

18   DATED: April 19, 2023          **PILLSBURY WINTHROP SHAW PITTMAN LLP**

19                                  By: */s/ Andrew M. Troop*

20                                  ANDREW M. TROOP (Pro Hac Vice)
                                    ERIC FISHMAN (Pro Hac Vice)

81

4870-6554-4018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

CAROLINA A. FORNOS (Pro Hac Vice)
CLAIRE K. WU (SBN 295966)

*Attorneys for Bombardier Aerospace
Corporation, Bombardier Inc. and Learjet,
Inc.*

82

### **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 18,981 words.[18]

This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

---

[18] On April 6, 2023, the Court entered an Order (District Court Dkt. No. 68) granting Bombardier's Motion for Leave to File Answering Brief in Excess of Word Count Limitation (District Court Dkt. No. 67) and holding that Bombardier's Answering Brief may have up to 19,500 words, as calculated under Fed. R. Bankr. P. 8015.

4870-6554-4018