CASE NO. 2:22-cv-6637

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

In re: Zetta Jet USA, Inc., et al.

*Debtors.*

JONATHAN D. KING, solely in his capacity as Chapter 7
Trustee of Zetta Jet USA, Inc., and Zetta Jet PTE, Ltd.,

*Appellant*,

vs.

BOMBARDIER AEROSPACE CORPORATION, BOMBARDIER, INC., and
LEARJET, INC.,

*Appellees.*

Appeal from the United States Bankruptcy Court, Central District of California
Bankruptcy Case No. 2:17-bk-21386-SK
Adversary Case No. 2:19-ap-01382-SK

## APPELLANT'S REPLY BRIEF

DAVID M. RILEY (SBN 292087)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4704
Telephone:  (310) 595-3024
Facsimile:    (310) 595-3300
Email:  david.riley@us.dlapiper.com

*Counsel for Appellant*

JOHN K. LYONS (Pro Hac Vice)
JEFFREY S. TOROSIAN (Pro Hac Vice)
JOSEPH A. ROSELIUS (Pro Hac Vice)
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, Illinois 60606-0087
Telephone:  (312) 368-4000
Facsimile:    (312) 236-7516
Email: john.lyons@us.dlapiper.com
          jeffrey.torosian@us.dlapiper.com
          joseph.roselius@us.dlapiper.com

*Counsel for Appellant*

# Table of Contents

**Page**

Introduction ..................................................................................................1

Argument......................................................................................................2

I. The Bankruptcy Court erred by dismissing the tort claims.............................2

   A. The FAC plausibly pleads that Bombardier paid direct bribes. ..................2

   B. The FAC plausibly pleads that Bombardier's agent Fazal-Karim paid Cassidy at least $1 million in kickbacks. .......................................................5

   C. The FAC plausibly pleads that Bombardier executives conspired to pay Cassidy bribes and kickbacks in exchange for planes...............................9

   D. The FAC plausibly pleads aiding and abetting breach of fiduciary duty...11

   E. The FAC plausibly pleads fraudulent misrepresentation. ..........................13

   F. The FAC plausibly pleads fraudulent concealment. ..................................14

   G. The FAC plausibly pleads a UCL claim. ..................................................15

      1. Tort claims are decided according to the law of the forum state............15

      2. The tort claims fall outside the choice-of-law provision. .......................15

      3. The choice-of-law provision is unenforceable.......................................16

   H. In pari delicto does not bar the tort claims. ...............................................18

   I. The FAC pleads unjust enrichment. ...........................................................21

II. The Bankruptcy Court erred by dismissing the bankruptcy claims. .............22

   A. Sections 547 and 548 apply extraterritorially. ..........................................22

      1. Supreme Court precedent establishes that §§ 547 and 548 apply extraterritorially........................................................................................22

      2. Bombardier's reliance on *Midland* is misplaced...................................23

   B. Transfers to Bombardier's U.S. bank accounts are avoidable under §§ 547 and 548. ..........................................................................23

      1. Transfers into the U.S. are domestic conduct. .......................................23

2.  Initial transfers from Zetta USA to Zetta Singapore provide an independent basis to avoid subsequent transfers to Bombardier. ...........25

3.  The Trustee has not waived his in-rem argument. .................................26

C.  Bombardier's other waiver arguments fail. ...............................................27

D.  The FAC plausibly pleads the bankruptcy counts. .....................................28

1.  None of the purportedly indispensable parties requested or needed to be joined. ...............................................................28

2.  The FAC plausibly pleads constructive fraudulent transfer claims. ........29

a.  Rule 8 applies to constructive fraudulent transfer claims. ......................29

b.  The Debtors transferred an interest in property. ....................................29

c.  The FAC pleads lack of reasonably equivalent value. ............................31

3.  The FAC plausibly pleads actual fraudulent transfer claims. .................32

a.  The FAC pleads the existence of a Ponzi-like scheme. ..........................32

b.  The FAC pleads actual fraudulent intent under the "natural consequences" and "substantial certainty" tests. ...................................33

c.  The FAC pleads "badges of fraud." ........................................................34

4.  The FAC plausibly pleads preference claims. ........................................35

E.  Bombardier's stay violation argument does not address the Trustee's arguments. .....................................................36

F.  Bombardier does not dispute the disallowance claim. ..............................38

III.  The Bankruptcy Court erred by denying consolidation. ...............................38

IV.  The Bankruptcy Court erred by denying leave to amend. .............................39

Conclusion .........................................................................................................40

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

1

## Table of Authorities

2

**Cases**                                                               **Page(s)**

3

*In re 1031 Tax Grp., LLC*,
   420 B.R. 178 (Bankr. S.D.N.Y. 2009)...............................................21

4

*In re Acrex, Inc.*,
   2014 WL 3586533 (Bankr. S.D.N.Y. July 21, 2014).........................20

5

*Adv. Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*,
6   2010 WL 11478992 (N.D. Cal. July 21, 2010) ....................................5

7

*In re Agri. Res. Tech. Grp.*,
   916 F.2d 528 (9th Cir. 1990) .............................................................33

8

*In re Ahaza Sys., Inc.*,
9   482 F.3d 1118 (9th Cir. 2007) ...........................................................35

*Am. Health Sys., Inc. v. Visiting Nurse Ass'n of Greater Philadelphia*,
10   1994 WL 314313 (E.D. Pa. June 29, 1994)..........................................4

11

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 327 (S.D.N.Y. 2010) .............................................6, 7

12

*In re Arcapita Bank B.S.C.(c)*,
13   575 B.R. 229 (Bankr. S.D.N.Y. 2017)..........................................24, 25

14

*ASARCO LLC v. Am. Mining Corp.*,
   396 B.R. 278 (S.D. Tex. 2008) ......................................................33, 34

15

*ASARCO, LLC v. Union Pac. R. Co.*,
   765 F.3d 999 (9th Cir. 2014) .............................................................35

16

*Ass'n for L.A. Deputy Sheriffs v. County of L.A*,
17   648 F.3d 986 (9th Cir. 2011) ............................................................ 33

18

*Balboa Cap. Corp. v. New Image Dental Lab'y, Inc.*,
   2020 WL 4805467 (C.D. Cal. July 2, 2020).........................................7

19

*Bd. of Managers of 411 East 53rd St. Condo. v. Perlbinder*,
20   2016 WL 1597761 (N.Y. Sup. Ct. Apr. 21, 2016) ..............................6

21

i

*Begier v. IRS*,
    496 U.S. 53 (1990) ............................................................ 22, 23, 24

*In re Beverly*,
    374 B.R. 221 (B.A.P. 9th Cir. 2007) ................................................. 34

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
    866 F. Supp. 2d 257 (S.D.N.Y. 2012) ............................................... 8

*Boeing Co. v. KB Yuzhnoye*,
    2018 WL 735971 (C.D. Cal. Feb. 6, 2018),
    *aff'd*, 791 F. App'x 650 (9th Cir. 2019) ........................................... 16

*Bruton v. Gerber Prods. Co.*,
    703 F. App'x 468 (9th Cir. 2017) ................................................... 21

*Butto v. Collecto Inc.*,
    802 F. Supp. 2d 443 (E.D.N.Y. 2011) ............................................... 8

*Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
    54 F.4th 1078 (9th Cir. 2022) ...................................................... 18

*In re Cal. TD Invs. LLC*,
    489 B.R. 124 (Bankr. C.D. Cal. 2013) ............................................. 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    2010 WL 9543295 (N.D. Cal. Feb. 5, 2010) ......................................... 6

*CFTC v. Monex Credit Co.*,
    931 F.3d 966 (9th Cir. 2019) ....................................................... 28

*Cisco Sys., Inc. v. Capella Photonics, Inc.*,
    2020 WL 4923697 (N.D. Cal. Aug. 21, 2020) ....................................... 26

*City of Fort Myers Gen. Employees' Pension Fund v. Haley*,
    235 A.3d 702 (Del. 2020) .......................................................... 12

*Clem v. Lomeli*,
    566 F.3d 1177 (9th Cir. 2009) .............................................. 14, 16, 25

*In re Colonial Realty Co.*,
    980 F.2d 125 (2d Cir. 1992) ....................................................... 23

*Digit. Ally, Inc. v. Util. Assocs.*,
    882 F.3d 974 (10th Cir. 2018) ............................................................28

*Doe 1 v. AOL LLC*,
    552 F.3d 1077 (9th Cir. 2009) ...........................................................16

*In re Dyer*,
    322 F.3d 1178 (9th Cir. 2003) .....................................................36, 37

*E.E.O.C. v. Peabody W. Coal Co.*,
    610 F.3d 1070 (9th Cir. 2010) ...........................................................28

*In re EPD Inv. Co.*,
    2014 WL 12597148 (C.D. Ca. Aug. 29, 2014),
    *aff'd*, 821 F.3d 1146 (9th Cir. 2016)..................................................29

*In re Equip. Acquisition Res., Inc.*,
    2012 WL 4754949 (Bankr. N.D. Ill. Sept. 28, 2012) ........................35

*Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols.*,
    25 F.4th 763 (9th Cir. 2022) ..............................................................27

*Fikre v. FBI*,
    35 F.4th 762 (9th Cir. 2022) ..............................................................18

*In re FirstPay, Inc.*,
    2012 WL 3778952 (Bankr. D. Md. Aug. 30, 2012) ...........................36

*Flores v. Am. Seafoods Co.*,
    335 F.3d 904 (9th Cir. 2003) .............................................................16

*In re Food Catering & Housing, Inc.*,
    971 F.2d 396 (9th Cir. 1992) .............................................................36

*Frederick Hsu Living Tr. v. ODN Holding Corp.*,
    2017 WL 1437308 (Del. Ch. Apr. 14, 2017)......................................12

*In re French*,
    440 F.3d 145 (4th Cir. 2006) .............................................................23

*In re Fundamental Long Term Care, Inc.*,
    873 F.3d 1325 (11th Cir. 2017) ...........................................................6

*In re Grand Chevrolet, Inc.*,
    25 F.3d 728 (9th Cir. 1994) ................................................................36

*Hardisty v. Moore*,
    750 F. App'x 525 (9th Cir. 2018) .............................................9, 21, 22

*Hartford Cas. Inc. Co. v. J.R. Mktg., LLC*,
    61 Cal. 4th 988 (2015) ...................................................................21

*In re Indep. Clearing House Co.*,
    77 B.R. 843 (D. Utah 1987) ..............................................................33

*Johnson v. Mazza*,
    2017 WL 663153 (C.D. Cal. Feb. 17, 2017),
    *aff'd*, 778 F. App'x 549 (9th Cir. 2019) .........................................10, 11

*In re Kaypro*,
    218 F.3d 1070 (9th Cir. 2000) ...........................................................35

*King v. Bumble Trading, Inc.*,
    393 F. Supp. 3d 856 (N.D. Cal. 2019) ...................................................17

*Kirschner v. KPMG LLP*,
    15 N.Y.3d 446 (2010) .................................................................19, 20

*KST Data, Inc. v. DXC Tech.*,
    2018 WL 5734227 (C.D. Cal. Mar. 26, 2018),
    *aff'd in part*, 836 F. App'x 484 (9th Cir. 2020) .....................................17

*In re Lexington Healthcare Grp., Inc.*,
    316 B.R. 658 (Bankr. D. Del. 2004) ......................................................28

*Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp. of Del.*,
    805 F. Supp. 1277 (D.S.C. 1992),
    *aff'd*, 998 F.2d 1009 (4th Cir. 1993) ....................................................4

*In re LLS Am.*,
    2013 WL 3305393 (Bankr. E.D. Wash. July 1, 2013) .......................................32

*In re Lyondell Chem. Co.*,
    554 B.R. 635 (S.D.N.Y. 2016) ...........................................................33

iv

*Martinez-Serrano v. INS*,
    94 F.3d 1256 (9th Cir. 1996) ...............................................................27

*Mashiri v. Epsten Grinnell & Howell*,
    845 F.3d 984 (9th Cir. 2017) ...............................................................26

*Master Replicas, Inc. v. Levitation Arts, Inc.*,
    2008 WL 11338694 (C.D. Cal. May 28, 2008).....................................22

*In re Metromedia Fiber Network, Inc.*,
    2005 WL 3789133 (Bankr. S.D.N.Y. Dec. 20, 2005) ..........................35

*Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*,
    18 F.3d 260 (4th Cir. 1994) ....................................................................4

*In re Midland Euro Exch. Inc.*,
    347 B.R. 708 (Bankr. C.D. Cal. 2006) ..................................................23

*In re Morse Tool, Inc.*,
    108 B.R. 384 (Bankr. D. Mass. 1989) ...................................................29

*In re O'Gorman*,
    2022 WL 17851422 (B.A.P. 9th Cir. 2022) ..........................................34

*Odin Shipping Ltd. v. Drive Ocean V MV*,
    221 F.3d 1348 (9th Cir. 2000) ..............................................................15

*Paeste v. Gov't of Guam*,
    624 F. App'x 488 (9th Cir. 2015) ..........................................................32

*People v. N. Leasing Sys., Inc.*,
    169 A.D.3d 527 (N.Y. App. Div. 2019) ...................................................7

*Philip Morris, Inc. v. Grinnell Lithographic Co.*,
    67 F. Supp. 2d 126 (E.D.N.Y. 1999) .......................................................5

*In re Picard*,
    917 F.3d 85 (2d Cir. 2019) ........................................................24, 25, 26

*In re Pitt Penn Holding Co.*,
    484 B.R. 25 (Bankr. D. Del. 2012)........................................................19

*In re Platinum-Beechwood Litig.*,
   2019 WL 2569653 (S.D.N.Y. June 21, 2019) ....................................................20

*In re Refco Sec. Litig.*,
   779 F. Supp. 2d 372 (S.D.N.Y. 2011),
   *aff'd*, 486 F. App'x 153 (2d Cir. 2012)............................................................20

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ...........................................................19, 27

*Rosenbaum v. City & Cnty. of San Francisco*,
   484 F.3d 1142 (9th Cir. 2007) .......................................................19, 26, 27

*Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*,
   44 F.4th 867 (9th Cir. 2022) .........................................................19, 27

*Sahebdin v. Khelawa*,
   2022 WL 4451005 (E.D.N.Y. Sept. 24, 2022) ..................................................11

*Scanlan v. Sisto*,
   2012 WL 1130668 (E.D. Cal. Mar. 28, 2012)....................................................26

*Schwartz v. Leaf, Salzman, Manganelli, Pfiel, & Tendler, LLP*,
   123 A.D.3d 901 (N.Y. App. Div. 2014) ......................................................20

*Screen Capital Intern. Corp. v. Library Asset Acquisition Co., Ltd.*,
   510 B.R. 248 (C.D. Cal. 2014) .........................................................29

*Seminole Tribe of Fla. v. Florida*,
   517 U.S. 44 (1996)............................................................22, 23, 27

*In re Sentinel Mgmt. Grp., Inc.*,
   728 F.3d 660 (7th Cir. 2013) .........................................................33

*In re Silicon Valley Telecon Exch., LLC*,
   315 B.R. 750 (B.A.P. 9th Cir. 2004) ...................................................31

*In re Simon*,
   153 F.3d 991 (9th Cir. 1998) .........................................................27

*Smith v. Marsh*,
   194 F.3d 1045 (9th Cir. 1999) .....................................................19, 27

vi

*Spinelli v. NFL*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........................................................8

*St. Francis Holdings, LLC v. MMP Cap., Inc.*,
2022 WL 991980 (E.D.N.Y. Mar. 31, 2022)..........................................7

*Stewart v. Target Corp.*,
2013 WL 1182080 (E.D.N.Y. Mar. 20, 2013).........................................9

*Sunnyside Development Co. LLC v. Cambridge Display Technology Ltd.*,
2008 WL 4450328 (N.D. Cal. Sept. 29, 2008).......................................29

*In re Syntax-Brillian Corp.*,
2016 WL 1165634 (Bankr. D. Del. Feb. 8, 2016)..................................33

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019).............................................................................37

*Thai Chee Ken v. Banque Paribas*
[1993] 2 SLR 609 ...................................................................................30

*In re The Russ Cos.*,
2013 WL 4028098 (Bankr. D.N.J. Aug. 5, 2013) ..................................35

*In re Toys "R" US, Inc.*,
642 B.R. 727 (Bankr. E.D. Va. 2022)......................................................12

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
2011 WL 1753738 (N.D. Cal. May 9, 2011).....................................6, 10

*In re Tyson Foods, Inc.*,
919 A.2d 563 (Del. Ch. 2007) .................................................................12

*U.S. v. 191.07 Acres*,
482 F.3d 1132 (9th Cir. 2007) ................................................................31

*U.S. v. Bowen*,
172 F.3d 682 (9th Cir. 1992) ..................................................................28

*U.S. v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011) ....................................................................7

*U.S. v. Daccarett*,
  6 F.3d 37 (2d. Cir. 1993) ...................................................................25

*U.S. v. Graf*,
  610 F.3d 1148 (9th Cir. 2010) ....................................................13, 22

*U.S. v. Ho*,
  984 F.3d 191 (2d Cir. 2020) ...............................................................25

*U.S. v. Pawlowski*,
  351 F. Supp. 3d 840 (E.D. Penn. 2018) ..............................................4

*U.S. v. Pomrenke*,
  198 F. Supp. 3d 648 (W.D. Va. 2016) .................................................4

*U.S. v. Ring*,
  628 F. Supp. 2d 195 (D.D.C. 2009) .....................................................4

*U.S. v. Sawyer*,
  878 F. Supp. 279 (D. Mass. 1995) .......................................................4

*U.S. v. Tabor Ct. Realty Corp.*,
  803 F.2d 1288 (3d. Cir. 1986) ...........................................................33

*In re Walldesign, Inc.*,
  872 F.3d 954 (9th Cir. 2017) .......................................................24, 25

*Williams Elec. Games, Inc. v. Garrity*,
  366 F.3d 569 (7th Cir. 2004) .........................................................5, 13

*Williams v. Leach*,
  938 F.2d 769 (7th Cir. 1991) ..............................................................28

**Statutes and Rules**

11 U.S.C. § 101(54) ................................................................24, 25

11 U.S.C. § 362 ......................................................................23, 36

11 U.S.C. § 541 ................................................................2, 22, 23

11 U.S.C. § 547 ................................................................1, 22, 23

11 U.S.C. § 548 ................................................................1, 22, 23

11 U.S.C. § 550 ..................................................................................................26

Fed. R. Bankr. P. 9019 .......................................................................................15

Fed. R. Civ. P. 8 ..................................................................................................29

Fed. R. Civ. P. 9(b) .....................................................................................10, 29

Cal. Bus. & Prof. Code § 17200 ..............................................................3, 10, 18

Cal. Comm. Code § 1301 ....................................................................................30

UCC §1-301, cmt. 1 ............................................................................................30

**Other Authorities**

Hawkland's UCC Series §1-301:1 .......................................................................30

Restatement (Second) of Conflict of Laws § 6 ...................................................30

Restatement (Second) of Conflict of Laws § 187 ...............................................16

## **Introduction**

The FAC alleges that Bombardier paid Cassidy (the Debtors' former managing director) over $1 million in kickbacks, both directly in quid-pro-quo bribes of sports tickets and Sea-Doos, and through Bombardier's agent and "exclusive representative for Southeast Asia," Fazal-Karim. In exchange for those kickbacks, Cassidy caused the Debtors to acquire planes overpriced by $100 million from Bombardier and Fazal-Karim. As alleged in the FAC, that overpricing was confirmed by the analysis of two independent retained experts, using two different methods, broken down plane by plane, providing specific numbers and methodologies. Based on that alone, under the proper application of basic federal pleading rules, the FAC states claims.

But the Bankruptcy Court did not properly apply federal pleading rules. Instead, the Bankruptcy Court decided that some allegations in the FAC were untrue, ignored others, drew almost every inference against the Trustee, and dismissed the FAC. The Bankruptcy Court also refused to allow the Trustee to consolidate related claims, despite treating the cases as consolidated for years, and denied leave to amend on issues that the Bankruptcy Court previously found in the Trustee's favor.

The Bankruptcy Court similarly erred by dismissing preference and fraudulent transfer claims involving payments to Bombardier's Texas bank accounts as extraterritorial. The Bankruptcy Court erred by holding that §§ 547 and 548 do not apply extraterritorially, despite binding Supreme Court caselaw holding that

"property of estate" under those sections is defined by § 541(a), which includes property "wherever located" that would have been property of the estate but for the prepetition transfer. The Bankruptcy Court also erred by holding that transfers to Bombardier's Texas bank account do not concern the U.S.

Rather than meet the Trustee's argument on the issues the Bankruptcy Court decided, Bombardier filed an oversize brief that includes almost every other argument in the case as purported "alternative grounds for relief," then asserted that the Trustee waived these points by not anticipating Bombardier's arguments. None of these alternative grounds for relief has merit, and the Trustee had no obligation to address anything but what the Bankruptcy Court addressed in dismissing the FAC.

This Court should reverse the Bankruptcy Court's decision.

## <u>Argument</u>

**I.  The Bankruptcy Court erred by dismissing the tort claims.**

**A.  The FAC plausibly pleads that Bombardier paid direct bribes.**

The FAC pleads that Bombardier directly paid one quid-pro-quo bribe of $43,890 in sports tickets and agreed to pay a second bribe of Sea-Doos worth $42,569, so that Cassidy would not cancel APAs. (Tr. Br. at 21-27.) These undisclosed bribes – independent of the $1 million in kickbacks paid on Bombardier's behalf by Fazal-Karim – support the Trustee's claims for aiding and abetting Cassidy's breach of fiduciary duty (Cassidy's acceptance of the bribes alone constitutes a breach), conspiracy (to accept bribes in exchange for acquiring

1    aircraft), fraudulent concealment, violation of Cal. Bus. & Prof. Code § 17200

2    ("UCL"), and unjust enrichment.

3        The Bankruptcy Court refused to accept the FAC's allegations as true, holding

4    that it was "equally consistent" that the bribes were client entertainment. (Tr. Br. at

5    24-25.) Bombardier does not dispute that the Bankruptcy Court misapplied binding

6    Ninth Circuit authority holding that the defendant's alternative explanation must

7    make the plaintiff's explanation implausible. Instead, Bombardier mischaracterizes

8    the Bankruptcy Court's opinion, asserting that the Bankruptcy Court held that the

9    FAC did "not plausibly allege [a claim]." (Resp. at 35.) The quotation refers to the

10   *original* Complaint, not the FAC. [30-ER-041534.] The FAC does not merely

11   conclude the tickets were a bribe. It alleges that Bombardier offered to help Cassidy

12   purchase the tickets as part of a joint marketing event, Cassidy said he would cancel

13   four APAs unless he was given the tickets, and Bombardier executive Mattar simply

14   acquiesced to Cassidy's demands for a quid-pro-quo bribe. (Tr. Br. at 5); [25-ER-

15   26734-26735 ¶¶ 310-13.][1]

16       Similarly, the FAC alleges that after Cassidy threatened to cancel APAs

17   unless Bombardier gave him two Sea-Doos, Mattar told Cassidy to buy the Sea-

18   Doos, bill the cost to Jetcraft, and that Mattar and Fazal-Karim would "sort it out"

19   who would pay for the Sea-Doos amongst themselves. [25-ER-26733-26734 ¶¶ 305-

---

[1] The Trustee's Opening Brief inadvertently cited to the redacted FAC. This reply cites the unredacted FAC. The Trustee will file a notice with corrected citations to the unredacted FAC for the Opening Brief.

1    09; 25-ER-26735-26736 ¶¶ 315-20; 25-ER-26738-26740 ¶¶ 326-40.] While Sea-

2    Doos may be entertaining, they are not client entertainment.

3        Bombardier does not cite a single case granting a motion to dismiss on similar

4    allegations. (Resp. at 34.) Their *only* case was decided at summary judgment.

5    *Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp. of Del.*, 805 F. Supp.

6    1277, 1289 (D.S.C. 1992), *aff'd*, 998 F.2d 1009 (4th Cir. 1993). Two cases have

7    rejected *Lifschultz* as inapplicable on a motion to dismiss. *Am. Health Sys., Inc. v.*

8    *Visiting Nurse Ass'n of Greater Philadelphia*, 1994 WL 314313, at *15 & n.18 (E.D.

9    Pa. June 29, 1994); *Mid Atl. Telecom, Inc. v. Long Distance Servs., Inc.*, 18 F.3d

10   260, 264 n.8 (4th Cir. 1994).

11       *Lifschultz* is also distinguishable. The plaintiff did not allege a quid pro quo.

12   Even considered cumulatively and accounting for inflation, the client entertainment

13   was nowhere near $43,890. Most significantly, the plaintiff "engaged in the same

14   type of conduct in regards to entertainment and gifts which it asserts is bribery." *Id.*

15   at 1289.

16       Bombardier also contends that the Bankruptcy Court was correct because "not

17   a single decision" has upheld such allegations as commercial bribery. (Resp. at 34.)

18   Courts in criminal and civil cases routinely recognize that tickets and similar gifts

19   can be bribes. *U.S. v. Pawlowski*, 351 F. Supp. 3d 840, 856-57 (E.D. Penn. 2018);

20   *U.S. v. Pomrenke*, 198 F. Supp. 3d 648, 695-96 (W.D. Va. 2016); *U.S. v. Ring*, 628

21   F. Supp. 2d 195, 205 (D.D.C. 2009); *U.S. v. Sawyer*, 878 F. Supp. 279, 282 (D. Mass.

1995); *Adv. Microtherm, Inc. v. Norman Wright Mech. Equip. Corp.*, 2010 WL 11478992, at *13 (N.D. Cal. July 21, 2010); *Philip Morris, Inc. v. Grinnell Lithographic Co.*, 67 F. Supp. 2d 126, 128, 136 (E.D.N.Y. 1999). Bombardier apparently means that in-kind bribes can only create criminal liability, and then only if there are also cash payments. (Resp. at 35 n.11); [2-ER-001191-001192.] But neither the Bankruptcy Court nor Bombardier explained why the Trustee must establish a "bribery" claim, as opposed to a "garden variety of fraud" or a "breach of fiduciary duty" to recover against Bombardier for paying Cassidy bribes. *Williams Elec. Games, Inc. v. Garrity*, 366 F.3d 569, 572, 576 (7th Cir. 2004). Further, in the cases cited above with both cash and in-kind bribes, courts do not limit culpability to the cash.

## B. The FAC plausibly pleads that Bombardier's agent Fazal-Karim paid Cassidy at least $1 million in kickbacks.

In addition to direct bribes, the FAC pleads that Bombardier's agent Fazal-Karim paid Cassidy at least $1 million in kickbacks as part of the same scheme. The FAC pleads both actual and ostensible agency. It pleads actual agency because Fazal-Karim had the power to alter legal relations between Bombardier and the Debtors, Fazal-Karim acted as Bombardier's fiduciary, and Bombardier controlled Fazal-Karim's actions. (Tr. Br. at 12-14.) The FAC pleads ostensible agency because Fazal-Karim held himself out as Bombardier's exclusive representative in transactions involving Bombardier, without contradiction from Bombardier. (*Id.* at 14-17.) The Bankruptcy Court found that Fazal-Karim was Bombardier's agent

5

1  based on these allegations in the original Complaint, and the material allegations did

2  not change in the FAC. (*Id.* at 15-17.) The Bankruptcy Court erred by reversing

3  itself.

4        In reversing itself, the Bankruptcy Court ignored the overall allegations and

5  artificially divided the transactions, while disbelieving the allegations connecting the

6  transactions together and drawing inferences against the Trustee. (*Id.* at 17.) The

7  Trustee provided caselaw that a "complaint does not need to specifically allege

8  [agency] for each transaction." (*Id.*) Bombardier does not try to distinguish those

9  cases. (Resp. at 27-34.) When pleading agency, the "context is the *entire* complaint."

10  *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2010 WL 9543295, at *6 (N.D. Cal.

11  Feb. 5, 2010) (emphasis original). The court must view the allegations "as a whole,

12  and not on a piecemeal basis." *In re Transpacific Passenger Air Transp. Antitrust*

13  *Litig.*, 2011 WL 1753738, at *10 (N.D. Cal. May 9, 2011). Agency in one transaction

14  is circumstantial evidence of agency in other transactions. *Amusement Indus., Inc. v.*

15  *Stern*, 693 F. Supp. 2d 327, 346 (S.D.N.Y. 2010).

16        Instead, Bombardier cites other cases that do not support its argument. (Resp.

17  at 27-28.) The complaint in *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325,

18  1343 (11th Cir. 2017), expressly "alleged that the [purported agent] had failed to act

19  as [the principal's] agent in the" relevant transaction. The other case was decided on

20  summary judgment and thus is irrelevant. *Bd. of Managers of 411 East 53rd St.*

21  *Condo. v. Perlbinder*, 2016 WL 1597761, at *1 (N.Y. Sup. Ct. Apr. 21, 2016).

The FAC also alleges agency even when – improperly – looking at the transactions individually. The transactions for Planes 1-6 were part of a single deal simultaneously negotiated by Fazal-Karim, Bombardier executives, and Cassidy, who expressly linked those transactions at the time. (Tr. Br. at 16); [25-ER-26720-26722 ¶¶ 241-250.] The Bankruptcy Court simply rejected the Trustee's allegations, (Tr. Br. at 17-18), which was improper, and which Bombardier does not attempt to defend.

The Bankruptcy Court also reversed itself based on purportedly unambiguous agency disclaimers in the agreements between Bombardier and Fazal-Karim and the APAs between Bombardier and the Debtors. (Resp. at 29-33; Tr. Br. at 18-19.) But on a motion to dismiss, agency disclaimers do not override plausible allegations of agency. *Amusement*, 693 F. Supp. 2d at 345-46. Nor can those documents be used to draw inferences against the Trustee or decide disputed facts. *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998–99 (9th Cir. 2011). Thus in *St. Francis Holdings, LLC v. MMP Cap., Inc.*, 2022 WL 991980, at *10-11 (E.D.N.Y. Mar. 31, 2022), the court found agency sufficiently pleaded based on the actual functioning of the parties' relationship despite an unambiguous agency disclaimer. Many other cases support this point. *People v. N. Leasing Sys., Inc.*, 169 A.D.3d 527, 529 (N.Y. App. Div. 2019); *Balboa Cap. Corp. v. New Image Dental Lab'y, Inc.*, 2020 WL 4805467, at *3 (C.D. Cal. July 2, 2020). In any event, the agreements *are* ambiguous as to

1  agency. While they purport to disclaim agency, they also describe how Bombardier

2  tightly controlled Fazal-Karim. (Tr. Br. at 12-14.)

3       The Bankruptcy Court also erred by citing only cases about disputes between

4  the principal and agent, not third parties. (Tr. Br. at 19; Resp. at 32-33.) *Spinelli v.*

5  *NFL*, 96 F. Supp. 3d 81, 133 (S.D.N.Y. 2015), concerned "disputes between a

6  purported principal and agent, where the interest of third parties [like the Trustee]

7  are not in issue." *Butto v. Collecto Inc.*, 802 F. Supp. 2d 443, 446, 449 (E.D.N.Y.

8  2011), involved disclaimers in contracts between the principal and agent, not with

9  the third party, and unlike here, the agreements disavowed both agency *and control*.

10  *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 270 (S.D.N.Y.

11  2012), is about a disclaimer of fiduciary duty, not agency.

12       The Bankruptcy Court erroneously used disclaimers in the APAs to defeat

13  apparent agency. (Resp. at 30-31.)[2] Those disclaimers expressly apply only to

14  (i) whether Fazal-Karim may make "representations and warranties" for Bombardier

15  and (ii) whether Fazal-Karim may bind Bombardier to sell the aircraft. (Resp. at 31.)

16  But those are irrelevant to whether Fazal-Karim was negotiating simultaneously on

17  behalf of both Jetcraft and Bombardier, and agreeing to pay kickbacks as part of that

18  simultaneous transaction. The FAC pleads that he was. [25-ER-26719-26733

19  ¶¶ 237-304.] Bombardier's argument "presents a factual issue that cannot be

20

21  _____

[2] Bombardier does not dispute that the APAs are irrelevant to actual agency. (Resp. at 33-34.)

resolved at the pleading stage in light of other factual allegations." *Stewart v. Target Corp.*, 2013 WL 1182080, at *4 (E.D.N.Y. Mar. 20, 2013).

Bombardier raises an alternative ground that it cannot have controlled Fazal-Karim because he was selling his own inventory, in addition to Bombardier's. (Resp. at 27.) This argument was not raised below and thus waived. *Hardisty v. Moore*, 750 F. App'x 525, 528 (9th Cir. 2018). Even so, the agreements between Fazal-Karim and Bombardier required Fazal-Karim to follow Bombardier policies "in all his dealings *related to*" the transactions and to "*otherwise assist* Bombardier in sale *negotiations* with Buyer, and to perform such services *in connection* therewith as Bombardier may, from time to time, reasonably request." (Tr. Br. at 3-4, 13-14.) The FAC alleges Planes 1 and 10 were "related to" and "in connection" with sales negotiated by Fazal-Karim on behalf of Bombardier for planes directly from Bombardier. (Tr. Br. at 15-16.)

## C. The FAC plausibly pleads that Bombardier executives conspired to pay Cassidy bribes and kickbacks in exchange for planes.

In addition to direct bribes and kickbacks by Bombardier's agent, the FAC pleads that Bombardier executives entered into a conspiracy with Fazal-Karim and Cassidy at the NBAA Conference to pay Cassidy bribes and kickbacks in exchange for aircraft purchases. (Tr. Br. at 20-21.) The conspiracy included at minimum the payment of the First Kickback as part of the combined transaction for Planes 1-6 (including planes purchased directly from Bombardier). (*Id.*) The FAC supports the conspiracy allegations with contemporaneous emails in which Yu linked the

9

transactions, documents showing that the kickback was agreed to at the NBAA Conference, and a Spreadsheet referring to the Zetta planes and "Payment" between Fazal-Karim and Mattar. (*Id.*)

Bombardier argues that the Bankruptcy Court correctly dismissed the claim because it found no agency between Fazal-Karim and Bombardier. (Resp. at 40.) The conspiracy claim does not depend on agency alone. It is also based on the direct participation of Bombardier executives Mattar and Yu. (Tr. Br. at 19-20.)

Bombardier also asserts that the allegations are "conclusory" and improperly disputes the allegations. (Resp. at 41-42.) But the FAC alleges the who, what, when, and where of the agreement at the NBAA Conference. (Tr. Br. at 20-21); [25-ER-26720-26725 ¶¶ 241-70.) It also alleges improper payments between Fazal-Karim and Bombardier executive Mattar relating to Zetta aircraft transactions, documented in the Spreadsheet sent to Mattar's personal Gmail account. [25-ER-26729-26733 ¶¶ 290-304.] Bombardier has never offered a "lawful independent explanation" for the Spreadsheet, because there is none.[3] *Transpacific*, 2011 WL 1753738, at *14.

Bombardier raises several alternative grounds for affirmance. None has merit. First, Bombardier argues that conspiracy must be pleaded with Rule 9(b) specificity. (Resp. at 42 (citing *Johnson v. Mazza*, 2017 WL 663153, at *5 (C.D. Cal. Feb. 17, 2017), *aff'd*, 778 F. App'x 549 (9th Cir. 2019)).) *Johnson* does not say that

---

[3] Not least because Bombardier failed to collect Mattar's personal emails and thus likely spoliated evidence. [25-ER-26732-26733 ¶ 297-304.]

conspiracy must be pleaded with particularity; the conspiracy claim was dismissed for failure to allege an underlying tort. *Id.* at *5. Civil conspiracy need not be pleaded with particularity. *Sahebdin v. Khelawa*, 2022 WL 4451005, at *14 (E.D.N.Y. Sept. 24, 2022). That makes sense because conspiracy often must be pleaded using circumstantial evidence. The FAC pleads conspiracy with particularity anyway.

Next, Bombardier asserts that the FAC did not allege that Bombardier "interacted with" Fazal-Karim's entities. (Resp. at 42.) But the FAC alleges that Bombardier interacted with Fazal-Karim's entities, and at a minimum that Bombardier interacted with Fazal-Karim while he was negotiating the package deals on behalf of the entities. [25-ER-26676 ¶ 7.]

Finally, Bombardier contends that the FAC fails to allege an overt act *by Bombardier*. (Resp. at 42.) Conspiracy only requires that "one or more" co-conspirator "committed an overt act," not each of them. *AREI II Cases*, 216 Cal. App. 4th 1004, 1022, 1024 (2013). And Bombardier's direct bribes were overt acts.

## D. The FAC plausibly pleads aiding and abetting breach of fiduciary duty.

Accepting undisclosed kickbacks and quid pro quo bribes breached Cassidy's fiduciary duty to Zetta, regardless of his actions or omissions in exchange for those bribes. (Tr. Br. at 22.) Yet the Bankruptcy Court dismissed the claim because it found that Cassidy had no authority to terminate the APAs on his own and no fiduciary duty to do so. (Resp. at 35.) Whether Cassidy alone could have terminated the APAs is irrelevant because the quid of accepting bribes *is* a breach. (Tr. Br. at

22.)[4] The Bankruptcy Court cited nothing that would require the Trustee to show that the quo is an *independent* breach.

Even so, the decision to comply with contractual obligations rather than terminate an agreement can breach a fiduciary duty. *In re Toys "R" US, Inc.*, 642 B.R. 727, 748–50 (Bankr. E.D. Va. 2022) (denying summary judgment). Even when a corporation is bound by "valid contractual obligations," directors have a fiduciary duty to consider "efficient breach" – regardless whether exercising that duty is protected by the business judgment rule. *Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at *24 (Del. Ch. Apr. 14, 2017); *In re Tyson Foods, Inc.*, 919 A.2d 563, 601 n.109 (Del. Ch. 2007).

Further, the APAs were tainted by fraud from the beginning. The Board's approval of the APAs was tainted because Cassidy never told the Board he was getting bribes and kickbacks. A director must disclose any material conflict. *City of Fort Myers Gen. Employees' Pension Fund v. Haley*, 235 A.3d 702, 719 (Del. 2020).

Bombardier's three other alternative grounds are meritless. First, Bombardier argues that the FAC fails to allege that Bombardier knew of its own bribes. (Resp. at 36.) The FAC alleges that Bombardier executive Mattar was directly involved in

---

[4] This Court analyzed similar allegations for the Trustee's motion for sanctions in *Seagrim v. Cassidy*, No. 2:17-cv-06648-JAK, Dkt. 134 (Sep. 1, 2021). Properly taking the allegations as true (including allegations that Bombardier bribed Cassidy), the Court held that the Trustee was entitled to judgment against Cassidy on similar claims, including fraudulent concealment and breach of fiduciary duty, and awarded a $12.7 million judgment.

the agreement to pay the kickbacks and both direct bribes. (Tr. Br. at 22.) Bombardier concedes the point by making an unsupported argument. (Resp. at 36); *U.S. v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010).

Second, Bombardier argues that the FAC did not plead causation. (Resp. at 36-37.) Pleading a bribe alone shows causation, even if there is no harm beyond the bribe itself. (Tr. Br. at 23-24.) The Trustee can also show causation based on the damage to the Debtors or the profit to Bombardier. *Williams*, 366 F.3d at 576.

Third, Bombardier asserts that the FAC is implausible because Cassidy would not have destroyed his company for sports tickets. (Resp. at 37.) Bombardier asks this Court to ignore the FAC. "Cassidy knew from the beginning that his schemes were unsustainable and that the Debtors were doomed to fail, yet he acted to line his own pockets." [25-ER-26675-26676 ¶ 5.] The tickets were only part of the scheme. Cassidy pocketed at least $1 million in kickbacks and bribes and stole millions more from aircraft closing proceeds. Far from implausible, Cassidy's actions were typical of fraudsters who steal everything they can before they leave others holding the bag. (Tr. Br. at 27.)

Bombardier makes the same arguments for the Sea-Doos, and they fail for the same reasons. (Resp. at 37-40.)

**E. The FAC plausibly pleads fraudulent misrepresentation.**

The Bankruptcy Court dismissed the fraudulent misrepresentation claim solely on agency. It should be reversed. Bombardier argues that the APAs involved

1   Jetcraft (not Fazal-Karim). (Resp. at 44.) That is a distinction without a difference –

2   Fazal-Karim negotiated the APAs on both Jetcraft and Bombardier's behalf.

3   Bombardier also argues that the Debtors made the alleged misrepresentation. (Resp.

4   at 44.) The FAC alleges that the misrepresentation was drafted by Jetcraft, not the

5   Debtors. [25-ER-26723 ¶ 260; 25-ER-26790 ¶¶ 607-08.]

6   **F.  The FAC plausibly pleads fraudulent concealment.**

7   The Bankruptcy Court erred by holding that the FAC needed to allege not

8   only that the disinterested directors did not know about the bribes, but also that they

9   were not discoverable through ordinary oversight. (Tr. Br. at 28-29.) The

10  Bankruptcy Court provided no support for this additional requirement, and

11  Bombardier does not defend that failure. *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th

12  Cir. 2009).

13  Instead, Bombardier asserts that it had no duty to disclose because the bribes

14  were not peculiarly within its knowledge. (Resp. at 45.) Bombardier misstates the

15  FAC and draws inferences against the Trustee. Bombardier asserts that the F1 tickets

16  were provided to the "Zetta team," and contends that no information about the Sea-

17  Doos was peculiarly within Bombardier's knowledge. These factual disputes are not

18  only inappropriate, but false. The FAC quotes an email in which Cassidy demanded

19  the tickets from Bombardier for personal use. [25-ER-26734-26735 ¶¶ 310-13.] The

20  "Zetta team" reference came from Mattar to cover up the bribe. [25-ER-26735

21  ¶ 313.] In any event, the FAC repeatedly alleges that Cassidy "received the bribes

14

directly" and that they were actively concealed from the other directors. [25-ER-26734 ¶ 306; 25-ER-26765 ¶ 448; 25-ER-26788 ¶ 593; 25-ER-26791-26792 ¶ 618; 25-ER-26794 ¶ 634.]

**G. The FAC plausibly pleads a UCL claim.**

The Bankruptcy Court dismissed the UCL claim based on its erroneous determination that New York law applied.[5] The Bankruptcy Court erred for three reasons.

**1. Tort claims are decided according to the law of the forum state.**

The Bankruptcy Court erred by rejecting binding Ninth Circuit law that tort claims are not governed by a contractual choice-of-law provision. (Tr. Br. at 31-32.) Bombardier contends that the cases cited by the Trustee do not apply federal choice-of-law rules. (Resp. at 25-26.) Bombardier's sole authority is an unpublished decision applying maritime law that has never been cited again by the Ninth Circuit. *Odin Shipping Ltd. v. Drive Ocean V MV*, 221 F.3d 1348 (9th Cir. 2000).

**2. The tort claims fall outside the choice-of-law provision.**

The Bankruptcy Court erred by holding that the tort claims fall within the scope of the choice-of-law provision. (Tr. Br. at 32.) Even if true, some of the wrongful conduct *predated* the contractual relationship. (*Id.*); [25-ER-26722 ¶ 251.]

---

[5] This is the only claim where choice of law was germane, (Tr. Br. at 30-31), though the Bankruptcy Court later used this choice-of-law decision to deny the Trustee's Bankruptcy Rule 9019 motion to approve a $9.5 million settlement with Fazal-Karim and his entities. *In re Zetta Jet*, No. 2:17-bk-21386-SK, Dkt. 2082 at 72-80 (transcript) and 2084 (order).

1  Bombardier simply disputes the FAC in a footnote. (Resp. at 20 n.5.) That is not

2  enough. Bombardier does not respond to the Trustee's argument that Zetta USA was

3  not a party to the contracts, and thus waives that issue. (Tr. Br. at 32); *Clem*, 566

4  F.3d at 1182.

5  **3.  The choice-of-law provision is unenforceable.**

6  Finally, the Bankruptcy Court erred because the choice-of-law provision is

7  unenforceable under Restatement § 187(2). (Tr. Br. at 32-33.) Bombardier asserts

8  that Restatement § 187(2) does not apply under federal common law. (Resp. at 23.)

9  The Ninth Circuit applies Restatement § 187(2) under federal common law. *Flores*

10 *v. Am. Seafoods Co.*, 335 F.3d 904, 916-17 (9th Cir. 2003); *Doe 1 v. AOL LLC*, 552

11 F.3d 1077, 1087 n.1 (9th Cir. 2009) (Bea, J., concurring); *Boeing Co. v. KB*

12 *Yuzhnoye*, 2018 WL 735971, at *2-4 (C.D. Cal. Feb. 6, 2018), *aff'd*, 791 F. App'x

13 650 (9th Cir. 2019).

14 The Bankruptcy Court erred by finding a "reasonable basis" under

15 Restatement § 187(2). (Tr. Br. at 33.) The Bankruptcy Court asserted that the

16 reasonable basis was that "parties to international aircraft transactions routinely

17 select New York law." (Resp. at 23.) Bombardier did not assert that below, and even

18 now does not assert that *Bombardier itself* routinely selects New York law. (Resp.

19 at 23; Tr. Br. at 36.) Nor could it, because Bombardier also used non-New York

20 choice-of-law clauses in these transactions. (Tr. Br. at 34.)

21

The Bankruptcy Court next asserted that Bombardier had an interest in having "one body of law" govern its contracts with Zetta. (Resp. at 23.) The caselaw requires more than an interest in one body of law, whether at an industry or individual level. In *KST Data, Inc. v. DXC Tech.*, 2018 WL 5734227, at *5 (C.D. Cal. Mar. 26, 2018), *aff'd in part*, 836 F. App'x 484 (9th Cir. 2020), the court held that an interest in one body of law "only addresses whether a choice-of-law clause **itself** is reasonable, not whether the choice of New York is reasonable." *Id.* (emphasis original). Bombardier does not assert "a particular familiarity with New York law." *Id.* In fact, Bombardier has no "identifiable connections to New York," unlike in *King v. Bumble Trading, Inc.*, 393 F. Supp. 3d 856, 865 (N.D. Cal. 2019).

Finally, the Bankruptcy Court erred by misapplying the test for whether New York law would violate California's fundamental policy and whether California has a materially greater interest than New York. (Tr. Br. at 36-38.) In response, Bombardier parrots the Bankruptcy Court's incorrect holdings that none of the harm occurred in California. (Resp. at 24.) But the FAC pleads that the wrongful acts and misconduct crippled Zetta USA, a California company, and that the Debtors' operations were based in California. (Tr. Br. at 38.) Bombardier also has no response for the Bankruptcy Court's failure to address California's fundamental policy against shielding from liability third parties (like Bombardier) who conspire with an employee. (*Id.* at 37-38.)

1      Bombardier's argument fails for the additional reason that federal common

2   law applies only when "necessary to protect uniquely federal interests." *Cal. Dep't*

3   *of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1089 (9th Cir. 2022)

4   (quoting *Cassirer v. Thyssen-Bornemisza Collection Found.*, 142 S.Ct. 1502, 1509

5   (2022)) (Tr. Br. at 33 n.5). Bombardier's response does not explain what "uniquely

6   federal interests" are implicated by state-law claims in an adversary proceeding or

7   why this principle does not apply to choice-of-law provisions. (Resp. at 21 n.7.)

8   Bombardier also argues that this rule has "been limited to 'non-federal claims against

9   a foreign state'" (*Id.*) That "limitation" cannot be squared with *Cal. Dep't*, which

10  did not involve a foreign state.

11     Bombardier's other UCL arguments – that criminal commercial bribes cannot

12  support a UCL claim, and that the injury did not take place in California (Resp. at

13  43-44) – fail for the reasons discussed above and in the Trustee's opening brief. (Tr.

14  Br. at 29-30.)

15  **H. In pari delicto does not bar the tort claims.**

16     Bombardier asserts another alternative ground – that under New York law, in

17  pari delicto bars the tort claims. (Resp. at 48-51.) The Bankruptcy Court rejected

18  Bombardier's in pari delicto affirmative defense on the first Complaint and declined

19  to address it on the FAC. [30-ER-41558.] This Court need not consider in pari delicto

20  because it was "not passed upon below," it is not a "purely legal issue," and the

21  record is not "fully developed." *Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022). If it

1  does, Bombardier cannot meet its burden to show that the affirmative defense is

2  "plain on the face of the pleadings." *In re Pitt Penn Holding Co.*, 484 B.R. 25, 38

3  (Bankr. D. Del. 2012).

4        Bombardier's argument that the Trustee may not address in pari delicto is

5  frivolous. (Resp. at 49 n.14.) An appellant is "not required to address in their

6  Opening Brief an alternative ground for affirmance not addressed by the" lower

7  court. *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 881 (9th Cir. 2022);

8  *Rodriguez v. Hayes*, 591 F.3d 1105, 1118 n.6 (9th Cir. 2010). In any event, an

9  appellant may reply when the issue "is raised in the appellee's brief." *Rosenbaum v.*

10  *City & Cnty. of San Francisco*, 484 F.3d 1142, 1150 n.3 (9th Cir. 2007).

11  Bombardier's sole case supports the Trustee because the argument was not raised

12  below. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (Resp. at 49 n.14).

13  Bombardier concedes that "in pari delicto was fully briefed." (Resp. at 49.)

14  Bombardier's frivolous waiver arguments should be rejected for all similar

15  "alternative grounds."

16        Bombardier's argument also fails on the substance. In pari delicto bars claims

17  where the parties are "equally culpable." *Kirschner v. KPMG LLP*, 15 N.Y.3d 446,

18  464 (2010). Bombardier must show (1) the agent's acts are imputed to the principal,

19  (2) the adverse interest exception does not apply, and (3) the sole actor exception

20  applies. *Pitt Penn*, 484 B.R. at 40-41.

21

First, Cassidy's actions are not imputed to the Debtors for the tort claims. An agent's actions are not imputed when "the corporation is actually the victim of a scheme undertaken by the agent to benefit himself or a third party." *Kirschner*, 15 N.Y.3d at 467; *In re Acrex, Inc.*, 2014 WL 3586533, at *2 (Bankr. S.D.N.Y. July 21, 2014).

Second, the adverse interest exception is not "conclusively foreclose[d]." *Schwartz v. Leaf, Salzman, Manganelli, Pfiel, & Tendler, LLP*, 123 A.D.3d 901, 903 (N.Y. App. Div. 2014). Bombardier argues that under New York law, the adverse interest exception does not apply because Cassidy had not "totally abandoned" the Debtors because the Debtors got (overpriced) planes in return for the bribes. (Resp. at 48-51.)[6] New York courts use the term "total abandonment," but that does not mean *any* purported "benefit" dooms the adverse interest exception. *In re Platinum-Beechwood Litig.*, 2019 WL 2569653, at *13 (S.D.N.Y. June 21, 2019) (holding that there was no benefit despite plaintiff receiving $45 million in cash). "That is not the law of New York, or any other sensible jurisdiction." *In re Refco Sec. Litig.*, 779 F. Supp. 2d 372, 376 (S.D.N.Y. 2011), *aff'd*, 486 F. App'x 153 (2d Cir. 2012). Cassidy's embezzlement did not benefit the Debtors. [25-ER-26673-26674 ¶ 1; 25-ER-26675-26676 ¶ 5; 25-ER-26677 ¶ 9; 25-ER-26691-266944 ¶¶ 91, 95, 99, 103; 25-ER-26713-26714 ¶ 204; 25-ER-26715-26716 ¶¶ 217-19.] Nor did Bombardiers'

---

[6] Bombardier effectively concedes that under California law the adverse interest exception would apply, so in pari delicto would not bar the Trustee's claims. *In re Cal. TD Invs. LLC,* 489 B.R. 124, 130 (Bankr. C.D. Cal. 2013).

bribes. [25 ER-26676 ¶¶ 6-7; 25-ER-26678 ¶ 12; 25-ER-26691-26694 ¶¶ 91, 95, 98, 102; 25-ER-26719-26733 ¶¶ 237-304.]

Bombardier does not argue the "sole actor" exception. *In re 1031 Tax Grp., LLC*, 420 B.R. 178, 202-07 (Bankr. S.D.N.Y. 2009). Bombardier thus waived it. *Hardisty*, 750 F. App'x at 528. In any event, sole actor does not apply because innocent insiders could have and did stop the fraud. [25-ER-26745 ¶¶ 361-63.]

## I.  The FAC pleads unjust enrichment.

Contrary to the Bankruptcy Court and Bombardier, California recognizes a standalone claim for unjust enrichment. (Resp. at 46.) The Trustee recognizes that this Court rejected an unjust enrichment claim in *Seagrim v. Cassidy*, No. 2:17-cv-06648-JAK, Dkt. 134, at 11-12 (Sep. 1, 2021). Respectfully, the Court appears to have relied on outdated precedent. The "California Supreme Court has clarified California law, allowing an independent claim for unjust enrichment to proceed . . . ." *Bruton v. Gerber Prods. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (citing *Hartford Cas. Inc. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 1000 (2015)); (Tr. Br. at 38-39).

Bombardier raises an alternative ground that unjust enrichment may only proceed in the absence of an express contract between the parties. (Resp. at 46-47.) *Hartford* rejected that argument. *Hartford*, 61 Cal. 4th at 1000-01. The Debtors did not accept a bargain binding them to acquire planes based on bribery.

Bombardier also raises the alternative grounds that it was neither *unjustly* enriched nor *enriched* at all. (Resp. at 47-48.) Bombardier's argument ignores that the FAC includes *expert analysis* of overpricing. [25-ER-26740-26744 ¶¶ 341-60.] The FAC alleges unjust enrichment on that basis alone. Even without that, "benefit" means not only profit, but also revenue (i.e., the sales themselves), as well as saving the defendant "from expense or loss." *Master Replicas, Inc. v. Levitation Arts, Inc.*, 2008 WL 11338694, at *3-4 (C.D. Cal. May 28, 2008).

The Trustee does not lack standing based on a purported assignment to CALI. (Resp. at 48.) That argument that was not raised below, is entirely unsupported by caselaw, and thus is waived. *Hardisty*, 750 F. App'x at 528; *Graf*, 610 F.3d at 1166.

**II. The Bankruptcy Court erred by dismissing the bankruptcy claims.**

**A. Sections 547 and 548 apply extraterritorially.**

**1. Supreme Court precedent establishes that §§ 547 and 548 apply extraterritorially.**

Under *Begier v. IRS*, 496 U.S. 53, 58-59 & n.3 (1990), "interest of the debtor in property" under § 547 (and § 548, which uses the same language) is defined by the "interests of the debtor in property" under § 541(a), which includes property "wherever located," i.e., extraterritorially.[7] (Tr. Br. at 40-41.) Bombardier does not address *Begier*'s reasoning. (Resp. at 62 n.17.) But "not only the result but also those portions of the opinion necessary to that result" are binding. *Seminole Tribe of Fla.*

---

[7] This is consistent with the statutory structure of § 541(b) and (c)(2), which exclude from § 541(a)(1) certain types of property transferred prepetition.

*v. Florida*, 517 U.S. 44, 67 (1996). Courts must use § 541(a) to define an interest of a debtor in property under the avoidance statutes because that reasoning was necessary to the result in *Begier*. *Id.* The Bankruptcy Court refused to apply this extraterritorial definition to §§ 547 and 548, and therefore should be reversed. *In re French*, 440 F.3d 145 (4th Cir. 2006).

### 2.  Bombardier's reliance on *Midland* is misplaced.

Bombardier's statutory context argument concerning § 541(a)(3) is based on *In re Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006), which did not address *Begier*, and thus failed to follow binding Supreme Court precedent. Moreover, *Midland* relied on automatic stay cases.[8] Those are inapposite because they concern injunctive provisions of § 362 that protect the estate from third parties "as of commencement of case," not the avoidance of the debtor's prepetition depletion of the estate under § 541(a)(1). *Midland*, with its focus on § 541(a)(3), is irrelevant.

### B. Transfers to Bombardier's U.S. bank accounts are avoidable under §§ 547 and 548.

### 1.  Transfers into the U.S. are domestic conduct.

Bombardier asserts that the Bankruptcy Court "joined the majority" of authorities holding that foreign-to-domestic transfers are extraterritorial and outside of §§ 547 and 548's reach. Bombardier's "majority" does not exist (nor could it

---

[8] *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992).

under *Begier*). None of those authorities hold that a foreign-to-domestic transfer is extraterritorial. Rather, they dealt with transfers entirely outside the U.S. or routed through the U.S. to another foreign party. [Resp. at 47; Tr. Br. at 45-46.] The Bankruptcy Court is the *first court ever* to hold that a foreign-to-domestic transfer is *per se* extraterritorial. The Bankruptcy Court's novel rule has no legal basis.

Just like the pass is not complete until the receiver catches the football, no transfer exists under the Bankruptcy Code until a transferee receives "dominion and control" over property. *In re Walldesign, Inc.*, 872 F.3d 954, 963-64 (9th Cir. 2017); *In re Arcapita Bank B.S.C.(c)*, 575 B.R. 229, 236, 245 (Bankr. S.D.N.Y. 2017). Until a recipient obtains dominion and control, the debtor has not "dispos[ed] of" or "part[ed] with" property of the estate. § 101(54). Put otherwise, a transfer cannot occur without property changing hands.

The Bankruptcy Court relied solely on language from *In re Picard*, 917 F.3d 85, 99 n.9 (2d Cir. 2019), that the focus of the avoidance statutes is on the "initial transfer" that depletes the estate and not receipt. The Bankruptcy Court then concluded because Zetta sent funds from Singapore, the focus of the avoidance statutes did not cover this extraterritorial act.

This was error. As stated above, an "initial transfer" requires both the sender's transmittal of funds and the *initial transferee's* exercise of dominion and control over the funds. *Picard*'s reference to receipt related to a *subsequent transferee's* overseas receipt of funds from the foreign initial transferee. Thus, *Picard* never

addressed, much less negated, the relevancy of an *initial transferee's* receipt. It dealt with a *subsequent transferee's* receipt. Because *Picard* was not faced an initial transferee's receipt in the U.S., it has no precedential weight on whether an initial transferee's receipt in the U.S. of funds originating outside the U.S. is within the focus of the avoidance statutes. *Id.*; (Tr. Br. at 46-47.) The only case dealing with receipt in the U.S. held that it was domestic conduct and the transfer could be avoided. *Arcapita*, 575 B.R. at 245. Bombardier does not address *U.S. v. Ho*, 984 F.3d 191, 205 (2d Cir. 2020), or *U.S. v. Daccarett*, 6 F.3d 37, 54 (2d. Cir. 1993), which held that transfers into the U.S. are domestic conduct. (Resp. at 56.) Bombardier has waived any argument on this point. *Clem*, 566 F.3d at 1182.

Here, Zetta PTE transmitted funds to Bombardier in the U.S. As a result, Bombardier took "dominion and control" over the funds in the U.S. and the transfer occurred in the U.S. *Walldesign*, 872 F.3d at 963-64; § 101(54). That "transfer" is domestic for the purposes of the avoidance provisions. *Arcapita*, 575 B.R. at 245.

Bombardier also does not respond to the Trustee's argument that the "obligations incurred" in the U.S. were domestic conduct subject to avoidance and recovery. (Tr. Br. at 47.) Bombardier has therefore waived any arguments to the contrary. *Clem*, 566 F.3d at 1182.

### 2. Initial transfers from Zetta USA to Zetta Singapore provide an independent basis to avoid subsequent transfers to Bombardier.

Zetta USA was the operating, revenue generating entity. [25-ER-026688 ¶ 82; 25-ER-026692 ¶ 94; 25-ER-026696 ¶ 112.] The transfers of cash from Zetta USA in

California to Zetta PTE in Singapore are initial transfers even under Bombardier's erroneous reading of *Picard*. Any subsequent transfers thus can be recovered under § 550. (Tr. Br. at 44-45.)

Bombardier argues that these allegations are not plausible because the Trustee prepared an exhibit that summarizes the subsequent transfers from Singapore to Texas ("Schedule 4"). Resp. at 58 (citing *Cisco Sys., Inc. v. Capella Photonics, Inc.*, 2020 WL 4923697, at *3 (N.D. Cal. Aug. 21, 2020)). *Cisco*, however, concerns the contradiction between an allegation and a "written instrument." *Id.* Schedule 4 is not a "written instrument" and it does not contradict the allegation that funds were initially transferred from Zetta USA to Zetta PTE and then on to Texas. *Scanlan v. Sisto*, 2012 WL 1130668, at *2 (E.D. Cal. Mar. 28, 2012).

### 3. The Trustee has not waived his in-rem argument.

An appellate court can consider an issue where "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988-89 (9th Cir. 2017). Bombardier does not dispute that (i) it filed a proof of claim in the bankruptcy cases below; (ii) the record is fully developed; or (iii) it would not be prejudiced in any manner by this Court considering the argument. (Resp. at 58.) In any event, Bombardier raised the issue on the merits, so this Court should consider it. *Mashiri*, 845 F.3d at 989; *Rosenbaum*, 484 F.3d at 1150 n.3.

26

Bombardier does not challenge the Trustee's authority showing that, by filing a proof of claim, Bombardier submitted to having foreign conduct that substantially impacts the estate regulated by the bankruptcy court. "[T]he presumption against extraterritoriality is not applicable when the regulated conduct is intended to, and results in, substantial effects within the United States." *In re Simon*, 153 F.3d 991, 996 (9th Cir. 1998). Bombardier is bound by that law. *Seminole Tribe*, 517 U.S. at 67.

**C. Bombardier's other waiver arguments fail.**

Bombardier erroneously argues that the Trustee has waived any arguments relating to the Bankruptcy Court's order dismissing the original Complaint. First, an appellant need not address grounds not raised by the trial court, *Sabra*, 44 F.4th at 881–82, *Rodriguez*, 591 F.3d at 1118 n.6, and an appellant may reply to any issue "raised in the appellee's brief." *Rosenbaum*, 484 F.3d at 1150 n.3.

Second, the FAC superseded the original Complaint. "An amended complaint supersedes the original complaint and renders it without legal effect." *Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols.*, 25 F.4th 763, 765-66 (9th Cir. 2022). Whatever insufficiencies the Bankruptcy Court found in the original Complaint, they are neither factually nor legally relevant to the FAC and cannot serve as an alternative basis for affirmance. *Id.* None of Bombardier's authority concerns an appeal involving multiple dismissal orders and a superseded complaint. (Resp. at 62-63); *Martinez-Serrano v. INS*, 94 F.3d 1256, 1260 (9th Cir. 1996); *Smith v. Marsh*,

194 F.3d 1045 (9th Cir. 1999); *Digit. Ally, Inc. v. Util. Assocs.*, 882 F.3d 974, 977 (10th Cir. 2018); *Williams v. Leach*, 938 F.2d 769, 772 (7th Cir. 1991).

**D. The FAC plausibly pleads the bankruptcy counts.**

    **1. None of the purportedly indispensable parties requested or needed to be joined.**

Bombardier argues that CALI and Glove Assets are indispensable parties to Counts 14-15 and 31-32. (Resp. at 64.) Those counts seek relief only against Bombardier and those parties expressly disclaimed interest in the proceeding. [25-ER-026803-10;17-ER-014254; 17-ER-015254; 4-ER-003176 at 22-23.] Failure to join those parties cannot be a basis for dismissal because (i) because nothing on the face of the FAC is an obvious bar to relief, *CFTC v. Monex Credit Co.*, 931 F.3d 966, 972-73 (9th Cir. 2019); and (ii) the absent parties were aware of the action and chose not to claim an interest. *U.S. v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1992). The cases Bombardier relies on – *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1082 (9th Cir. 2010), and *In re Lexington Healthcare Grp., Inc.*, 316 B.R. 658, 662 (Bankr. D. Del. 2004) – are irrelevant because they concerned direct harm to nonparties' *current* rights.

The Bankruptcy Court's "finding" that recovery of funds from Bombardier would harm CAVIC's rights was conclusory and without basis in the record. More importantly, the Bankruptcy Court later reversed this "finding" when it dismissed the recharacterization count (Count I in *CAVIC*) because "there does not appear to be any actual antagonistic assertion of rights between the Trustee and CAVIC."

[*King v. CAVIC*, No. 2:19-ap-01147-SK, Dkt. 377 at 12.] CAVIC cannot be indispensable if an adverse ruling would not impact its rights.

### 2. The FAC plausibly pleads constructive fraudulent transfer claims.

#### a. Rule 8 applies to constructive fraudulent transfer claims.

Bombardier asserts that Rule 9(b) applies to constructive fraudulent transfer claims. (Resp. at 66.) Its caselaw states the opposite. *Screen Capital Intern. Corp. v. Library Asset Acquisition Co., Ltd.*, 510 B.R. 248, 257 (C.D. Cal. 2014); *Sunnyside Development Co. LLC v. Cambridge Display Technology Ltd.*, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008).

#### b. The Debtors transferred an interest in property.

Bombardier argues the Debtors lacked a property interest in the loan proceeds because the leases cannot be recharacterized as disguised financings under the allegedly governing law (English for Planes 2-5, Singapore for Plane 6).[9] (Resp. at 67.) First, neither English nor Singapore law applies because the FAC alleges that Bombardier engaged in fraudulent conduct. The Trustee thus is not bound by the Debtors' prepetition choice-of-law clauses. *In re Morse Tool, Inc.*, 108 B.R. 384, 386 (Bankr. D. Mass. 1989); *In re EPD Inv. Co.*, 2014 WL 12597148, at *4 (C.D.

---

[9] It is undisputed the Debtors transferred nearly $80 million in cash to Bombardier. [25-ER-026694-95 ¶¶ 106-09; 25-ER-026703-04 ¶¶ 143, 152-53; 25-ER-026801-02 ¶¶ 686, 691, 698; 25-ER-026803-06 ¶¶ 703, 712-20, 725; 25-ER-026808-10 ¶¶ 736-44, 749, 753; 25-ER-026812-13 ¶¶ 760, 764, 771.] Even if this Court holds that the Trustee cannot recover on the loan proceeds, he can still recover these direct cash payments.

Ca. Aug. 29, 2014), *aff'd*, 821 F.3d 1146 (9th Cir. 2016). In addition, English law does not apply to Planes 2-5 because it is displaced under the Restatement (Second) of Conflict of Laws and California Commercial Code ("CCC") § 1301. Restatement § 6(1) states that a court must follow a statutory directive of its own state on choice of law. Under the CCC and "reasonable relationship" test, a party cannot contract out of local law if the transaction involves disguised financings because the transaction must be made in good faith and not disguise the transaction's character. CCC Division 2; CCC Division 10; CCC § 1301(a); UCC §1-301, cmt. 1. The drafters of the UCC (the basis for the CCC) designed this test to prevent purchasers engaged in fraud from shielding themselves with choice-of-law clauses. 1 Hawkland UCC Series §1-301:1.

Second, both English and Singapore law allow recharacterization. Under English law, if the document's "terms indicate that its legal character is not that ascribed to by the parties – as where a transaction described as a lease is in fact a conditional sale – the courts will disregard the label attached by the parties and look at the legal substance." [30-ER-038512, 30-ER-038515.] Similarly, under Singapore law, the decision that Bombardier relies upon – *Thai Chee Ken v. Banque Paribas* [1993] 2 SLR 609 – states that "if it can be shown by parol evidence that both parties to a document adopted the form they did as a disguise, then their true intent and not the form will prevail." *Id.* at ¶¶ 12-13; [30-ER-038820-038824.] Here, the FAC

1    alleges that the Leases were not intended to be true leases and were instead disguised

2    financings, so recharacterization is plausible under both English and Singapore law.

3              **c.  The FAC pleads lack of reasonably equivalent value.**

4              Bombardier mischaracterizes the Trustee's claim as asserting that fair value

5    was not obtained because the aircraft ultimately failed to produce sufficient income.

6    *Id*. But the Trustee argued the Planes were overvalued *at the time of the transfer*

7    based on the expected *future* cash flows the Debtors would generate from operations.

8    [25-ER-026741 ¶ 345.] This is an accepted valuation method. *In re Silicon Valley*

9    *Telecon Exch., LLC*, 315 B.R. 750, 752 (B.A.P. 9th Cir. 2004); *U.S. v. 191.07 Acres*,

10   482 F.3d 1132, 1137 (9th Cir. 2007). Bombardier cites no law that requires the

11   Trustee to plead that aircraft were available at lower prices, nor would that

12   requirement make sense on a motion to dismiss. (Resp. at 68.) Here, the FAC pleads

13   *expert analysis* showing that the planes were overvalued compared to the market.

14   [25-ER-026740-45.] That pleads a plausible claim for lack of reasonably equivalent

15   value under any pleading standard.

16             Bombardier is also incorrect that the pricing allegations in the FAC were

17   contradictory. (Resp. at 68.) The alleged "contradiction" is between the fair market

18   value and the inflated list price used to facilitate Cassidy's fraudulent business plan,

19   tainted by kickbacks. [25-ER-026741 ¶ 344.] Far from a contradiction, it proves the

20   Trustee's point.

21

### 3. The FAC plausibly pleads actual fraudulent transfer claims.

#### a. The FAC pleads the existence of a Ponzi-like scheme.

The FAC alleges all elements of actual fraudulent transfer. [25-ER-206708 ¶ 174; 25-ER-026756-61 ¶¶ 407-30.] Bombardier argues, without supporting authority, that the FAC fails to allege a plausible Ponzi-like scheme because (i) there was only one equity investor in the scheme and (ii) proceeds were used to purchase aircraft for "real business purposes." (Resp. at 70.) Bombardier waived these arguments by failing to cite authority in support. *Paeste v. Gov't of Guam*, 624 F. App'x 488, 492 (9th Cir. 2015).

Still, on the former, a Ponzi scheme can be based on lender funds, just as on investor funds. *In re LLS Am.,* 2013 WL 3305393, at *3, 6, 10 (Bankr. E.D. Wash. July 1, 2013). Here, the FAC alleges that Cassidy induced new funds from financiers to pay off equity and used equity funds to pay off financiers. [25-ER-026708 ¶ 174; 25-ER-026758-59 ¶¶ 412-13, 417.]

On the latter, all Ponzi schemes are founded on "some legitimate business enterprise." *LLS Am.*, 2013 WL 3305393 at *8. The FAC alleges that of the $80 million in proceeds from refinancing Planes 6 and 7, Cassidy stole almost $5 million and paid Li $55 million (generating a 33% return for Li in less than one year). [25-ER-026713 ¶¶ 202-04.] That left only 22.5% for "legitimate" business purposes, well under the 30% amount from *LLS Am.* 2013 WL 3305393, at *9. The FAC also shows the aircraft purchases had no rational business purpose – the Debtors could

not afford to service fraudulently inflated loans based on the charter revenue they could generate at the time of the purchases. [25-ER-026762 ¶ 432.]

### b. The FAC pleads actual fraudulent intent under the "natural consequences" and "substantial certainty" tests.

Under the "natural consequences" test, a "transfer may be made with fraudulent intent even though the debtor did not intend to harm creditors but knew that by entering the transaction, creditors would inevitably be hindered, delayed or defrauded." *ASARCO LLC v. Am. Mining Corp.*, 396 B.R. 278, 386-87 (S.D. Tex. 2008); *In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660, 667 (7th Cir. 2013); *U.S. v. Tabor Ct. Realty Corp.*, 803 F.2d 1288, 1305 (3d. Cir. 1986); *In re Lyondell Chem. Co.*, 554 B.R. 635, 651 n.17 (S.D.N.Y. 2016); *In re Syntax-Brillian Corp.*, 2016 WL 1165634, at *6 (Bankr. D. Del. Feb. 8, 2016). Although the Ninth Circuit has not addressed the "natural consequences" test, it has held that "knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent." *In re Agri. Res. Tech. Grp.*, 916 F.2d 528, 535 (9th Cir. 1990). Fraudulent intent has also been found when a person "believes that the consequences are substantially certain to result from [his act]." *Lyondell*, 554 B.R. at 651 (cleaned up); *In re Indep. Clearing House Co.*, 77 B.R. 843, 860 (D. Utah 1987).

Bombardier baldly asserts that the FAC does not support a plausible inference that Cassidy knew the Debtors would never be profitable under either test. (Resp. at 71-72.) But merely declaring implausibility does not carry Bombardier's burden. *Ass'n for L.A. Deputy Sheriffs v. County of L.A.*, 648 F.3d 986, 991 (9th Cir. 2011).

33

The FAC meets both standards. It alleges Cassidy knew his actions were "substantially certain" to cause the Debtors' failure and that failure would be a "natural consequence" of his theft of millions from the Debtors and his knowledge that "the Debtors could not operate profitably or generate sufficient revenues to service the loans on the Planes." [25-ER-026762-65 ¶¶ 430-47.] The FAC pleads revenue, expense, and profit figures showing Cassidy knew the Debtors never had a "realistic possibility" of profitable operations or servicing their debt. [25-ER-026763 ¶¶ 435-39.] Cassidy knew that he should have canceled pending aircraft purchases, instead of incurring new obligations that could never be repaid. [25-ER-026764 ¶ 440.] Cassidy embezzled millions in refinancing proceeds, while taking bribes and kickbacks. [25-ER-026764 ¶¶ 441-42.] In short, Cassidy "knew that payments to some creditors would be hindered and delayed" when he paid off Li, stole millions, and took on hundreds of millions in more debt while trade payables exploded, but he "closed the transaction anyway." *ASARCO*, 396 B.R. at 388.

### c. The FAC pleads "badges of fraud."

Bombardier states that the FAC failed to allege sufficient badges of fraud. (Resp. at 72.) But "no minimum number" of badges must be present, and a court may find actual intent "even if no 'badges of fraud' are present." *In re Beverly*, 374 B.R. 221, 236 (B.A.P. 9th Cir. 2007). The FAC includes at least five badges of fraud. *In re O'Gorman*, 2022 WL 17851422, at *2 n.2 (B.A.P. 9th Cir. 2022) (listing badges).

- The kickbacks, bribes, and embezzlement were concealed from the Debtors' directors who approved the transactions. [25-ER-026765 ¶448; 25-ER-026788 ¶¶ 593-94; 25-ER-026791 ¶ 618.]

- The transactions involved all or substantially all of the Debtors' assets. [25-ER-026692 ¶ 94; 25-ER-026694 ¶ 104; 25-ER-026698-99 ¶¶ 123-24; 127-28; 25-ER-026703 ¶ 143; 25-ER-026720-22 ¶¶ 242-49; 25-ER-026765 ¶ 449.]

- The Debtors did not receive reasonably equivalent value, based on expert analysis. [25-ER-026740-45.]

- Each transfer was made when the Debtors were either insolvent or faced with unmanageable indebtedness. [25-ER-026762-66 ¶¶ 431-47, 452.] The transfers on the package deal for Planes 1-6 together made the Debtors insolvent. [25-ER-026766-69 ¶¶ 452, 467-74.]

- Every transaction incurred tens or hundreds of millions of dollars of debt, and thus was shortly before or after a substantial debt. [25-ER-026703-04 ¶¶ 143, 153; 25-ER-026708-09 ¶¶ 177, 180; 25-ER-026716 ¶¶ 221-23.]

**4. The FAC plausibly pleads preference claims.**

Bombardier's ordinary-course and contemporaneous-exchange affirmative defenses are improper on a motion to dismiss because (i) they involve questions of fact and (ii) they are not obvious on the face of the FAC. *In re Kaypro*, 218 F.3d 1070, 1073 (9th Cir. 2000); *In re Equip. Acquisition Res., Inc.*, 2012 WL 4754949, at *5 (Bankr. N.D. Ill. Sept. 28, 2012); *In re The Russ Cos.*, 2013 WL 4028098, at *5 (Bankr. D.N.J. Aug. 5, 2013). Bombardier's authorities are inapposite because the defenses were apparent on the face of the complaint in those cases. *Kaypro*, 218 F.3d at 1072-73; *In re Ahaza Sys., Inc.*, 482 F.3d 1118, 1129 (9th Cir. 2007); *In re Metromedia Fiber Network, Inc.*, 2005 WL 3789133, at *4 (Bankr. S.D.N.Y. Dec. 20, 2005); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999 (9th Cir. 2014).

35

The FAC alleges that the aircraft obligations were fraudulently incurred and therefore were not ordinary course. *In re FirstPay, Inc.*, 2012 WL 3778952 at *9 (Bankr. D. Md. Aug. 30, 2012). The FAC also alleges that the Debtors incurred a Promissory Note so Bombardier would extend the payment deadline for one plane, whereas with other planes the full balance was paid at closing. [*Compare* ER-25-026771 ¶¶ 488-89 *with* 25-ER-026703-04 ¶¶ 143, 146, 153; 25-ER-026764-65 ¶¶ 441, 443; 25-ER-026771 ¶ 489; 25-ER-027608 ¶ 2.1; 25-ER-027624; 25-ER-027627; 25-ER-027916 ¶ 2.1; 25-ER-027932; 25-ER-027935; 25-ER-028398 ¶ 2.1; 25-ER-028424; 25-ER-028427; 25-ER-028430; 25-ER-029926 ¶ 6.1; 25-ER-026976.] These deviations from prior practices and subsequent delays in payment negate any ordinary course defense. *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 732 (9th Cir. 1994); *In re Food Catering & Housing, Inc.*, 971 F.2d 396, 398 (9th Cir. 1992).

Bombardier's contemporaneous exchange argument is based on the highly contested issue of valuation, something Bombardier acknowledged by disputing valuation. [30-ER-039664.] Bombardier cannot turn around and argue that the value exchanged is undisputed.

**E. Bombardier's stay violation argument does not address the Trustee's arguments.**

Bombardier ignores Ninth Circuit authority holding that a bankruptcy trustee can receive compensatory damages for a stay violation apart from § 362(k), and that "contempt" is not a "magic word" necessary to state a claim. (Tr. Br. at 49-50.) *In*

1    *re Dyer*, 322 F.3d 1178 (9th Cir. 2003) – not *Taggart v. Lorenzen*, 139 S. Ct. 1795,

2    1802 (2019), which did not involve the automatic stay (Resp. at 77.) – establishes

3    the correct pleading standard for a stay violation: (i) did the creditor have notice of

4    the bankruptcy case and (ii) did the act violate the automatic stay. *Id.* at 1191.

5           The FAC meets this standard. The FAC alleges facts that show both a

6    violation of the automatic stay and breach of contract. [25-ER-026772-74 ¶¶ 500-

7    08.] Bombardier incurred over $2 million in prepetition charter flight services under

8    the Charter Agreements. [25-ER-026772 ¶ 502.] The parties also had a *separate*

9    contract, the Smart Parts Agreement ("SPA"), under which Bombardier agreed to

10   provide services to the Debtors. [25-ER-026774 ¶ 506] Before the Petition Date,

11   Bombardier attempted to set off debts it owed under the Charter Agreements against

12   obligations the Debtors owed under the SPA, but this attempt was legally ineffective

13   and factually disputed. [25-ER-026773 ¶ 504.] Bombardier refused to pay for the

14   charter flights postpetition based on the SPA setoff, which the Bankruptcy Court

15   never approved. [25-ER-026773-74 ¶¶ 505, 508.] This unilateral postpetition setoff

16   violated the automatic stay, entitling the estates to compensatory damages. As an

17   alternative, the Trustee sought to amend the FAC to plead a separate breach-of-

18   contract claim to collect amounts due under the Charter Agreements. [30-ER-

19   038499.]

20          The Bankruptcy Court failed to identify the correct contract under which the

21   Trustee's claim for unpaid charter flights arose because it confused the SPA with the

37

Charter Agreements. [30-ER-042047 (stating that the Trustee's breach of contract was based on the SPA)]. The Bankruptcy Court's ruling that rejection of the SPA extinguished the Debtors' rights to payment for the charter flights and ignoring the Trustee's request to amend to add an alternative breach-of-contract claim was without any basis in law or fact.

### F. Bombardier does not dispute the disallowance claim.

Bombardier agrees that if this Court reverses on any fraudulent transfer or preference claim, the disallowance claim survives. (Resp. at 77-78.)

## III.   The Bankruptcy Court erred by denying consolidation.

The Bankruptcy Court treated the main adversary proceedings (all currently on appeal to this Court) as consolidated for years, holding essentially joint hearings, requiring the Trustee to file monthly joint status reports, and allowing parties in one case to be heard in another case without intervening. Yet the Bankruptcy Court denied consolidation because a court must be able to "make precise findings" for consolidation, while relying on a case that nowhere said that. (Tr. Br. at 51.) Bombardier does not defend this.

Bombardier instead argues that the Bankruptcy Court could not analyze common questions of law or fact because there were no operative complaints. (Resp. at 79.) The Bankruptcy Court had gone through full motion to dismiss briefing in both cases, filed over a hundred pages of opinions, *and* was provided a proposed

consolidated complaint. That is more than enough to analyze common questions of law or fact.

This was no mere technical issue. Because the Bankruptcy Court also found that CAVIC was an indispensable party, the decision to deny consolidation barred the Trustee from bringing over $120 million in fraudulent transfer claims.

**IV.  The Bankruptcy Court erred by denying leave to amend.**

The Bankruptcy Court erred by denying leave to amend. (Tr. Br. at 51-52.) Bombardier does not squarely address the Trustee's argument, instead vaguely referring to the Bankruptcy Court's broad discretion. (Resp. at 79-81.) The Bankruptcy Court found that the original Complaint stated a claim for breach of fiduciary duty and that it pleaded that Fazal-Karim was Bombardier's agent. [2-ER-1185; 2-ER-1187; 2-ER-1200 n.11.] But it then reversed itself on both issues, without giving the Trustee the opportunity to replead the agency allegations that were purportedly deficient. Dismissing the FAC with prejudice when the Trustee did not have a chance to address the new purported deficiencies was an abuse of discretion. (Tr. Br. at 51-52.)

Similarly, this Court should not affirm based on in pari delicto because the Trustee had no chance to address any deficiencies in that regard. The Bankruptcy Court rejected that defense on the original Complaint and did not address it on the FAC.

## <u>Conclusion</u>

The Bankruptcy Court's decision should be reversed.

DATED: May 17, 2023

**DLA PIPER LLP (US)**

By: */s/*John K. Lyons
DAVID M. RILEY (SBN 292087)
JOHN K. LYONS (*Pro Hac Vice*)
JEFFREY S. TOROSIAN (*Pro Hac Vice*)
JOSEPH A. ROSELIUS (*Pro Hac Vice*)

Attorneys for the Chapter 7 Trustee

## **RULE 8015(h) CERTIFICATE OF COMPLIANCE**

1.    This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 9,745 words.

2.    This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements of Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.